XAVIER BECERRA
Attorney General of California
NICKLAS A. AKERS
Senior Assistant Attorney General
MICHAEL E. ELISOFON
Supervising Deputy Attorney General
STEVEN D. DE SALVO (SBN 199904)
BERNARD A. ESKANDARI (SBN 244395)
Deputy Attorneys General
  300 South Spring Street, Suite 1702
  Los Angeles, CA 90013
  Tel: (213) 269-6348
  Fax: (213) 897-4951
  Email: bernard.eskandari@doj.ca.gov

*Attorneys for the People of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PEOPLE OF THE STATE OF CALIFORNIA** ex rel. Xavier Becerra, Attorney General of California,<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF EDUCATION** and **BETSY DEVOS**, in her official capacity as Secretary of Education,<br><br>Defendants. | Case No.: 17-7106<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**ADMINISTRATIVE PROCEDURE ACT CASE** |

## INTRODUCTION

1.     The United States Department of Education ("Department") is unlawfully reneging on its legal commitment to provide critical, expedited student-loan debt relief to tens of thousands of students defrauded by Corinthian Colleges, Inc. ("Corinthian"). The Department's unjustified failure to expeditiously grant this promised relief is outrageous and immoral—and it violates the Administrative

1  Procedure Act ("APA").

2       2.      In consultation with the California Attorney General's Office, the

3  Department found in 2015 and 2016 that some 80,000 student borrowers

4  nationwide—including more than 38,000 in California—were fraudulently induced

5  to enroll in educational programs offered by Corinthian, a now-defunct operator of

6  predatory for-profit schools. The Department determined that these students

7  qualified under its "borrower defense" regulations for expedited discharge of their

8  federal student loans and reimbursement of amounts previously paid.

9       3.      To process the ensuing flood of borrower-defense claims, the

10  Department implemented specific, streamlined review procedures to quickly grant

11  full relief to these already-qualified Corinthian students. The Department, the

12  California Attorney General's Office, and others also undertook massive outreach

13  efforts to inform these students of their eligibility for relief. Between 2015 and

14  January 20, 2017, the Department granted 28,000 of these borrower-defense claims,

15  totaling more than half a billion dollars in critical debt relief.

16       4.      However, since January 20, 2017, and under Secretary DeVos, the

17  Department has unjustifiably and indefinitely delayed approving even a single

18  borrower-defense claim. This, despite a ballooning backlog of more than 50,000

19  Corinthian claims.

20       5.      The Department's ongoing delay in approving the pending claims of

21  defrauded Corinthian students is unlawful under the APA. This delay—11 months

22  and counting—is unreasonable and illegal because the Department has already

23  determined that these students qualify for specific, expedited relief. The

24  Department has no justification for its delay—a delay that unquestionably harms

25  students. Moreover, the APA bars the Department from reversing course by

26  denying pending borrower-defense claims or treating them differently than the

27  thousands of claims that it approved prior to January 20, 2017. The Department has

28  already determined that these Corinthian students qualify for full debt relief; the

2

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

1  Department cannot now change its mind without violating the APA's bar on

2  applying rules retroactively.

3      6.      Further compounding the plight of defrauded Corinthian students, the

4  Department continues to deploy draconian debt-collection tactics against many

5  students with pending borrower-defense claims and against many students that the

6  Department knows are qualified for debt relief. The Department has seized these

7  students' tax refunds and garnished their wages in violation of the APA.

8                      **JURISDICTION AND VENUE**

9      7.      This action arises under the APA, 5 U.S.C. §§ 701-706, and the Higher

10  Education Act, 20 U.S.C. § 1082. This Court has subject-matter jurisdiction over

11  this action because it is a case arising under federal law. 28 U.S.C. § 1331.

12      8.      Venue is proper in this Court under 28 U.S.C. § 1391(e)(1) because a

13  substantial part of the events or omissions giving rise to the claims occurred in this

14  district and because the People reside in this district.

15      9.      This Court is authorized to grant the requested relief under the

16  Declaratory Relief Act, 28 U.S.C. §§ 2201-2202; the APA, 5 U.S.C. § 706; the

17  Mandamus Act, 28 U.S.C. § 1361; and the Higher Education Act, 20 U.S.C. § 1082

18                      **INTRADISTRICT ASSIGNMENT**

19      10.     Assignment to the San Francisco Division is appropriate because a

20  substantial part of the events or omissions giving rise to the claims in this complaint

21  occurred in this division. *See* Local Rule 3-2(c). Among other events, the

22  Department instructed all affected Corinthian students to submit their written

23  borrower-defense claims to a Department address in San Francisco.[1] Moreover,

24  multiple Corinthian campuses were once located in San Francisco County.

25                              **PARTIES**

26      11.     The People of the State of California ("People") bring this action by

27  _____

[1] https://studentaid.ed.gov/sa/repay-loans/forgiveness-cancellation/borrower-

28  defense.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

1    and through its Attorney General, Xavier Becerra, California's chief law officer.

2    Cal. Const. art. V, § 13. The People have initiated numerous costly and resource-

3    intensive investigations and enforcement actions against for-profit schools,

4    including Corinthian, for violations of California's consumer-protection statutes.

5        12.    Defendant United States Department of Education is an executive

6    agency of the United States government. The Department's principal address is 400

7    Maryland Avenue, SW, Washington, D.C. 20202.

8        13.    Defendant Betsy DeVos is the Secretary of Education and is being

9    sued in her official capacity. Her official address is 400 Maryland Avenue, SW,

10   Washington, D.C. 20202.

11                          **FACTUAL ALLEGATIONS**

12   **I.    FEDERAL STUDENT LOANS AND FOR-PROFIT SCHOOLS**

13       14.    Students pursuing higher education can receive federal financial

14   assistance in the form of grants and loans under Title IV of the Higher Education

15   Act of 1965, as amended ("HEA"), 20 U.S.C. § 1071 et seq. These programs

16   provide critical assistance to prospective students and expand access to higher

17   education to those who could not otherwise afford it.

18       15.    Title IV student grants and loans are a significant source of revenue for

19   many postsecondary institutions, and especially for for-profit schools. For-profit

20   schools receive the vast majority of their revenue from Title IV funds. In 2009, the

21   15 publicly traded for-profit education companies received 86% of their revenues

22   from Title IV funds.[2] Federal student aid to for-profit schools totaled $32 billion in

23   the 2009-2010 academic year.[3]

24       16.    For-profit schools typically advertise to students with modest financial

25

26   [2] *For Profit Higher Education: The Failure to Safeguard the Federal Investment and Ensure Student Success*, United States Senate, Health, Education, Labor and Pensions Committee, at 3 (July 30, 2012), http://www.help.senate.gov/

27   imo/media/for_profit_report/Contents.pdf.
     [3] *Id.* at 15.

28

resources who are eligible for federal funds in the form of grants and loans. Many of these students are the first in their families to seek higher education. For-profit schools have directed their marketing toward low-income and minority students, particularly low-income women of color.

## II.   DEFENSE TO REPAYMENT

17.    Recognizing the damaging impact that school misconduct can have on student borrowers, the HEA provides students with a defense to repayment of their federal student loans when they have been victimized by their school. 20 U.S.C. § 1087e(h). The HEA requires that the Department define, by regulation, the acts and omissions of a school that provide a basis for defense to repayment of a federal student loan. *Id.*

18.    In 1994, the Department promulgated regulations stating that a student may "assert as a defense against repayment, any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law." 34 C.F.R. § 685.206(c)(1).

19.    Defense to repayment is also a contractual right written into every borrower's Master Promissory Note since 1994: "In some cases, you may assert, under applicable law and regulations, a defense against repayment of your loan on the basis that the school did something wrong or failed to do something that it should have done."[4]

20.    If the borrower's defense to repayment is successful, "the borrower is relieved of the obligation to repay all or part of the loan and associated costs and fees that the borrower would otherwise be obligated to pay." 34 C.F.R. § 685.206(c)(2). The Secretary may provide the borrower further relief as the Secretary deems appropriate, including "[r]eimbursing the borrower for amounts paid toward the loan," "[d]etermining that the borrower is not in default on the

---

[4] Department of Education Master Promissory Note, http://studentloans.gov/myDirectLoan/subUnsubHTMLPreview.action.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

loan" and is therefore eligible for Title IV assistance, and "[u]pdating reports to consumer reporting agencies to which the Secretary previously made adverse credit reports." *Id*. § 685.206(c)(2)(i)-(iii).

21.    In the event of a successful defense to repayment, the Secretary is authorized to initiate "an appropriate proceeding" against the school whose conduct gave rise to the defense "to pay to the Secretary the amount of the loan to which the defense applies." *Id*. § 685.206(c)(3).

22.    The People have an interest in the enforcement of 20 U.S.C. § 1087e(h) and the borrower-defense regulations implementing it, 34 C.F.R. § 685.206(c). Enforcement of borrower-defense protections enhances the wellbeing of California residents by discharging the federal loans of California students who have been defrauded or otherwise harmed by their school. Here, the People's interest is particularly acute because tens of thousands of defrauded Californians have already been qualified by the Department for expedited relief as a direct result of a joint investigation between the Department and the California Attorney General's Office. In addition, these borrower-defense protections enhance state law-enforcement actions against predatory schools by providing additional remedies for violations of state law. They also deter school misconduct in the State because schools may be liable for reimbursement to the Department for each successful borrower-defense claim. Finally, the Department's timely approval of borrower-defense claims permits students with meritorious claims to access additional federal aid, thereby allowing them to continue their studies at California's public colleges and universities.

## III.   THE CORINTHIAN INVESTIGATION AND COLLAPSE

23.    Corinthian was once one of the largest for-profit education companies in the world. At its height, Corinthian operated more than 100 campuses under its Everest, Heald, and Wyotech brands, including more than 30 campuses in California. Over the course of its existence, Corinthian enrolled hundreds of

thousands of students in career-oriented programs. Corinthian marketed these programs as a way for prospective students to obtain jobs in various fields, including health care, business, criminal justice, and information technology.

24.     Like most predatory, for-profit schools, Corinthian kept enrollment— and profits—up by systemically targeting low-income, financially unsophisticated, and vulnerable groups with false promises of a good education, high-paying jobs, and lifelong career services. In reality, Corinthian's programs often left its students with a mountain of debt and no better career prospects.

25.     In October 2013, the California Attorney General led the charge against Corinthian by filing an enforcement action to put an end to Corinthian's misconduct. *People v. Corinthian Colleges, Inc.*, No. CGC-13-534793 (Cal. Super. Ct., filed Oct. 11, 2013). Other states and federal agencies followed suit, including the Consumer Financial Protection Bureau.[5]

26.     In November 2014, amid mounting government investigations, law-enforcement actions, and financial difficulties, Corinthian sold 53 of its campuses outside of California and took steps to liquidate its private student-loan portfolio, which had a face value of over $500 million.

27.     In April 2015, based on a joint investigation with the California Attorney General's Office, the Department confirmed that Corinthian engaged in systematic and widespread misrepresentations of job-placement rates to current and prospective students at its Heald campuses and fined Corinthian approximately $30 million.[6]

28.     Through this joint investigation, the Department found that (a) Heald overstated the employment prospects of its graduates, (b) Heald's inaccurate and incomplete disclosures were misleading to students, and (c) current and prospective

---

[5] *See, e.g.*, *Consumer Fin'l Prot. Bureau v. Corinthian*, No. 14-7194 (N.D. Ill., filed Sept. 16, 2014).
[6] http://www.ed.gov/news/press-releases/us-department-education-fines-corinthian-colleges-30-million-misrepresentation.

1    students could have relied upon that misleading information when they were

2    deciding whether to attend Heald.

3        29.    On April 27, 2015, after the Department notified Corinthian of its

4    intention to impose a $30 million fine based on Heald's falsified job-placement

5    rates, Corinthian announced the closure of its remaining 28 campuses.

6        30.    On May 4, 2015, Corinthian filed bankruptcy.

7        31.    On March 23, 2016, the People obtained a default judgment in

8    California state court against Corinthian. The judgment ordered Corinthian to pay

9    more than $1.1 billion in monetary relief and included judicial findings based on

10   substantial evidence that Corinthian (a) published placement rates that were

11   systematically false, misleading, and erroneous; (b) ran millions of advertisements

12   for programs that it did not offer; (c) unlawfully used official military seals in its

13   materials; (d) engaged in unlawful debt collection; (e) misrepresented the

14   transferability of credits; (f) failed to disclose an affiliation with a private-loan

15   company to which it funneled students; and (g) misrepresented its financial stability

16   to students.

17   **IV.   THE DEPARTMENT QUALIFIES DEFRAUDED CORINTHIAN STUDENTS
         FOR EXPEDITED BORROWER-DEFENSE RELIEF AND IMPLEMENTS A
18       STREAMLINED PROCESS TO GRANT THAT RELIEF**

19       32.    Corinthian's rampant fraud and sudden collapse left tens of thousands

20   of students entitled to discharge of their federal student loans. On June 8, 2015, in

21   consultation with the California Attorney General's Office, the Department

22   announced that it would "create a streamlined process" to provide defrauded

23   students who attended Corinthian's Heald campuses with expedited relief under the

24   borrower-defense rule:

25       [A]fter analyzing the Department's findings in its investigation of
         Heald College and relevant California law, the Department has
26       determined that evidence of misrepresentation exists for students
         enrolled in a large majority of programs offered at Heald College
27       campuses between 2010 and 2015. **Specifically, the Department has
         determined that students who relied on misrepresentations found
28       in published job placement rates for many Heald programs**

**qualify to have their federal direct student loans discharged. Students can have their loans forgiven and receive refunds for amounts paid based on a simple attestation.**[7]

The Department's findings, which served to qualify affected students for expedited, full borrower-defense relief, applied to approximately 800 educational programs offered by Heald, almost all of which were in California ("Heald Findings").[8]

33.    The Department committed to continuing to work with various authorities, including state attorneys general, and to using existing evidence to ease students' burden of establishing their eligibility for borrower-defense relief:

> Wherever possible, the Department will rely on evidence established by appropriate authorities in considering whether whole groups of students (for example, an entire academic program at a specific campus during a certain time frame) are eligible for borrower defense relief. This will simplify and expedite the relief process, reducing the burden on borrowers.[9]

34.    Because, at the time, the Department did not have an established infrastructure for accepting, processing, and reviewing large numbers of borrower-defense claims, the Department further announced that it would appoint a Special Master to develop and implement this infrastructure. While the Special Master's initial focus would be on defrauded students covered by the Heald Findings, the Special Master would also "develop a broader system that will support students at other institutions who believe they have a defense to repayment."[10]

35.    Finally, also on June 8, 2015, the Department announced that all former Corinthian students who submitted a borrower-defense claim would have the option of placing their federal loans immediately into forbearance. For students who were already in default, the Department agreed to stop collection activity.

---

[7] Fact Sheet: Protecting Students from Abusive Career Colleges ("Fact Sheet"), http://www.ed.gov/news/press-releases/fact-sheet-protecting-students-abusive-career-colleges (emphasis added).

[8] List of Heald College Programs and Enrollment Dates Covered by Department of Education Findings, http://studentaid.ed.gov/sa/sites/default/files/heald-findings.pdf.

[9] Fact Sheet, *supra* note 7.

[10] *Id.*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

36. The Department determined that defrauded Corinthian students qualified for relief by looking to California law to analyze the applicability of its Heald Findings to potential borrower-defense claims.[11] California law was appropriate, according to the Department, because Heald was headquartered in and managed from California. The Department determined that Corinthian's misrepresentations of job-placement rates constituted prohibited business acts or practices that violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. Accordingly, students that relied on the misleading rates when they enrolled would have a cause of action against Corinthian under California law. The Department's analysis was based on legal theories developed by the California Attorney General's Office.

37. Based on this analysis, the Department created a simple attestation form for students to complete if Corinthian had misled them about job-placement rates. This simple form allowed students to document the impact of Corinthian's inflated job-placement rates on them in a manner that supported a cause of action under California's Unfair Competition Law. It "incorporated each of these elements of a claim [under the Unfair Competition Law] as to which relief could be granted" and included all the necessary information for the Department to grant a claimant relief.[12] Students could also use this form to request that the Department place their federal student loans in forbearance and stop collections while the Department reviewed their claims.

38. The Department determined that the scope of relief for successful claimants would be based on California law too: "[S]tudents who relied upon false or misleading placement rate disclosures in enrolling in Heald College programs

---

[11] First Report of the Special Master for Borrower Defense to the Under Secretary, at 5 (Sept. 3, 2015) ("First Special Master Report"), http://www2.ed.gov/documents/press-releases/report-special-master-borrower-defense-1.pdf.

[12] Second Report of the Special Master for Borrower Defense to the Under Secretary, at 3 (Dec. 3, 2015) ("Second Special Master Report"), http://www2.ed.gov/documents/press-releases/report-special-master-borrower-defense-2.pdf.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

1  would have established a [borrower-defense] claim as to which relief would be

2  granted under California law."[13] California's Unfair Competition Law entitled

3  Corinthian's victims to statutory restitution in the form of a complete refund of all

4  payments made to attend Corinthian, *see* Cal. Bus. & Prof. Code § 17203, without

5  regard to any supposed "benefit" they may have received from Corinthian.[14] Thus,

6  the Department determined that the appropriate legal remedy for defrauded

7  Corinthian students would be complete discharge of their federal student loans and

8  refunds of any amounts paid on them.

9      39.    On June 25, 2015, the Department appointed Joseph A. Smith as

10  Special Master to implement the Department's borrower-defense process, which

11  included, among other things, developing "a set of rules for deciding cases in a

12  consistent way."[15]

13      40.    On November 17, 2015, the Department announced additional findings

14  from the joint investigation with the California Attorney General's Office. The

15  Department found that Corinthian systematically misrepresented job-placement

16  rates to enrolled and prospective students at an additional 124 Corinthian programs

17  offered at 20 of its Everest and Wyotech campuses in California and Florida.[16] The

18  Department determined that student borrowers who attended any of these programs

19  would also qualify for expedited relief under the Department's streamlined

20  borrower-defense process.

21      41.    On March 25, 2016, the Department announced additional findings

22  _____

[13] *Id.*

23  [14] *See, e.g.*, *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003) ("Object of [UCL] restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest"); *People v.*

24  *Beaumont Inv.*, 111 Cal. App. 4th 102, 134 (2003) ("[C]ourts are not concerned with restoring the violator to the status quo ante. The focus instead is on the

25  victim.").

[15] First Special Master Report, *supra* note 11, at 9.

26  [16] Department of Education and Attorney General Kamala Harris Announce Findings from Investigation of Wyotech and Everest Programs, http://www.ed.gov/

27  news/press-releases/department-education-and-attorney-general-kamala-harris-announce-findings-investigation-wyotech-and-everest-programs.

28

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

that Corinthian systematically misrepresented job-placement rates to enrolled and prospective students: "[S]tudents who were defrauded at 91 former [Corinthian] campuses nationwide have a clear path to loan forgiveness under evidence uncovered by the Department while working with multiple state attorneys general."[17] These additional findings applied to borrowers who attended Corinthian's Everest and WyoTech campuses at approximately 800 programs in more than 20 states ("Everest and WyoTech Findings"). They "represent[ed] the largest group of borrowers eligible for loan relief so far from the ongoing investigation into Corinthian."[18] As with prior findings, affected students were immediately qualified for expedited relief under the Department's streamlined borrower-defense process.

42.    Altogether, the Department's findings (collectively, "Corinthian Fraud Findings") qualified approximately 80,000 defrauded students who attended Corinthian schools in 24 states for expedited borrower-defense relief through the same streamlined process.[19] These findings applied to over 38,000 Californians.

43.    Starting in June 2015, following the announcement of the Heald Findings, the Department, the California Attorney General's Office, student advocates, and others have engaged in timely and costly outreach efforts to notify eligible students that they qualify for expedited debt relief. Outreach efforts have been aided by the fact that the Department possesses individualized program-level enrollment data for the vast majority of the defrauded Corinthian students. This information includes, among other things, borrower name, address, program of

---

[17] http://www.ed.gov/news/press-releases/us-department-education-announces-path-debt-relief-students-91-additional-corinthian-campuses.

[18] List of Everest/WyoTech Programs and Enrollment Dates Covered by Department of Education Findings, http://studentaid.ed.gov/sa/sites/default/files/ev-wy-findings.pdf.

[19] These findings applied to Corinthian campuses in the following states: California; Colorado; Florida; Georgia; Illinois; Indiana; Maryland; Massachusetts; Michigan; Minnesota; Missouri; Nevada; New Jersey; New York; Ohio; Oregon; Pennsylvania; Texas; Utah; Virginia; Washington; West Virginia; Wisconsin; and Wyoming.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

study, and program start date.

44.     However, outreach efforts have not reached every eligible student. Thousands of borrowers already qualified for relief by the Department have not yet submitted claims. As recently as January 2017, the Department announced that it would pursue new methods to reach these victims, including expanded postal-mail outreach, Facebook advertisement, outreach through servicers, and partnerships with state attorneys general.

## V.   THE DEPARTMENT GRANTS 28,000 BORROWER-DEFENSE CLAIMS

45.     Starting in late 2015, the Department began approving borrower-defense claims, as it had promised in its June 8, 2015 announcement. As of December 3, 2015, the Special Master had recommended approval of 1,312 borrower-defense claims and recommended "full relief (restitution of all amounts paid)" for these students' loans.[20] The Under Secretary authorized this relief. The vast majority of approved claims (1,062) were from defrauded Californians. The Special Master continued to recommend approval of Corinthian borrower-defense claims throughout his one-year tenure, which ended June 29, 2016. In total, the Special Master recommended approval of 3,787 Corinthian claims,[21] for which the Under Secretary agreed and authorized "full relief"—meaning complete discharge of the claimant's relevant federal loans and reimbursement of all amounts previously paid.

46.     On February 8, 2016, the Department announced the creation of the Federal Student Aid ("FSA") Enforcement Office to respond more quickly and efficiently to allegations of school misconduct. This was part of the Department's larger efforts to strengthen FSA's enforcement and oversight activities. The Enforcement Office would include a dedicated Borrower Defense Unit to process

---

[20] Second Special Master Report, *supra* note 12, at 3.
[21] Fourth Report of the Special Master for Borrower Defense to the Under Secretary, at 1 (June 29, 2016), http://www2.ed.gov/documents/press-releases/report-special-master-borrower-defense-4.pdf.

1    and analyze borrower-defense claims, investigate institutions in connection with

2    those claims, and coordinate its efforts with federal and state agencies. The

3    Borrower Defense Unit would be led by a Director who would oversee "a team

4    dedicated to investigating and adjudicating borrower defense claims."[22] The

5    Borrower Defense Unit would take over from the Special Master at the conclusion

6    of his tenure.

7         47.    In late June 2016, the Department completed the transition of the

8    Special Master's responsibilities to the Borrower Defense Unit.

9         48.    On October 28, 2016, the FSA Enforcement Office issued a "Report

10   on Borrower Defense." As of that date, the Department had approved 15,694

11   borrower-defense claims based on the Corinthian Fraud Findings and granted full

12   relief to all those claims. At the time, "the Department expect[ed] to resolve all

13   pending eligible [Corinthian Fraud] [F]indings claims by spring 2017."[23] The FSA

14   Enforcement Office also stated that, following a "thorough" investigation into

15   Corinthian's practices, it had identified additional categories of wrongdoing that

16   would qualify Corinthian students for borrower-defense relief, including

17   misrepresentations Corinthian made about the transferability of credits.[24]

18        49.    On January 13, 2017, the Department announced that it had approved

19   12,000 additional borrower-defense claims from students qualified by the

20   Corinthian Fraud Findings. This brought the total number of approved claims to

21   more than 28,000, representing roughly $558 million in loan relief. The Department

22   granted all approved claimants full relief. The Department also announced that it

23   had approved two additional categories of Corinthian borrower-defense claims: (a)

24   those involving misrepresentations about the transferability of credits as the basis

25

26   [22] Federal Student Aid Enforcement Office Report on Borrower Defense, at 1
     (Oct. 28, 2016), http://www2.ed.gov/documents/press-releases/borrower-defense-
     report.pdf.

27   [23] Id.

28   [24] Id. at 3.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

for debt relief; and (b) those involving Corinthian's false guarantees of employment for graduates.[25]

50.     Although the Department had granted 28,000 claims, as of January 20, 2017, approximately 39,000 additional claims from Corinthian students—with more than 11,000 from Californians—still awaited processing by the Department.

## VI.   THE DEPARTMENT STOPS APPROVING BORROWER-DEFENSE CLAIMS

51.     On January 20, 2017, the Department abruptly halted approval of all borrower-defense claims.

52.     Since January 20, 2017, the Department has not approved a single borrower-defense claim. It has adjudicated only two; it denied both.[26]

53.     Since January 20, 2017, the FSA Enforcement Office has stopped issuing reports to senior officials or others on the status of borrower-defense claims.

54.     Meanwhile, defrauded students have continued to submit claims for relief under the borrower-defense rule. As of July 7, 2017, 65,169 borrower-defense claims were pending review, decision, or adjudication by the Department. Of these, 45,092 were from Corinthian students—with more than 13,000 from Californians.

55.     As of December 14, 2017, the Department's publicly available "active contracts" list showed "a growing backlog of over 85,000 borrower claims submitter [sic] by applicants to request relief from student debt due [to] education institution abuses or other types of problems."[27]

56.     The vast majority of these pending claims are from Corinthian students. On information and belief, the number of pending Corinthian borrower-defense claims currently pending before the Department exceeds 50,000.

---

[25] http://www.ed.gov/news/press-releases/american-career-institute-borrowers-receive-automatic-group-relief-federal-student-loans.

[26] Office of Inspector General, Report: Federal Student Aid's Borrower Defense to Repayment Loan Discharge Process, at 3 (Dec. 8, 2017), http://www2.ed.gov/about/offices/list/oig/auditreports/fy2018/i04r0003.pdf.

[27] An Excel file that details the Department's active contracts is available here: http://www2.ed.gov/about/offices/list/ocfo/contracts/active_contracts_list.xls (last visited Dec. 14, 2017).

57.     The Department has provided no reasonable or adequate justification for delaying approval of tens of thousands of pending borrower-defense claims that the Department has already determined qualify for expedited, full relief under the Corinthian Fraud Findings. These pending claims are indistinguishable from the 28,000 claims for which the Department already approved and granted expedited, full relief prior to January 20, 2017.

58.     Public officials have decried the Department's delay. On May 17, 2017, five Senators wrote to the Department requesting an update on the processing of claims. On June 5, 2017, the California Attorney General, with 19 other attorneys general, wrote to the Department inquiring about the delay and urging the Department to expeditiously grant pending Corinthian claims.

59.     The Department's responses provided no commitment or timetable to process claims. In response to the letter from the attorneys general, the Department stated that the pending claims "will be processed under the current regulatory requirements."

60.     On September 7, 2017, the Senate Committee on Appropriations expressed concern over the growing backlog of borrower-defense claims:

> Former students who enrolled in many programs of study at more than 100 [Corinthian] campuses were provided with highly misleading job placement rate information. At least 45,000 former [Corinthian] students have pending applications with the Department for a discharge and refund of their fraudulently issued federal loan debt, and the Committee believes that many more students have not applied.[28]

The Committee directed "the Secretary to process applications as expeditiously as possible, and ensure students are aware of their potential eligibility for relief by identifying and contacting borrowers who may qualify to assert a defense to repayment utilizing the program-level enrollment information provided to the Department by states in 2016."[29]

---

[28] S. Rep. No. 115-150, at 184 (2017).
[29] *Id.*

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

61.     Since her appointment, Secretary DeVos has broadly evinced hostility toward borrower defense. On June 14, 2017, Secretary DeVos announced a "regulatory reset" of the Department's legislative rules affecting for-profit schools.[30] This "reset" included unlawfully delaying new borrower-defense regulations that were set to go into effect on July 1, 2017.[31] Among other borrower protections, these new regulations would have provided more-efficient procedures for the Department to provide automatic borrower-defense relief to groups of defrauded students without the necessity of students submitting individual claims. Despite broad support from law-enforcement agencies, student advocates, and others, the Secretary stated these regulations created "a muddled process that's unfair to students and schools, and puts taxpayers on the hook for significant costs."

62.     On June 16, 2017, the Department announced that the "regulatory reset" announced by Secretary DeVos "will not prevent student borrowers from obtaining relief because the Department will continue to process borrower defense claims under existing regulations that will remain in effect during the postponement."[32]

63.     However, Department statements in an August 2017 procurement notice (for borrower-defense claim-processing support services) appear to contradict this. In that notice, the Department stated that "claim processing policies are evolving" and that "policy changes may necessitate certain claims already processed be revisited to assess other attributes."

64.     On September 22, 2017, speaking at the Mackinac Republican

---

[30] http://www.ed.gov/news/press-releases/secretary-devos-announces-regulatory-reset-protect-students-taxpayers-higher-ed-institutions.

[31] The Department promulgated revised borrower-defense regulations on November 1, 2016, with an effective date of July 1, 2017. However, the Department has now unlawfully delayed that date while it engages in rulemaking to revise them. *See* 82 Fed. Reg. 27,621; 82 Fed. Reg. 49,114; 82 Fed. Reg. 49155. This delay is the subject of a separate APA challenge, to which the People are a party. *Mass. v. U.S. Dept. of Educ.*, No. 17-1331 (D.D.C., filed July 6, 2017).

[32] 82 Fed.Reg. 27621-01.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

Leadership Conference, Secretary DeVos criticized the borrower-defense process responsible for 28,000 students obtaining full relief: "Under the previous rules, all [students] had to do was raise his or her hands to be entitled to so-called free money." Secretary DeVos stated, "while students should have protections from predatory practices, schools and taxpayers should also be treated fairly as well."

65.     On October 24, 2017, in announcing additional delays tied to Secretary DeVos's "regulatory reset," the Department stated that it "would continue to process borrower defense claims under the existing regulations that will remain in effect during the delay so that borrowers may continue to apply for the discharge of all or a part of their loans."[33] And, "the Department is continuing to process borrower defense claims under the existing regulations that will remain in effect during the postponement."[34]

66.     As of December 14, 2017, the Department's website still states that the Corinthian Fraud Findings qualify defrauded borrowers for expedited relief:

> The Department has found that between 2010 and 2014, Heald College misrepresented job placement rates for many of its programs of study. While borrower defense claims typically require the borrower to specifically show that his or her school violated state law, the Department's Heald College findings qualify students enrolled in the covered programs and time periods to apply for a discharge of their federal Direct Loans through an expedited process using a simple attestation form.[35]

67.     Nonetheless, the Department is unreasonably delaying approval of any borrower-defense claims.

## VII. CALIFORNIA BORROWERS ARE HARMED BY THE DEPARTMENT'S DELAY IN APPROVING BORROWER-DEFENSE CLAIMS

68.     As the Senate Committee on Appropriations recognized, "there is ongoing disruption to and burden on the lives of students from the closure of and

---

[33] 82 Fed. Reg. at 49,156.
[34] 82 Fed. Reg. at 49,115.
[35] http://studentaid.ed.gov/sa/about/announcements/corinthian. An identical statement also appears on the same Department webpage for the Everest and WyoTech Findings.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

1    misconduct by Corinthian Colleges, Inc."[36]

2           69.    The Department's assurances of forbearance and collections stoppages

3    have not eliminated the harm to students waiting for the Department to process their

4    pending claims. While students wait, interest continues to accrue on their federal

5    student loans. For students in default on their loans prior to submitting a borrower-

6    defense claim, the Department continues to negatively report their loans to

7    consumer reporting agencies.

8           70.    The Department's indefinite delay in processing borrower-defense

9    claims also creates unnecessary disruption in the lives of students waiting for the

10   Department to act. Students who have already taken out the maximum federal

11   student-aid award or defaulted on their loans cannot access new federal loans while

12   their borrower-defense claims are unresolved. For students who are eligible to take

13   out new federal loans, delay prevents them from making informed financial

14   decisions about whether to take on additional debt to enroll in new educational

15   programs.

16          71.    In numerous instances, the Department has further increased the harm

17   to Corinthian students by failing to properly implement promised forbearances and

18   collection stoppages. The Department continues to unlawfully seize these students'

19   government payments, including tax refunds, through "administrative offset." 31

20   U.S.C. §§ 3701, 3716, 3720A. The Department also continues to unlawfully

21   garnish their wages, through "administrative wage garnishment." 31 U.S.C.

22   § 3720D. As recently as September 2016, more than 30,000 Corinthian students

23   were subject to administrative offset and more than 4,000 to administrative wage

24   garnishment.

25          72.    Finally, the Department's delay also harms defrauded Corinthian

26   students who qualify but have not yet submitted a claim for relief. The Department

27   _____

28   [36] S. Rep. No. 115-150, at 184 (2017).

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

knows (because it possesses program-level enrollment information of defrauded Corinthian students) that thousands of eligible Corinthian students have not yet applied for borrower-defense relief to which they are entitled.[37] For these students, the Department's delay—and any intervening change by the Department in how it processes claims—deprives them of the opportunity for expedited, full relief that 28,000 identically situated students have already obtained.

## CLAIM I

### UNREASONABLY DELAYED AGENCY ACTION

73.     The People incorporate by reference paragraphs 1 through 72.

74.     Under the APA, a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

75.     The Department has determined that student borrowers covered by the Corinthian Fraud Findings have a valid borrower-defense claim and qualify for expedited, full relief from their federal student loans. This is a "rule," as defined by 5 U.S.C. § 551(4).

76.     To implement this rule, the Department established streamlined procedures to review and process borrower-defense claims submitted by affected borrowers using the Department's simple attestation form.

77.     Before January 20, 2017, the Department approved and granted full relief to 28,000 borrower-defense claimants using these procedures.

78.     Since January 20, 2017, the Department has delayed approval of all pending borrower-defense claims. It has been more than 11 months since the Department last approved a claim.

79.     More than 50,000 borrower-defense claims from Corinthian students

---

[37] There are a host of reasons why eligible students may not have applied yet: (a) outreach efforts miss students who move; (b) some students do not understand outreach notices or suspect fraud; (c) some students fully intend to apply, relying on the Department's promises of expedited, full relief (and its granting of such relief to other, identically situated, students), but just have not done so yet; and (d) the Department's delay has discouraged some students from applying at all.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

1    are currently pending before the Department. The Department has already

2    determined that tens of thousands of these claims qualify for expedited, full relief

3    under the Corinthian Fraud Findings. New claims continue to mount.

4         80.    The Department is unreasonably delaying agency action by failing to

5    timely approve pending borrower-defense claims in contravention of agency

6    determinations, established procedures, and prior practice.

7         81.    The Department has provided no adequate justification for this delay.

8         82.    This delay harms affected borrowers.

9         83.    The Department has unreasonably delayed agency action on borrower-

10   defense claims covered by the Corinthian Fraud Findings and should be compelled

11   under 5 U.S.C. § 706(1) to approve them in accordance with agency determinations,

12   established procedures, and prior practice.

13                              **CLAIM II**

14              **UNLAWFUL RETROACTIVE AGENCY ACTION**

15        84.    The People incorporate by reference paragraphs 1 through 72 and 75

16   through 80.

17        85.    Under the APA, a reviewing court shall "hold unlawful and set aside

18   agency action, findings, and conclusions found to be arbitrary, capricious, an abuse

19   of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

20        86.    The Department's failure to follow agency determinations, established

21   procedures, and prior practice for pending borrower-defense claims covered by the

22   Corinthian Fraud Findings constitutes an unacknowledged or constructive repeal of

23   its rule applicable to those claims.

24        87.    The Department is operating under a revised rule to no longer grant

25   expedited, full relief to borrower-defense claims covered by the Corinthian Fraud

26   Findings.

27        88.    This revised rule is an abandonment of agency determinations,

28   established procedures, and prior practice.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

89.    This revised rule harms affected borrowers, including those with pending borrower-defense claims and those covered by the Corinthian Fraud Findings who have not yet submitted a claim.

90.    Affected borrowers have reasonably relied on the Department's determinations, established procedures, and prior practice.

91.    The Department's application of a revised rule to affected borrowers' claims violates 5 U.S.C. § 551(4) because it is a retroactive application of a new rule to borrowers that the Department has already determined are qualified for expedited, full borrower-defense relief. It is therefore arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and should be vacated and set aside under 5 U.S.C. § 706(2)(A).

## CLAIM III

### UNEQUAL TREATMENT OF CLAIMS

92.    The People incorporate by reference paragraphs 1 through 72 and 75 through 80.

93.    Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

94.    The Department's failure to follow agency determinations, established procedures, and prior practice for pending Corinthian borrower-defense claims constitutes an unacknowledged or constructive denial of those claims.

95.    The Department's denial of any borrower-defense claim covered by the Corinthian Fraud Findings is inconsistent with those findings, agency determinations, and prior practice of granting full relief to 28,000 claimants covered by the same findings.

96.    The Department's failure to provide an adequate justification for its disparate and unequal treatment of similarly situated claimants renders these denials arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

law. They should therefore by vacated and set aside under 5 U.S.C. § 706(2)(A).

## CLAIM IV

### UNLAWFUL DEBT COLLECTION AGAINST STUDENTS WITH PENDING BORROWER-DEFENSE CLAIMS

97.     The People incorporate by reference paragraphs 1 through 72.

98.     Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

99.     For many borrowers with pending borrower-defense claims (whether or not covered by the Corinthian Fraud Findings), the Department has submitted their loans to the U.S. Department of the Treasury for collection through administrative offset (31 U.S.C. § 3716) or tax refund offset (31 U.S.C. § 3720A).

100.   In doing so, the Department has certified that these loans are "legally enforceable." 31 C.F.R. § 285.2(d)(1); 31 C.F.R. § 285.5(d)(6). These loans are not "legally enforceable" because they are "the subject of a pending administrative review process" and "collection action during the review process is prohibited." 31 C.F.R. § 285.5(b).

101.   The Department's conduct is also inconsistent with agency statements that it will stop collections on the loans of borrower-defense claimants that opt for forbearance.

102.   These certifications are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. They should therefore be held unlawful and set aside under 5 U.S.C. § 706(2)(A).

## CLAIM V

### UNLAWFUL DEBT COLLECTION AGAINST STUDENTS COVERED BY THE CORINTHIAN FRAUD FINDINGS

103.   The People incorporate by reference paragraphs 1 through 72.

104.   For many borrowers covered by the Corinthian Fraud Findings (whether or not they submitted a borrower-defense claim), the Department has

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

engaged and is engaging in the following acts or omissions:

        A.     The Department has submitted their loans to the U.S. Department of the Treasury for collection through administrative offset (31 U.S.C. § 3716) or tax refund offset (31 U.S.C. § 3720A). In doing so, the Department has certified that these loans are "legally enforceable." 31 C.F.R. § 285.2(d)(1); 31 C.F.R. § 285.5(d)(6). For a loan to be "legally enforceable," the Department must make "a final agency determination that the debt, in the amount stated, is due, and there are no legal bars to collection by offset." 31 C.F.R. § 285.5(b).

        B.     The Department uses administrative wage garnishment (34 C.F.R. § 34.1, et seq.) to collect their loans. In doing so, the Department has determined that these borrowers' loans are owed and "current[ly] enforceab[le]." 34 C.F.R. §§ 34.3, 34.4, 34.6, 34.8.

105.   In light of the Corinthian Fraud Findings, the Department is aware that the loans of borrowers covered by these agency findings are not enforceable because there are legal bars to collection. Specifically, the Department is aware that borrowers covered by the Corinthian Fraud Findings have valid defenses to repayment, including (a) a borrower defense under 34 C.F.R. § 685.206(c)(1), and (b) a contractual defense arising under the Department's Master Promissory Note.

106.   The Department's use of administrative offset, tax refund offset, and administrative wage garnishment against these borrowers is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and should therefore be held unlawful and set aside under 5 U.S.C. § 706(2)(A).

## DEMAND FOR RELIEF

WHEREFORE, the People respectfully request that this Court enter a judgment in their favor and grant the following relief:

        A.     Vacate all denials of borrower-defense claims covered by the Corinthian Fraud Findings;

        B.     Compel the Department to approve and grant full relief to all

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

1    pending and future borrower-defense claimants covered by the Corinthian Fraud

2    Findings;

3             C.      Declare unlawful and set aside Department action to collect on

4    loans subject to pending borrower-defense claims (whether or not covered by the

5    Corinthian Fraud Findings) in which the borrower has requested a forbearance or

6    collection stoppage;

7             D.      Declare unlawful and set aside Department determinations and

8    certifications that the loans of borrowers with pending borrower-defense claims

9    (whether or not covered by the Corinthian Fraud Findings) are eligible for

10   administrative offset or tax refund offset;

11            E.      Declare unlawful and set aside Department determinations and

12   certifications that the loans of borrowers covered by the Corinthian Fraud Findings

13   (whether or not they have submitted a borrower-defense claim) are eligible for

14   administrative offset, tax refund offset, or administrative wage garnishment.

15            F.      Award the People reasonable costs and attorneys' fees; and

16            G.      Grant other relief as the Court deems just and proper.

17

18   Dated: December 14, 2017            Respectfully submitted,

19                                        XAVIER BECERRA
                                          Attorney General of California
20

21

22                                        /s/ Bernard A. Eskandari
                                          BERNARD A. ESKANDARI
23                                        Deputy Attorney General

24                                        *Attorneys for the People of the*
                                          *State of California*
25

26

27

28

25                              COMPLAINT FOR DECLARATORY
                                    AND INJUNCTIVE RELIEF