1    CHAD A. READLER
     Acting Assistant Attorney General
2
     ALEX G. TSE
3    Acting United States Attorney

4    MARCIA BERMAN
     Assistant Branch Director
5
     KAREN S. BLOOM
6    Senior Counsel
     R. CHARLIE MERRITT
7    Trial Attorney
     Civil Division, Federal Programs Branch
8    U.S. Department of Justice
     P.O. Box 883
9    Washington, D.C. 20044
     Telephone: (202) 514-4964
10   Facsimile: (202) 616-8460
     E-mail: karen.s.bloom@usdoj.gov
11

12   *Attorneys for Defendants*

13

14              **UNITED STATES DISTRICT COURT**
         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
15

16   PEOPLE OF THE STATE OF CALIFORNIA
     ex rel. Xavier Becerra, Attorney General of      No.  3:17-cv-7106
17   California,

18

19                            Plaintiff,
                                                      **DEFENDANTS' NOTICE OF MOTION**
20            v.                                       **AND MOTION TO DISMISS**
                                                      **PLAINTIFF'S COMPLAINT FOR**
21                                                    **DECLARATORY AND INJUNCTIVE**
     UNITED STATES DEPARTMENT OF                      **RELIEF**
22   EDUCATION and BETSY DEVOS, in her
     official capacity as Secretary of Education
23                                                    Date: June 4, 2018
                                                      Time: 1:30 p.m.
24                            Defendants.             Place: Courtroom A, 15th Floor
                                                      Magistrate Judge Sallie Kim
25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION TO DISMISS .................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES………………………………………… 1

  INTRODUCTION………………………………………………………………………… 1

  BACKGROUND ........................................................................................................................3

    I.   STATUTORY AND REGULATORY BACKGROUND ...........................................3

        A.    The William D. Ford Federal Direct Loan Program And Borrower Defense
to Repayment……………………………………………………….……….....3

        B.    The Department's Authority to Collect Defaulted Student Loans.................4

    II.   CORINTHIAN'S COLLAPSE AND THE DEPARTMENT'S RESPONSE………6

        A.    The Department's Findings of Misrepresentations at Corinthian.................6

        B.    The Department's Processing of Borrower Defense Applications................7

    III.   THIS LAWSUIT…………………………………………………………………9

  STANDARD OF REVIEW……………………………………………………………...10

  ARGUMENT……………………………………………………………………………10

    I.   PLANTIFF LACKS STANDING TO SUE……………...……………….........10

        A.    Plaintiff Lacks Standing To Bring This Action Against The Federal
Government as *Parens Patriae*..……………………………….………….....11

        B.    Plaintiff Has Not Alleged Any Direct Injury That Is Actual, Imminent, and
Traceable To The Department's Processing of Borrower Defense
Claims……………………………………………………………………..12

    II.   CLAIM I FAILS TO STATE A PLAUSIBLE CLAIM FOR UNREASONABLE
DELAY…………………………….………...………………….......................14

    III.   CLAIM II FAILS TO STATE A PLAUSIBLE, REVIEWABLE CLAIM THAT
ANY PARTICULAR FINAL AGENCY ACTION WAS INVALID UNDER
SECTION 706(2)……………………….……...…………….............................17

IV.  CLAIM III FAILS TO STATE A PLAUSIBLE, REVIEWABLE CLAIM THAT
     ANY PARTICULAR FINAL AGENCY ACTION WAS INVALID UNDER
     SECTION 706(2)……………..………..………………….............................19

V.   CLAIMS IV AND V DO NOT STATE REVIEWABLE CLAIMS UNDER
     SECTION 706(2) OF THE APA……...…………………..................................20

     A.   Plaintiff Has Not Identified Any Concrete, Discrete, "Agency Action"
          Subject to Judical Review Under Section 706(2) of the APA………….......21

     B.   Plaintiff Does Not Allege That The Department Engaged In Any Unlawful
          Collection Activity………………………………………………………...22

          1.   Claims IV and V Erroneously Assume that Collection Activity Must
               Cease Before the Secretary Determines a Borrower Defense is
               Successful……………………………………………………………22

          2.   Treasury's Regulation Does Not Prohibit Collection Activity While a
               Borrower Defense Claim is Pending………..…………………… 23

          3.   Plaitiff Does Not Allege Administrative Remedies Were Exhausted.25

CONCLUSION ...................................................................................................... 25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Baez,*
  458 U.S. 592 (1982) ................................................................... 11, 12

*Avocados Plus Inc. v. Veneman,*
  370 F.3d 1243 (D.C. Cir. 2004) ............................................................. 25

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .......................................................................... 10

*Cal. Trout v. FERC,*
  572 F.3d 1003 (9th Cir. 2009) .............................................................. 17

*Citizens Against Ruining the Env't v. EPA,*
  535 F.3d 670 (7th Cir. 2008) ............................................................... 12

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) .......................................................................... 11

*Cloverdale Rancheria of Pomo Indians of Cal. v. Salazar,*
  No. 5:10–cv–1605 JF/PVT, 2011 WL 1883196 (N.D. Cal. May 17, 2011) ............................. 14

*Cohen v. Holder,*
  No. 14–cv–1609–BAS(MDD), 2015 WL 1886553 (S.D. Cal. Apr. 24, 2015) ......................... 14

*CREW v.SEC,*
  916 F. Supp.2d 141 (D.D.C. 2013) .......................................................... 17

*Ctr. for Biological Diversity v. U.S. Dep't of Housing and Urban Dev.,*
  241 F.R.D. 495 (D. Ariz. 2006) ............................................................. 21

*Ctr. for Biological Diversity v. Zinke,*
  260 F. Supp. 3d 11 (D.D.C. 2017) .......................................................... 16

*Darensburg v. Metropolitan Transp. Com'n,*
  No. C-05-01597 EDL, 2005 WL 2277031 (N.D. Cal. Sept. 19, 2005) .................................... 13

Defendants' Notice of Motion and Motion to Dismiss
3:17-cv-7106 SK

*Defs. of Wildlife v. Flowers*,

No. CIV02195TUCCKJ, 2003 WL 22143270 (D. Ariz. 2003) .................................. 22

*Defs. of Wildlife v. Tuggle*,

607 f. Supp. 2d 1095 (D. Arz.2009) ............................................................. 19

*Elk Run Coal Co. v. U.S. Dep't of Labor*,

804 F. Supp. 2d 10 (D.D.C. 2011) ............................................................... 21

*Evans v. Wells Fargo Bank, N.A.*,

Case No.: 13–cv–2371 JSC, 2013 WL 4049062 (N.D. Cal. Aug. 8, 2013) ............... 10

*Friends of the Earth, Bluewater Network Div. v. U.S. Dep't of Interior*,

478 F. Supp. 2d 11 (D.D.C. 2007) ............................................................... 18

*Harrill v. U.S. Dep't of Educ.*,

No. 1:07–CV–00385, 2009 WL 230126 (S.D. Ohio Jan. 30, 2009) ........................... 5

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,

593 F.3d 923 (9th Cir. 2010) ..................................................................... 17

*Hi-Tech Pharmacal, Inc. v. FDA*,

587 F. Supp. 2d 1 (D.D.C. 2008) ................................................................. 19

*Lujan v. Defs. of Wildlife*,

504 U.S. 555  (1992) ............................................................................... 11

*Lujan v. Nat'l Wildlife Fed'n*,

497 U.S. 871 (1990) ....................................................................... 18, 21, 22

*Manriquez v. DeVos*,

3:17-cv-7106 (N.D. Cal) .......................................................................... 12

*Massachusetts v. Mellon*,

262 U.S. 447 (1923) ............................................................................... 12

*Max Sound Corp. v. Google, Inc.*,

147 F. Supp. 3d 948 (N.D. Cal. 2015) ........................................................... 10

*Mendia v. Garcia*,

768 F.3d 1009 (9th Cir. 2014) ................................................................... 13

1  *Missouri ex rel. Koster v. Harris*,

2    847 F.3d 646 (9th Cir. 2017) ...................................................................... 12, 13

3  *Norton v. S. Utah Wilderness All.*,

4    542 us 55 (2004) ............................................................................ *passim*

5  *Ogunmokun v. Am. Educ. Servs.*,

6    No. 12–CV–4403 (RRM)(JO), 2014 WL 4724707 (E.D.N.Y. Sept. 23, 2014) ....................... 25

7  *Or. Natural Desert Ass'n v. U.S. Forest Serv.*,

8    465 F.3d 977 (9th Cir. 2006) ...................................................................... 18

9  *Oregon v. Legal Servs. Corp.*,

10    552 F.3d 965 (9th Cir. 2009) ..................................................................... 12

11  *Schmier v. U.S. Court of Appeals for the Ninth Circuit*,

12    136 F. Supp. 2d 1048 (N.D. Cal. 2001) ........................................................... 10

13  *Sheikh v. Lynch*,

14    Case No. 15-cv-01873-YGR, 2015 WL 7731802 (N.D. Cal. Dec. 1, 2015) ........................... 25

15  *Shwarz v. United States*,

16    234 F.3d 428 (9th Cir. 2000) ..................................................................... 15

17  *Sierra Forest Legacy v. Sherman*,

18    646 F.3d 1161 (9th Cir. 2011) .................................................................... 12

19  *Sierra Forest Legacy v. U.S. Forest Serv.*,

20    598 F. Supp. 2d 1058 (N.D. Cal. 2009) ........................................................... 18

21  *Spokeo, Inc. v. Robins*,

22    136 S. Ct. 1540 (2016) .......................................................................... 11

23  *Susan B. Anthony List v. Driehaus*,

24    134 S. Ct. 2334 (2014) .......................................................................... 11

25  *United States v. Beulke*,

26    892 F. Supp. 2d 1176 (D.S.D. 2012) .............................................................. 25

27  *Vietnam Veterans of Am. v. CIA*,

28    811 F.3d 1068 (9th Cir. 2015) .................................................................... 14

Defendants' Notice of Motion and Motion to Dismiss
3:17-cv-7106 SK

*Warth v. Seldin*,

    422 U.S. 490 (1975) ........................................................................... 11

*Washington v. Chimei Innolux Corp.*,

    659 F.3d 842 (9th Cir. 2011) ........................................................... 11

Statutes

20 U.S.C. § 1070 .................................................................................... 3

20 U.S.C. § 1087a; 1087ll .................................................................... 3

20 U.S.C. § 1087e(h) ....................................................................... 3, 15

20 U.S.C. § 1095a .................................................................................. 5

31 U.S.C. § 3711(a)(1) ......................................................................... 4

31 U.S.C. § 3716(c)(6)(A) .................................................................. 5

31 U.S.C. § 3720A .......................................................................... 4, 5

31 U.S.C. § 3720A(c) ........................................................................... 5

31 U.S.C. § 3720D ................................................................................ 5

31 U.S.C. § 3720D(b)(5)(A) ............................................................... 5

31 U.S.C. §§ 3716 ................................................................................. 5

31 U.S.C. §§ 3716(c)(1) ...................................................................... 5

31 U.S.C. §§ 3716(c)(6) ...................................................................... 4

Regulations

31 C.F.R. § 285.2(b) ............................................................................. 5

31 C.F.R. § 285.5(a) ............................................................................. 5

31 C.F.R. § 285.5(b) ......................................................................... 5, 23

31 C.F.R. § 285.5(c) .......................................................................... 4, 5

31 C.F.R. § 285.5(d) .......................................................................... 4, 5

31 C.F.R. § 285.5(f)-(h) ....................................................................... 5

34 C.F.R. pt. 34 ..................................................................................... 5

34 C.F.R. § 30.22(b)(3); 30.24; 30.25 ............................................... 5

34 C.F.R. § 685.205 .................................................................................................. 8

34 C.F.R. § 685.206(c) ......................................................................................... *passim*

81 Fed. Reg. 39,330 (June 16, 2016) ............................................................. 4, 6, 16

82 Fed. Reg. 49,114 (Oct. 24, 2017) ...................................................................... 15

Other Authorities

Federal Rules of Civil Procedure 12(b)(1); 12(b)(6)………………………………………1

**NOTICE OF MOTION AND MOTION TO DISMISS**

Notice is hereby given that on June 4, 2018, at 1:30 p.m., or as soon thereafter as counsel may be heard, before the Honorable Sallie Kim, in Courtroom A of the 15th Floor of the Philip E. Burton Courthouse and Federal Building, 450 Golden Gate Avenue, San Francisco, California 94102, Defendants will move the Court to dismiss this action.

Defendants move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The basis for this motion is set forth more fully in the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

The U.S. Department of Education (the "Department" or "ED") loans billions of dollars to students annually to help them cover the costs of attending post-secondary schools. Where a school engages in conduct that would give rise to a cause of action against it under applicable state law, the Department permits a borrower to raise such conduct as a defense against that borrower's repayment obligation on a Direct Loan (*i.e.*, to raise a "borrower defense" claim). *See* 34 C.F.R. § 685.206(c). If the Department determines that a borrower defense claim is successful, the Secretary of Education ("Secretary") informs the borrower that s/he is relieved of the obligation to pay all or part of the loan, and the Secretary can also afford the borrower "such further relief as the Secretary determines is appropriate under the circumstances." *Id*. § 685.206(c)(2).

The regulation governing "borrower defense" was promulgated more than twenty years ago, but was rarely used until 2015. That year, Corinthian Colleges, Inc. ("Corinthian" or "CCI"), announced the closure of all of its schools and filed for bankruptcy. Subsequently, the Department received over 100,000 borrower defense claims from student borrowers who attended Corinthian-operated schools and other institutions. Because the Department determined that CCI had misrepresented its job placement rates, it responded with measures to provide *ad hoc* relief to affected borrowers, simplifying the application process and discharging the associated student loan debt of borrowers who were able to establish that they were aware of and relied on these misrepresentations. At the same time, the Department maintained its discretion to, as provided in

the regulation, discharge "all or part" of a loan subject to a successful borrower defense claim and provide such other relief as the Secretary deemed appropriate.  The Department has been and is currently engaged in reviewing, adjudicating, and processing pending borrower defense claims.

In this action, the State of California seeks wholesale changes to the Department's process for determining and awarding relief to individual borrowers based on their assertion of a defense to repayment.  Specifically, it seeks to compel the Department to (1) issue favorable determinations awarding full loan discharges to all pending and future borrower defense claimants covered by the Department's findings about Corinthian's conduct; and (2) set aside a remarkably broad set of Department determinations and certifications that certain loans are eligible for collection activity, including all loans of borrowers with pending borrower defense claims (whether or not covered by the Department's findings) and all loans of borrowers covered by the Department's findings (whether or not they had actually submitted a defense to repayment of such loans).  Plaintiff's claims, however, should be dismissed because Plaintiff, as a state, does not have standing to seek this relief on behalf of individual borrowers:  It is well-established that a state does not have standing as *parens patriae* to bring an action against the federal government.

Moreover, Plaintiff fails to state a plausible claim to relief.  Claim I generally alleges that the Department unreasonably delayed approving pending borrower defense claims.  But Plaintiff does not even identify which claims it asserts are being unreasonably delayed, and in any event does not allege that the Department failed to take any *discrete* action that it is *required* to take.  In particular, Plaintiff fails to establish that the Department created a "rule" entitling all borrowers covered by the Department's findings to "full relief," defined by Plaintiff to include a full discharge of amounts owed and a refund of any loan amounts already paid.  Because the Department created no such rule, its asserted failure to not grant "full relief" does not unreasonably delay any discrete and mandatory agency action.  Claims II and III are similarly dependent on the creation and abandonment of this "full relief rule."  But without any binding agency determination entitling borrowers on whose behalf Plaintiff purports to bring this suit to such relief, Plaintiff's allegation that the Department unlawfully applied a "revised" "rule" retroactively to borrowers "qualified" for relief under the original "rule" (Claim II), and that it failed to "equally" evaluate all borrower

defense claims under the original "rule" (Claim III), necessarily fail.  In any event, Plaintiff does not identify the concrete, discrete agency action – either applying a new "rule" retroactively, or treating a new claim "unequally" – that would form the basis of any of these claims.

Claims IV and V fare no better.  Plaintiff alleges the Department engaged in unlawful collection activity with respect to borrowers who submitted borrower defense applications or who are covered by the Department's CCI findings.  The Complaint, however, neither identifies any particular unlawful collection activity nor plausibly explains why collection activity with respect to any of the unidentified borrowers it references would be unlawful.  Because the Plaintiff lacks standing and fails to state a plausible claim to relief, the Complaint should be dismissed.

BACKGROUND

I.    <u>Statutory and Regulatory Background</u>

    A.    **The William D. Ford Federal Direct Loan Program And Borrower Defense To Repayment**

Under Title IV of the Higher Education Act of 1965, as amended ("HEA"), 20 U.S.C. § 1070 *et seq*., the Department can enter into an agreement with a post-secondary school that permits students to receive federal grants and loans to pay the costs of attending the school.  The William D. Ford Federal Direct Loan Program, the largest student loan program authorized under Title IV, *see* 20 U.S.C. § 1087a *et seq*., allows students to apply for and receive Direct Loans from the federal government to pay their expenses, including tuition and living expenses.  *Id.* § 1087*ll*.

While students generally must repay any federal loans received, the HEA carves out exceptions and authorizes the Secretary to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment."  20 U.S.C. § 1087e(h).  Pursuant to this authority, the Department codified regulations permitting a borrower, "[i]n any proceeding to collect on a Direct Loan," to "assert as a defense to repayment, any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law."  34 C.F.R. § 685.206(c).  Such "proceedings" "include, but are not limited to," administrative proceedings for tax refund offset, wage garnishment, salary offset for federal employees, and consumer reporting agency reporting.  *Id*. §§ 685.206(c)(1)(i)-(iv).

The regulation does not set forth any process or timeline for the Department to employ in processing or adjudicating claims for borrower defense, and does not provide any standard or threshold of proof for the Department to apply in determining whether an asserted basis for borrower defense demonstrates "a cause of action against the school under applicable State law," or entitles the borrower to relief. *See, e.g.*, 81 Fed. Reg. 39,330, 39,346 (June 16, 2016) ("2016 NPRM") (Department notice of proposed rulemaking recognizing that the existing borrower defense regulation "does not provide a process for claims"). Instead, the regulation simply provides that when a borrower asserts a "successful" defense against repayment, "the Secretary notifies the borrower that the borrower is relieved of the obligation to repay all *or part* of the loan and associated costs and fees that the borrower would otherwise be obligated to pay . . . [and] . . . affords the borrower such further relief *as the Secretary determines is appropriate* under the circumstances." 34 C.F.R § 685.206(c)(2) (emphasis added). In addition, the Secretary "may initiate an appropriate proceeding to require the school whose act or omission resulted in the borrower's successful defense against repayment of a Direct Loan to pay to the Secretary the amount of the loan to which the defense applies." *Id*. § 685.206(c)(3). The regulation thus emphasizes the Secretary's discretion and speaks in sole terms of the borrower asserting a defense against repayment as a prerequisite to securing relief. *Id*. § 685.206(c).

## B.     The Department's Authority To Collect Defaulted Student Loans

Federal law requires that executive agencies "try to collect" any "claim" of the United States "arising out of the activities of, or referred to, the agency," 31 U.S.C. § 3711(a)(1), and defines a "claim" as "any amount of funds … determined by an appropriate [federal] official of … to be owed to the United States by a person … or entity other than another Federal agency," *id*. § 3701(b)(1). Federal agencies are authorized to collect their debts through several tools, including, as relevant here, administrative offset, such as tax refund offset, and wage garnishment.

With respect to offset, Congress requires federal agencies to refer delinquent nontax debt to the Department of the Treasury ("Treasury") for collection, including through administrative offset of federal nontax and tax refund payments. 31 U.S.C. §§ 3716(c)(6), 3720A; 31 C.F.R. §§ 285.5(c), (d). Treasury then must offset these payments in order to collect the debt. 31 U.S.C.

§§ 3716(c)(1), 3720A(c).  To carry out this statutory mandate, Treasury operates a centralized Treasury Offset Program ("TOP"), s*ee* 31 C.F.R. § 285.5(a)(1), through which Treasury matches payments to be made to a payee (like benefits payments or tax refunds to be paid from federal "payment agencies") with delinquent debts held by "creditor agencies," such as ED.  *See* 31 C.F.R. §§ 285.5(b), 285.5(c)(2), 285.2(b).  If there is a match, Treasury pays the offset amount (less any fees) to the creditor agency, and sends any remainder to the payee.  *See id.* §§ 285.5(f)-(h).

In general, the TOP applies to past-due, legally enforceable debts.  *See* 31 U.S.C. § 3716(c)(6)(A); 31 C.F.R. § 285.5(d).  Accordingly, a creditor agency must certify that any debt referred to Treasury for collection through administrative offset is, among other things, "[l]egally enforceable," *i.e.*, that "there has been a final agency determination that the debt … is due, and there are no legal bars to collection by offset."  *Id*. § 285.5(b).  If, for example, a statute or regulation explicitly prohibits the collection of a particular debt (such as a debt subject to an automatic bankruptcy stay or an administrative review process required by law), then the debt is not considered "legally enforceable."  *Id*.  Both Treasury and ED regulations set forth procedural requirements with which the Department must comply when collecting a debt through offset, including providing the debtor with notice and the opportunity, through an administrative review process (including a hearing), to contest the legal enforceability of the relevant debt.  *See* 31 C.F.R. § 285.5(d)(6)(ii); 34 C.F.R. §§ 30.22(b)(3), 30.24, 30.25; *see also* 31 U.S.C. §§ 3716, 3720A.

Congress has further authorized agency heads to "garnish the disposable pay" of individuals owing to the agency a delinquent nontax debt arising out of a program the agency administers.  31 U.S.C. § 3720D; *see also* 20 U.S.C. § 1095a.  Before the Department can collect a debt through administrative wage garnishment, it must notify the debtor of its intent to do so and provide the debtor an opportunity for a hearing concerning the "existence or the amount of the debt."  31 U.S.C. § 3720D(b)(5)(A); *see also* 34 C.F.R. pt. 34 (setting forth Department procedures for collecting debt through administrative wage garnishment).  "Unless the debtor makes an objection or requests a hearing, the Department of Education is authorized to issue an [administrative wage garnishment] order that does not exceed 15 percent of the debtor's disposable pay."  *Harrill v. U.S. Dep't of Educ.*, 2009 WL 230126, at *6 (S.D. Ohio Jan. 30, 2009).

II.     **Corinthian's Collapse And The Department's Response**

      A.     **The Department's Findings Of Misrepresentation At Corinthian**

      Corinthian was a "publicly traded company operating numerous postsecondary schools that enrolled over 70,000 students at more than 100 campuses nationwide." 81 Fed. Reg. at 39,335. In the spring of 2015, in the wake of multiple federal and state investigations into its misconduct, Corinthian announced the closure of all of its schools and filed for bankruptcy. *Id.* The Department's investigation concluded that Corinthian systematically misrepresented the rates at which its graduates were employed (*i.e.*, its "job placement rates") across a number of its campuses nationwide.[1] Previously, the borrower defense regulation had been "rarely used," 81 Fed. Reg. at 39,330, but Corinthian's collapse "almost immediately produced over 1,000 claims from borrowers for a defense to repayment," U.S. Department of Education, First Report of the Special Master for Borrower Defense to the Under Secretary at 5 (Sept. 3, 2015) ("First Special Master Report"),[2] a number that has climbed upwards towards 100,000 total claims over the last two years. *See* U.S. Department of Education, Office of Inspector General ("OIG"), *Federal Student Aid's Borrower Defense to Repayment Loan Discharge Process* (Dec. 8, 2017) ("OIG Report").[3]

      Beginning in 2015, the Department published information on its website about the availability of and process for certain CCI borrowers to seek various avenues of relief. *See* FSA Announcement. This includes eligibility information and instructions on how to assert a borrower defense, as well as links to lists of Corinthian campuses and academic programs covered by the Department's findings regarding misleading job placement rates ("findings cohorts"). The links contain the name of each covered program and a date range to which the findings apply.[4] To

---

[1]   *See* Notice of Intent to Fine Heald College, April 14, 2015, https://www2.ed.gov/documents/press-releases/heald-fine-action-placement-rate.pdf; *see also* Federal Student Aid ("FSA"), Information About Debt Relief for Corinthian Colleges Students ("FSA Announcement"), https://studentaid.ed.gov/sa/about/announcements/corinthian (findings).
[2]   *See* https://www2.ed.gov/documents/press-releases/report-special-master-borrower-defense-1.pdf.
[3] *See* https://www2.ed.gov/about/offices/list/oig/auditreports/fy2018/i04r0003.pdf.
[4] *See* https://studentaid.ed.gov/sa/sites/default/files/heald-findings.pdf (last visited Apr. 24, 2018) (listing Heald College programs); https://studentaid.ed.gov/sa/sites/default/files/ev-wy-findings.pdf (listing Everest/WyoTech programs).

simplify the application process, the Department created "attestation forms"[5] allowing affected borrowers in the covered programs to apply for a borrower defense loan discharge by providing the program s/he attended, the credential or degree sought, and the dates of attendance, and certifying that s/he chose to enroll based, in substantial part, on the school's advertising materials and certain other available information regarding job placement rates.

These attestation forms, however, do not specify whether the discharges for which they allow borrowers to apply relate to "all" or "part" of the loan the borrower is otherwise obligated to pay, 34 C.F.R. § 685.206(c)(2), thus mirroring the Department's other public statements about relief prospectively available to Corinthian borrowers.  *See*, *e.g.*, U.S. Department of Education, Fact Sheet: Protecting Students from Abusive Career Colleges (June 8, 2015) ("June 8 Fact Sheet")[6] (CCI borrowers could "receive loan forgiveness" if they established a defense to repayment); FSA Announcement; First Special Master Report at 7 (describing FSA's outreach efforts to notify borrowers "that they may be eligible for debt relief based on borrower defense").

**B.      The Department's Processing Of Borrower Defense Applications**

Based on these developments, a significantly increased number of student borrowers have submitted borrower defense claims in recent years.  After receiving fewer than 10 such applications prior to 2015, the Department received, in 2016 alone, 77,340 borrower defense applications, and another 47,450 in 2017.  *See* U.S. Department of Education, Office of Postsecondary Education, *Borrower Defense Claims: Data Analysis*, at 6 (Nov. 2017).[7]  As of November 2017, the Department had resolved over 31,000 of these applications.  *Id*.  The Department continues to review, adjudicate, and process the remaining clams, and on December 20, 2017, announced that it had "approved for discharge 12,900 pending claims submitted by former [CCI] students, and 8,600 pending claims have been denied.  This action includes claims that have been received

---

[5] *See* https://borrowerdischarge.ed.gov/FormWizard/RLD/RLDReview.aspx (displaying attestations for Heald College); https://borrowerdischarge.ed.gov/FormWizard/RLD/RLDReview.aspx?School=EverestWyoTech (displaying attestations for Everest/WyoTech).
[6] https://www.ed.gov/news/press-releases/fact-sheet-protecting-students-abusive-career-colleges.
[7] *See* https://www2.ed.gov/policy/highered/reg/hearulemaking/2017/borrowerdefense.html.

1  during this administration."   U.S. Department of Education, Improved Borrower Defense

2  Discharge Process Press Release (December 20, 2017) ("December Press Release").[8]

3       Throughout 2015 and 2016, the Department generally awarded full discharges of Direct

4  Loan debt to Corinthian borrowers who were able to establish a successful defense to repayment

5  based on the Department's findings.  *See, e.g.*, OIG Report at 31-32 (FSA Comments).  But as the

6  number of borrower defense claims increased, the Department continued to review and adapt its

7  evolving process for resolving such claims, first appointing a Special Master to "creat[e] a process

8  to evaluate borrower defense claims" and then creating a special "Borrower Defense Unit" within

9  its FSA Enforcement Unit.  *See* OIG Report at 7-8.  And in the December Press Release, the

10  Department announced, at the conclusion of a "careful review to ensure a fair and efficient

11  process," an "improved discharge process for borrower defense to repayment claims."  Relief will

12  be afforded based on the harm Corinthian borrowers actually incurred as a result of their school's

13  misconduct, measured by comparing average earnings at Corinthian programs with the average

14  earnings at comparable programs that the Department determined have met its "gainful

15  employment" requirement.  December Press Release.  The Department announced that remaining

16  claims will be "adjudicated systematically under the newly announced discharge process."  *Id.*

17       In addition, the Department has undertaken other efforts to improve the borrower defense

18  application process and reduce the burden on affected borrowers.  For example, although the

19  current borrower defense regulation does not provide for forbearance during the pendency of a

20  borrower defense application, *see* 34 C.F.R. § 685.205 (listing the circumstances in which

21  forbearance is available), the Department, in an exercise of administrative grace, made such relief

22  available to all Corinthian borrowers (and for borrowers already in default, the option to halt

23  collection activities).  *See* June 8 Fact Sheet; *see also* FSA Enforcement Office, Report on

24  Borrower Defense at 2 (Oct. 28, 2016)[9] (once a borrower defense claim is submitted, the

25  "borrowers' loans are placed in forbearance or stopped collection until their claim is resolved,

26  unless they opt out").  The Department also decided that it will apply to denied claims a credit for

27  
28  

---

[8] *See* https://www.ed.gov/news/press-releases/improved-borrower-defense-discharge-process-will-aid-defrauded-borrowers-protect-taxpayers.

[9] *See* https://www2.ed.gov/documents/press-releases/borrower-defense-report.pdf.

amounts approximately equal to the interest that has accrued on a borrower's subject loans starting one year after the borrower defense application was filed. *See* IG Report at 17; December Press Release.

### III.   **This Lawsuit**

This is an action by the State of California purporting to represent the interests of an undefined set of student borrowers in receiving relief from federal student loans borrowed to attend Corinthian. To achieve that goal, Plaintiff seeks to displace the Secretary's discretionary judgment as to the relief appropriate to an individual borrower based on a successful defense to repayment through a sweeping court order compelling the Department to "approve and grant full relief to all pending *and* future borrower-defense claimants" covered by the Department's job placement rate findings, Compl. for Declaratory & Inj. Relief ("Compl.") at 24, Demand for Relief (B), ECF No. 1, a number that Plaintiff estimates to include 80,000 student borrowers, *id.* ¶ 42.

Plaintiff purportedly seeks relief on behalf of the entire group of borrowers covered by what Plaintiff refers to as the "Corinthian Fraud Findings," (*i.e.*, the Department's findings regarding Corinthian's misrepresentation of job placement rates for specific "findings cohorts" – groups of borrowers who attended certain CCI campuses within certain date ranges), even though, by Plaintiff's estimate, less than half of these students are "Californians." *Id.* Plaintiff asserts five claims, premised largely on the contention that the Department, through its findings and various public announcements, created a "rule" prospectively "qualif[ying]" all borrowers covered by those findings for "expedited borrower-defense relief," *id.*, defined by Plaintiff as "complete discharge of their federal student loans and refunds of any amounts paid on them," *id.* ¶ 38. Plaintiff argues that the Department is unreasonably delaying the full loan discharge that the "rule" requires and, apparently in the alternative, that the Department is unlawfully applying a "revised" rule retroactively to borrowers who have already been qualified for full discharges, and constructively "denying" pending claims in a manner inconsistent with prior decisions awarding full discharges to borrowers in findings cohorts. *See* Compl., Claims I-III.

Finally, Plaintiff alleges that the Department is unlawfully engaging in debt collection activity against (1) borrowers covered by the "Corinthian Fraud Findings," under the theory that

these borrowers (whether or not they have submitted a borrower defense claim) have "valid defenses to repayment" making their loan debts legally unenforceable; and (2) all borrowers with pending borrower defense claims, based on the contention that the mere pendency of a borrower defense claim renders the underlying debt legally unenforceable.  As relief, Plaintiff requests an order requiring the Department to vacate any denials of borrower defense claims submitted by borrowers in the findings cohorts, approve and grant full relief on all claims submitted by covered borrowers (including future claims), and setting aside any Department determination that a loan subject to a pending borrower defense claim is legally enforceable (as well as any action to collect on any such loan).  Plaintiff, however, lacks standing to bring a *parens patriae* action against the federal government, and in any case has failed to identify any discrete, mandatory action that the Department has either performed unlawfully or failed to perform.  Plaintiff's claims fail as a matter of law, and its Complaint should be dismissed.

## STANDARD OF REVIEW

Defendants move to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  "Standing is properly challenged through a Rule 12(b)(1) motion because it is 'a threshold jurisdictional issue.'"  *Max Sound Corp. v. Google, Inc.*, 147 F. Supp. 3d 948, 952 (N.D. Cal. 2015) (citation omitted).  As the party invoking federal jurisdiction, Plaintiff "bear[s] the burden of showing standing by establishing, *inter alia*, that [it] ha[s] suffered an injury in fact, *i.e.*, a concrete and particularized, actual or imminent invasion of a legally protected interest."  *Evans v. Wells Fargo Bank, N.A.*, 2013 WL 4049062, at *2 (N.D. Cal. Aug. 8, 2013) (citation omitted); *see also Schmier v. U.S. Court of Appeals for the Ninth Circuit*, 136 F. Supp. 2d 1048, 1051 (N.D. Cal. 2001).   Even if standing exists, the Complaint should be dismissed pursuant to Rule 12(b)(6) because it does not contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

### I.  **Plaintiff Lacks Standing To Sue**

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,'" and "[t]he doctrine of standing gives meaning to these constitutional limits by

'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (citation omitted).  Standing, "which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).  "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The "irreducible constitutional minimum of standing" has three elements: that a plaintiff suffer a concrete injury-in-fact, that the injury be fairly traceable to the challenged action of the defendant, and that it be likely (as opposed to speculative) that the injury will be redressed by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555 560–61 (1992) (internal citations omitted).

### A. Plaintiff Lacks Standing To Bring This Action Against The Federal Government As *Parens Patriae*

This is a suit on behalf of individuals[10] to compel relief specific to them (namely, to have the Department discharge student loan debt and stop collection activity).  Simply put, a state does not have standing to pursue an action in which it "is only a nominal party without a real interest of its own."  *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Baez*, 458 U.S. 592, 600 (1982).

Granted, the "doctrine of *parens patriae* allows a sovereign to bring suit on behalf of its citizens when the sovereign alleges injury to a sufficiently substantial segment of its population, articulates an interest apart from the interests of particular private parties, and expresses a quasi-sovereign interest."  *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011).  But where a state lacks a "real interest of its own," and merely "step[s] in to represent the interests of particular citizens," the state does not have standing under the *parens patriae* doctrine.  *Alfred L. Snapp*, 458 U.S. at 600.  As indicated above, this is clearly the latter type of suit.  The Complaint begins by decrying Defendants' failure to provide "critical, expedited student-loan debt relief to

---

[10] As noted above, Plaintiff does not appear to limit the population of borrowers on whose behalf it seeks relief to California borrowers, noting that the "Corinthian Fraud Findings" apply to "approximately 80,000" borrowers in 24 states, only about "38,000" of whom are Californians. Compl. ¶ 42.  Even if Plaintiff could properly bring claims on behalf of its own residents (which, in this case, it cannot), it has no basis for seeking relief on behalf of *non-resident* student borrowers. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975) (Article III standing requires a plaintiff to have "a personal stake in the outcome of the controversy" so as to warrant his invocation of jurisdiction).

tens of thousands of students," Compl. ¶ 1, details how these allegedly unlawful actions harm "California Borrowers," *see id.* ¶¶ 68-72, 82, 89, and seeks relief – *e.g.*, an order compelling the Department to approve and grant "full relief" to pending and future borrower defense claimants, *see generally* Compl. at 24-25, Demand for Relief – that would exclusively accrue to individual borrowers.  To the extent Plaintiff seeks to vindicate the interests of private citizens, it fails to create any "actual controversy between the State and the defendant," *Alfred L. Snapp.*, 458 U.S. at 602, and lacks standing as *parens patriae*.  *See also Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 974 (9th Cir. 2009) (allowing a state to "bring suit on behalf of its citizens solely by virtue of its interest that its citizens benefit from voluntary federal grants" would "make the *parens patriae* doctrine 'too vague to survive the standing requirements of Art. III." (citation omitted)).[11]

Perhaps recognizing this fundamental defect, Plaintiff tries to cover its tracks by referencing its own interest in "enhance[ing] the wellbeing of California residents by discharging the federal loans of California students who have been defrauded," which Plaintiff asserts is "acute" here because the state Attorney General's Office contributed to the Department's investigation into Corinthian. Compl. ¶ 22.  It is well-established, however, that a state "does not have standing as *parens patriae* to bring an action against the Federal government."  *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1178 (9th Cir. 2011) (citation omitted).  As the Supreme Court has long recognized, "it is no part of [a state's] duty or power to enforce [it's] rights in respect of their relations with the federal government."  *Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923).  To the extent Plaintiff's action is brought on behalf of its interests in protecting its citizens, Plaintiff lacks standing because "the United States, and not the state, represent the people's interests."  *Citizens Against Ruining the Env't v. EPA*, 535 F.3d 670, 676 (7th Cir. 2008).

### B.    Plaintiff Has Not Alleged Any Direct Injury That Is Actual, Imminent, And Traceable To The Department's Processing Of Borrower Defense Claims

---

[11] The Ninth Circuit has further recognized that "*parens patriae* standing is inappropriate where an aggrieved party could seek private relief."  *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 652 (9th Cir. 2017).  Such is the case here, as demonstrated by the related *Manriquez* case, a putative class action by a group of student borrowers that largely overlaps with the group of borrowers on whose behalf Plaintiff purports to bring the instant action, and which seeks similar relief.  *See Manriquez v. DeVos*, 3:17-cv-7106 (N.D. Cal.).

Even as Plaintiff devotes the beginning, middle, and end of its Complaint to securing loan relief on behalf of particular (if unidentified) borrowers, it passingly asserts a direct interest in the "enforcement" of the federal borrower defense scheme, insofar as it provides additional remedies for violations of state law and deters misconduct by post-secondary schools. Compl. ¶ 22. Initially, any assertion of direct harm is undercut insofar as Plaintiff's requested relief would accrue solely to the benefit of individual borrowers (a majority of whom do not even live in California). But in any event, Plaintiff's scarce allegations are insufficient to demonstrate standing.

To the extent that Plaintiff's asserted "interest" describes any injury to the Plaintiff, that injury would be inflicted not by the Department, but by institutions of higher education, under the apparent theory that they would violate state law at a higher rate if they knew that the Department would award full discharges to, or stop collection activity with respect to the loans of, a particular set of Corinthian borrowers. But as the Ninth Circuit has recognized, "more particular facts are needed to show standing" where, as here, "a plaintiff alleges that government action caused injury by influencing the conduct of third parties." *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014) (citation omitted). Here, Plaintiff alleges no facts suggesting the challenged government action – generally, delaying approval of pending borrower defense claims submitted by borrowers who attended a now-bankrupt school – increases the likelihood that other higher education institutions will violate California law in a manner that they otherwise would not have and that would inflict concrete, specific harm on the Plaintiff. Plaintiff here does not describe any current injury and has failed to explain how any future injury is "certainly impending." Its allegations of harm to its enforcement scheme are therefore "too speculative for Article III purposes." *Koster*, 847 F.3d at 654 (citation omitted); *see also Darensburg v. Metropolitan Transp. Com'n*, 2005 WL 2277031, at *7 (N.D. Cal. Sept. 19, 2005).

Plaintiff's final claim to standing, a single sentence alleging that the Department's "timely approval of borrower-defense claims" allows the students whose claims are accepted to access additional federal aid and "continue their studies at California's public colleges and universities," Compl. ¶ 22, is even more speculative. Again, the "injury" is an alleged loss of tuition dollars that is premised on the actions of *two* different third parties not before the Court: (1) the hypothetical

student borrower who does not take out additional federal loans to attend a particular college, and (2) the Corinthian-operated school whose actions allegedly forced this choice upon the hypothetical borrower.  But Plaintiff alleges *no* facts in support of this speculative claim, much less "particular facts" demonstrating how the Department's alleged failure to grant an unidentified set of student borrowers full discharge of their loans has prevented some quantifiable number of students from spending money on tuition at state colleges or universities,.  Such a purely theoretical injury cannot support Article III standing.  *See Cohen v. Holder*, 2015 WL 1886553, at *4 (S.D. Cal. Apr. 24, 2015) (rejecting standing argument based on "hypothetical facts").

## II.     Claim I Fails To State A Plausible Claim For Unreasonable Delay

A claim under the Administrative Procedure Act ("APA") to compel agency action unreasonably delayed can proceed "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 64 (2004).  "The agency action must be pursuant to a legal obligation 'so clearly set forth that it could traditionally have been enforced through a writ of mandamus.'"  *Vietnam Veterans of Am. v. CIA*, 811 F.3d 1068, 1075-76 (9th Cir. 2015) (citation omitted)).  In the absence of a command to carry out "a ministerial or non-discretionary act," about which the agency has "no discretion whatsoever," *SUWA*, 542 U.S. at 63-64, agency action cannot be deemed "*unlawfully withheld*," *id*. at 63, or "unreasonably delayed," *id*. at 63 n.1.  When presented with an unreasonable delay claim, "a court does not reach the question of whether a delay was unreasonable until it has found that the agency has failed to take a discrete, non-discretionary action."  *Cloverdale Rancheria of Pomo Indians of Cal. v. Salazar*, 2011 WL 1883196, at *3 (N.D. Cal. May 17, 2011) (citing *SUWA*, 542 U.S. at 63 n.1 ("a delay cannot be unreasonable with respect to action that is not required")).  Because Plaintiff seeks to compel agency action that is neither discrete nor mandatory, Claim I fails as a matter of law.

As an initial matter, Plaintiff's allegations that the Department has "delayed approval of all pending borrower-defense claims" for "more than 11 months," Compl. ¶ 78, and "has not approved a single borrower-defense claim" since January 20, 2017, *id*. ¶ 52, are erroneous and contradicted by materials cited in the Complaint and in the public record.  For example, as noted above, the

Department's website (cited in Compl., *e.g.*, ¶¶ 27, 32, 41) contains a press release announcing that in December 2017, the Department "approved for discharge 12,900 pending claims submitted by former [CCI] students," and that any remaining claims "will be adjudicated systematically." December Press Release; *see also* 82 Fed. Reg. 49,114, 49,115 (Oct. 24, 2017) (cited in Compl. ¶ 65) (stating that ED "*is continuing* to process borrower defense claims"). To the extent Plaintiff's claim is based on the Department's mere failure to process or approve pending claims, Plaintiff has failed to *plausibly* allege such failure and the claim should be dismissed. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000) (in ruling on a Rule 12(b)(6) motion, court need not accept as true "allegations that contradict facts that may be judicially noticed by the court").

To the extent Plaintiff instead challenges the Department's delay in awarding the "full relief" (*i.e.*, full discharge with refunds for all amounts paid), Compl. ¶ 89, that Plaintiff alleges is required by the "rule," the claim still fails because it seeks to compel agency action that is neither "discrete" nor that the agency is "required to take." Because Plaintiff does not identify any specific borrower whose pending claim has allegedly been delayed (but instead attempts to bring an improper *parens patriae* action), its Complaint does not actually allege any particular delay for the Court to review – *i.e.*, it fails to identify discrete agency action. Such basic pleading failure warrants dismissal. *See SUWA*, 542 U.S. at 64-65 (because a court, under Section 706(1), can only compel "discrete agency action," a "broad programmatic attack" that fails to identify "some particular agency action that causes [the plaintiff] harm" is precluded (citation omitted)).

Moreover, neither the governing statute, applicable regulation, nor the Department through less formal means, has established any "rule" requiring the award of any particular form of relief to a successful borrower defense claimant, much less a rule imposing a mandatory duty to afford the relief that Plaintiff requests. To the contrary, the HEA merely directs the Secretary to specify "which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment," 20 U.S.C. § 1087e(h), and the regulations promulgated thereunder grant the Secretary discretion to determine the appropriate measure of relief. *See* 34 C.F.R. § 685.206(c).

Nor has the Department otherwise established a mandatory duty, through any binding pronouncement carrying the force of law with respect to future adjudications, to award full

discharges to the borrowers on whose behalf Plaintiff purports to bring this suit. *See Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 21 (D.D.C. 2017) (noting that source of "law" creating mandatory duty necessary to sustain a Section 706(1) is limited to agency regulation having "force of law" (quoting *SUWA*, 542 U.S. at 64)).  It is true, as discussed above, that the Department found that certain CCI-operated campuses misrepresented job placement rates at specific programs during specific periods of time; and the Department did conduct outreach, providing information and simple attestation forms, to assist potentially affected students in asserting a borrower defense on that basis.  But these efforts were made on an *ad hoc* basis as part of the Department's evolving response to the "flood of borrower defense claims submitted by [CCI] students" following its closure, 2016 NPRM, 81 Fed. Reg. at 39,330-331, and it was precisely because the existing regulatory scheme lacked a process for asserting borrower defense claims that the Department initiated rulemaking in 2016 to "establish a more accessible and consistent borrower defense standard and clarify and streamline the borrower defense process," *id*.

To the extent there was any "rule" to govern claims submitted by Corinthian borrowers that may be covered by the findings cohorts, it was that such borrowers could establish a defense to repayment by attesting to their date of enrollment in a covered program during a covered time, as well as their reliance on the relevant campus' representations regarding job placement rates – ground rules that remain in effect.  Because the Department's own findings determined that these campuses had engaged in actionable wrongdoing under state law, affected students were relieved of their normal obligation to prove their school's misconduct to establish a borrower defense.  *See, e.g.*, First Special Master Report at 7.  But even that determination was never codified through any formal agency process, and in any event stopped well short of determining that the appropriate remedy for *all* covered Corinthian borrowers, regardless of whether or when they actually submit a borrower defense claim, is "complete discharge of their federal student loans and refunds of any amounts paid on them."  Compl. ¶ 38.  Indeed, the documents that Plaintiff cites make no guarantee that all borrowers, including those whose claims have not yet been adjudicated, are entitled to such relief.  *See* June 8 Fact Sheet (cited in Compl. ¶ 33) (noting that students could "receive loan forgiveness," or were "eligible for borrower defense relief," in an unspecified amount); First

Special Master Report at 7 (cited in Compl. ¶¶ 36, 39) (describing FSA's outreach efforts to notify borrowers "that they may be eligible for [some] debt relief based on borrower defense"); U.S. Department of Education, ED Announces Path for Debt Relief for Students at 91 Additional Corinthian Campuses (March 25, 2016)[12] (cited in Compl. ¶ 41) (findings gave certain Corinthian borrowers a "clear path to loan forgiveness").[13]  In light of the expressly discretionary language in the governing regulation, such ambiguous statements are insufficient to create a mandatory duty to award "full relief" in future cases.

Because a court cannot compel action "not clearly mandated" by law, *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 933 (9th Cir. 2010), Plaintiff cannot compel its preferred relief.  *See CREW v. SEC*, 916 F. Supp. 2d 141, 148-49 (D.D.C. 2013) ("[I]f the duty is simply to 'take action upon a matter' but 'the manner of its action is left to the agency's discretion,' the court 'has no power to specify what the action must be.'" (quoting *SUWA*, 542 U.S. at 64-65)).

## III. Claim II Fails To State A Plausible, Reviewable Claim That Any Particular Final Agency Action Was Invalid Under Section 706(2)

Plaintiff's second claim is entirely dependent on its assertion that the Department established a "rule" entitling all borrowers in job placement rate findings cohorts, including those who have not yet had their claims adjudicated (and even those who have not yet submitted claims) to full discharges of associated student loan debt.  According to Plaintiff, it would be impermissibly retroactive to apply any new "revised rule" to borrowers "that the Department has already determined are qualified for expedited, full borrower-defense relief."  Compl. ¶ 91.  Claim II fails

---

[12]  *See*  https://www.ed.gov/news/press-releases/us-department-education-announces-path-debt-relief-students-91-additional-corinthian-campuses.

[13]  To the extent Plaintiff relies on the Department's "prior practice," Compl. ¶ 83, Plaintiff has not established that the Department imposed upon itself a mandatory duty to award full discharges in all future adjudications involving covered Corinthian borrowers.  As discussed above, even as it undertook various emergency measures designed to provide *ad hoc* relief to affected borrowers, the Department retained (and retains) the discretion under the governing regulatory scheme to award either full or partial discharges, as well as to award whatever other relief is appropriate under the circumstances, and took no affirmative action to cabin that discretion and bind itself in future adjudications.  "Where, as here, the agency's rule gives it the discretion either to consider or to ignore certain factors, [a court] would be remiss to eliminate this discretion by requiring the agency to *always* ignore certain factors just because it has 'often' ignored these factors in the past." *Cal. Trout v. FERC*, 572 F.3d 1003, 1025-26 (9th Cir. 2009).

for the simple reason that, as discussed above, the Department did not establish any binding rule to limit the Secretary's discretionary authority or determine in advance that any particular borrowers were entitled to "expedited, full borrower-defense relief," *id*.  As such, Plaintiff's assertion that the Department has applied a "new rule" to borrowers that it has "already determined" are entitled to full discharge, *id*., is erroneous and fails as a matter of law.

Claim II also fails for the fundamental reason that it does not allege any specific "retroactive application"; indeed, it fails to identify an agency action harming a specific borrower (much less the state itself.  Under the APA, "[o]nly certain agency actions are subject to judicial review," *Sierra Forest Legacy v. U.S. Forest Serv.*, 598 F. Supp. 2d 1058, 1067 (N.D. Cal. 2009), and a plaintiff must "identify some 'agency action' that affects him in the specified fashion," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990).  Because agency action must be "circumscribed" and "discrete," *SUWA*, 542 U.S. at 62, a plaintiff cannot "seek *wholesale* improvements of [a federal program] [in court] … rather than in the … [agency] or … Congress, where programmatic improvements are normally made," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. at 891.  Even where a plaintiff identifies agency action, judicial review is only available over agency action that is "final."  *See, e.g.*, *Or. Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006).

Plaintiff's failure to allege that the Department engaged in *any* action at all, which prevents the Department from identifying specific challenged action and preparing an administrative record that would allow for judicial review over whether that discrete action complied with the requirements of the APA, is fatal.  *See Friends of the Earth, Bluewater Network Div. v. U.S. Dep't of Interior*, 478 F. Supp. 2d 11, 25 (D.D.C. 2007) ("A sure sign that a complaint fails the 'final agency action' requirement is when 'it is not at all clear what agency action [plaintiff] purports to challenge.'" (citation omitted)).  And to the extent Plaintiff relies on the Department's inaction to establish a "constructive repeal of its rule applicable" to the claims of borrowers in the findings cohorts, Compl. ¶ 86, this unsupported contention is meritless.[14]  Until the Secretary determines

---

[14] To the extent the Department's ongoing adjudication of CCI borrowers' claims is governed by anything resembling a "rule," it is that relief is based on the "improved discharge process" reflected in the December Press Release.  In the four months since that press release was issued, Plaintiff has not amended its complaint to challenge any particular application of that process, which

the amount of relief a borrower will receive based on a successful borrower defense, she retains broad discretion to afford whatever relief is "appropriate under the circumstances," including relieving a borrower of her obligation to repay either "all or part" of a loan.   34 C.F.R. § 685.206(c)(2).  Within this discretionary scheme, Plaintiff cannot establish that mere inaction altered any borrowers' rights or constituted the "functional equivalent of final agency action."  *Hi-Tech Pharmacal, Inc. v. FDA*, 587 F. Supp. 2d 1, 10 (D.D.C. 2008); *see also Defs. of Wildlife v. Tuggle*, 607 F. Supp. 2d 1095, 1111 (D. Ariz. 2009) (no final agency action "where the agency retains the discretion to accept or reject the challenged action." (citation omitted)).

## IV.   Claim III Fails To State A Plausible, Reviewable Claim That Any Particular Final Agency Action Was Invalid Under Section 706(2)

Claim III suffers from many of the same defects as Claims I and II.  Its basic premise is that the Department, through unspecified action or inaction, has "constructive[ly] deni[ed]" all pending borrower defense claims, which allegedly unlawfully treats borrowers with pending applications differently than similarly-situated borrowers who have already received full discharges.  *Id.* ¶¶ 94-96.  As with Claim I, however, Plaintiff makes factual assertions that are belied by the public record materials relied upon in the Complaint.   Namely, because the Department has in fact adjudicated (and approved) some number of the claims Plaintiff alleges were pending at the time it filed its Complaint, its contention that any particular claim has been "constructively denied" is unfounded.  As the Department announced in December, it is continuing to adjudicate claims and has not changed its existing criteria for approving claims for borrower defense.   December Press Release.   In light of the Department's stated intent to consistently process and approve claims, Plaintiff has failed plausibly to allege that *all* of the (again unidentified) claims pending at the time it filed its Complaint have been constructively denied.

---

remains beyond the scope of the Complaint.  In any event, that process provides for different percentages of discharge, including in some instances full discharge, based on the relative average earnings of former attendees of particular CCI programs.  This methodology, which does not eliminate the possibility that some members of the findings cohorts will receive the "full relief" to which California believes they are entitled, further undercuts Plaintiff's assertion that the Department is operating under a "revised rule" to never grant full discharges. And it underscores that ED's discharge decisions are properly reviewed through actual, identified adjudications rather than in the abstract, based on unidentified borrowers and hypothesized agency actions.

Defendants' Notice of Motion and Motion to Dismiss
3:17-cv-7106 SK

Claim III also fails for the same reasons as Claim II.  It does not identify any particular agency action "denying" any particular claim, nor any particular instance of "unequal treatment" that this Court could review. [15]   And further, in the absence of any "rule" entitling any borrower to a particular measure of relief, Plaintiff fails to establish that any (hypothetical) "disparate" treatment of claims – within a regulatory framework that allows the Secretary to award discretionary relief to each successful borrower defense claimant based upon what she determines is appropriate in the circumstances – is impermissible.  Because it does not allege the Department has actually "denied" any claims to which it refers (and because the public record contradicts the assertion that all such claims have been constructively denied), that the Department has actually treated any claims of similarly-situated borrowers "unequally," or that any such unequal treatment would be an impermissible exercise of the Secretary's discretion, Claim III fails as a matter of law.

## V.   Claims IV And V Do Not State Reviewable Claims Under Section 706(2) Of The APA

Claim IV is premised on Plaintiff's assertion that the loans of any borrower with a pending defense to repayment claim are legally unenforceable for purposes of administrative and tax refund offset, and that the Department has violated Section 706(2) of the APA by submitting the loans of "many [such] borrowers," Compl. ¶ 99, to Treasury for collection through these types of offset. Claim V is specific to borrowers in the findings cohorts, and again challenges the Department's submission of "many" of these borrowers' loans to Treasury for offset.  *Id.* ¶ 104.  Whether or not such borrowers have actually asserted defenses to repayment, Plaintiff asserts that their loans not legally enforceable because Plaintiff believes that "the Department is aware that borrowers covered by the Corinthian Fraud Findings have valid defenses to repayment." *Id.* ¶ 105.

At the outset it is worth reiterating that, as noted above, *supra* p. 8, the Department places loans in "stopped collection" status, or tolls, collection activity while borrower defense applications are being processed.  But this practice, which is not mandated by any statute or regulation, is purely a matter of administrative grace.  Within this scheme, Plaintiff's general allegations of "unlawful debt collection" are sorely lacking.  The Complaint does not identify any

---

[15] To the extent Plaintiff bases this claim on two borrower defense claims that it alleges were denied, *see* Compl. ¶ 52, Plaintiff does not explain why they were denied, and thus fails to support its allegation that the Department impermissibly treated similarly-situated claimants differently.

particular administrative offset, tax refund offset, or administrative wage garnishment determination; nor does it identify any particular borrowers who suffered allegedly illegal collection and under what circumstances.  Neither Claim IV nor Claim V quantifies the amount of alleged unlawful collection activity, other than to cursorily assert that "many borrowers," though unidentified, were affected.  Plaintiff's broad challenges to the Department's collection actions fail because: (1) Plaintiff has failed to identify any concrete, discrete, "agency action" to form the basis of a claim under Section 706(2) of the APA; and (2) Plaintiff has not established that any debt collection activity against students who had asserted a borrower defense to repayment or who are members of a findings cohort is unlawful. The Court should dismiss Claims IV and V.

### A.   Plaintiff Has Not Identified Any Concrete, Discrete, "Agency Action" Subject to Judicial Review Under Section 706(2) Of The APA

Plaintiff again fails, with respect to Claims IV and V to "identify some 'agency action' that affects [it] in the specified fashion." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. at 882.  Notably absent from its Complaint are any allegations that would tie any particular instance of collection activity to any individual borrower in a manner that would allow the Department to identify a specific challenged action and prepare an administrative record that would enable the court to review whether or not that discrete agency action complied with the requirements of the APA. *See Ctr. for Biological Diversity v. U.S. Dep't of Housing and Urban Dev.*, 241 F.R.D. 495, 502 (D. Ariz. 2006) (claim that does not identify any particular loan or grant of financial assistance that allegedly violated statute, does not adequately challenge a final agency action); *see also Elk Run Coal Co. v. U.S. Dep't of Labor*, 804 F. Supp. 2d 10, 31 (D.D.C. 2011) ( allegations that agency made unlawful denials, devoid of "identifying facts such as when or by what agency actions such denials issues" are insufficient to "identify any discrete, final agency actions that this Court can review").

The only thing close to a specific example of unlawful debt collection in Plaintiff's Complaint is the allegation that "[a]s recently as September 2016, more than 30,000 Corinthian students were subject to administrative offset and more than 4,000 to administrative wage garnishment."  Compl. ¶ 71.  But while showing "collection," this unadorned allegation says nothing about whether such collection was *unlawful*.  It does not allege that any of the Corinthian students who were subject to collection activity had in fact submitted a borrower defense

application which was pending at the time of the allegedly unlawful collection activity, were members of a findings cohort, or were exposed to and relied upon CCI's misrepresentations when choosing to enroll.  Because Plaintiff has not identified any discrete, reviewable final agency action, as required by the APA, the Court should dismiss Claims IV and V.  *See supra* pp. 18-19.

Claim V should also be dismissed as an impermissible programmatic challenge to the manner in which the Department awards relief on borrower defense claims.  The theory on which it is based – that even without submitting a borrower defense application seeking such relief, a borrower should obtain full discharge under the Department's borrower defense regulation any time the Department "is aware" (at least in the estimation of a particular plaintiff) that such a borrower has a valid defense to repayment, such that any loan debt s/he owes becomes legally unenforceable – would turn the Secretary's borrower defense regulation and process for adjudicating claims on its head.  As described further below, that process generally premises relief based on a borrower defense to repayment on the Department's determination that a particular borrower who has submitted an application is entitled to such relief.  In the absence of any such discrete, identifiable agency action to review, the Court risks "embarking on the kind of wholesale, programmatic review of general agency conduct for which courts are ill-suited, and for which they lack authority." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. at 89; *Defs. of Wildlife v. Flowers*, 2003 WL 22143270, at *1 (D. Ariz. 2003); *Ctr. for Biological Diversity*, 241 F.R.D. at 495.

**B.    Plaintiff Does Not Allege That The Department Engaged In Any Unlawful Collection Activity**

Even if Plaintiff had identified specific borrowers who faced collection activity after submitting borrower defense claims, and was not trying impermissibly to impose programmatic reforms, Claims IV and V would still fail because they do not allege unlawful collection activity. Both claims rest upon erroneous premises and would bypass the administrative process established for borrowers to contest debts collected through administrative offset and wage garnishment.

1.    Claims IV and V Erroneously Assume that Collection Activity Must Cease Before the Secretary Determines a Borrower Defense is Successful

Claim IV assumes that submission of a borrower defense application automatically renders the subject loans "not 'legally enforceable.'"  Claim V further assumes (erroneously) that even

where a borrower has not submitted a claim, the Defendants may not certify a debt of that student as "legally enforceable" when Defendants are "aware" that the debts are subject to a valid defense to repayment. Compl. ¶¶ 105-106. These assumptions ignore the regulatory scheme for borrower defense claims, which authorizes the Department to grant discretionary relief to borrowers *who apply for it* where the *Department determines* that the borrower has a defense to repayment.

Contrary to Plaintiff's assertions, it is not the existence of evidence about a school's wrongdoing or even the Department's knowledge of that evidence that justifies relief on the basis of a borrower defense. Instead, the determination of whether a particular borrower is entitled to a discharge on the basis of a defense to repayment is delegated to the Secretary, and is necessarily based on the Secretary's assessment of whether the given borrower has demonstrated that s/he personally was harmed by conduct that would give rise to a cause of action under state law. Until the Secretary makes these determinations and discharges a particular loan debt, the mere existence of a school's wrongdoing creates no particular "legal bar[] to collection by offset" on the basis of borrower defense. *See* 31 C.F.R. § 285.5(b)("Legally enforceable … means there has been a final agency determination that the debt … is due, and there are no legal bars to collection by offset"). If the borrower does not "assert as a defense against repayment" a school's act or omission, then the Secretary cannot relieve the borrower of his obligation "to repay all or part of the loan," 34 C.F.R. § 685.206(c). Even where the borrower asserts a borrower defense, if the Secretary has not yet determined whether that defense is "successful," the borrower (and much less a state purporting to act on his behalf) cannot claim that any effort to collect his debt is unlawful.

2. Treasury's Regulation Does Not Prohibit Collection Activity While a Borrower Defense Claim is Pending

Claim IV also erroneously alleges that a Treasury regulation prohibits collection of Direct Loans that are the subjects of pending borrower defense applications. *See* Compl. ¶ 100. That the relevant regulation does not preclude collection of debts that are the subject of pending borrower defense applications is evident from the language of the regulation itself and its history.

Treasury's regulation defines "debts that are not legally enforceable" as those "covered by a statute that prohibits collection of such debt by offset." 31 C.F.R. § 285.5(b). Plaintiff has not identified any statute prohibiting its alleged collection. Moreover, in explaining that "debts

covered by a statute that prohibits collection of such debt by offset" are "not legally enforceable," the regulation provides, as an example, that "if a delinquent debt is the subject of a pending administrative review process *required by statute or regulation* *and* if collection activity during the review process *is prohibited*, the debt is not considered enforceable." *Id.* (emphasis added). Plaintiff, in selectively relying on this "example," ignores these requirements, and does not allege either that the Secretary's evaluation of an affirmative borrower defense claim is an "administrative review process required by statute or regulation" regarding the validity of the underlying debt, or that collection activity during the pendency of this evaluation is prohibited (by a source other than the Treasury regulation quoted above).

The operative borrower defense regulation contemplates "borrower defenses" to repayment being made "in any proceeding to collect on a Direct Loan," including "[t]ax refund offset proceedings" and "wage garnishment proceedings," 34 C.F.R. § 685.206(c)(1)-(2). This does not require ED to consider borrower defenses brought outside the context of such "proceedings" and does not establish that review of such free-standing claims is a mandatory administrative review process to contest the validity of the underlying debt. Plaintiff points to no other statutory or regulatory authority which does. Moreover, the regulation provides for relief from payment obligations only if the Secretary determines that "the borrower's defense against repayment is successful." *Id.* This is inconsistent with Plaintiff's assertion that collection activity is precluded from the time a borrower defense is asserted, rather than from the time the Secretary determines the defense is "successful." The regulation certainly does not prohibit collection activity during the pendency of a borrower defense claim. Indeed, the Department recently contemplated regulatory action to provide forbearance during such time period, *see* 2016 NPRM, 81 Fed. Reg. at 39,355-356, which would have been unnecessary if such activity were already precluded. Because the Complaint does not identify any borrowers who requested forbearance or collection stoppage and were nevertheless subjected to administrative offset or wage garnishment, and does not adequately allege unlawful conduct, Claim IV should be dismissed.[16]

---

[16] For the same reason, Plaintiff's allegation, Compl. ¶ 101, that the Department's conduct is inconsistent with "agency statements that it will stop collections on the loans of borrower defense

3.   Plaintiff Does Not Allege Administrative Remedies Were Exhausted

As a general matter, a plaintiff must "exhaust all of his or her administrative remedies before seeking judicial review." *Sheikh v. Lynch*, 2015 WL 7731802, at * 2 (N.D. Cal. Dec. 1, 2015). Failure to do so is grounds for dismissal, and even where exhaustion is not required by statute, courts may "prudentially require exhaustion." *Id*. "Non-jurisdictional exhaustion serves three functions: 'giving agencies the opportunity to correct their own errors, affording parties and courts the benefits of agencies' expertise, [and] compiling a record adequate for judicial review.'" *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004) (citations omitted).

As discussed above, *supra* p. 5, established procedures for administrative review exist for individuals to contest the validity of a debt subject to administrative offset or wage garnishment. Requiring exhaustion of this review process would afford ED an opportunity to review its determination regarding the validity of any challenged debt and correct any error, as well as compile an administrative record of materials relevant to its determination, allowing for judicial review. It is thus well-established that a plaintiff whose debt has been referred to the TOP must have first exhausted administrative remedies before seeking redress in federal court. *See United States v. Beulke*, 892 F. Supp. 2d 1176, 1187 (D.S.D. 2012); *Ogunmokun v. Am. Educ. Servs.*, 2014 WL 4724707, at *5 (E.D.N.Y. Sept. 23, 2014). The Court should decline Plaintiff's invitation to invalidate thousands of unidentified determinations regarding the validity of student loan debts without first allowing the agency to employ this established administrative review process.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant its motion and dismiss with prejudice Plaintiff's Complaint.

Dated: April 24, 2018                    Respectfully submitted

                                          CHAD A. READLER
                                          Acting Assistant Attorney General

---

claimants that opt for forbearance" fails to state a claim. Plaintiff has not identified any instance of collection activity violating such statements and so has not alleged any "inconsistent" conduct.

MARCIA BERMAN
Assistant Branch Director

*/s/* Karen S. Bloom
KAREN S. BLOOM
Senior Counsel (DC # 499425)
R. CHARLIE MERRITT
Trial Attorney (VA # 89400)
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC 20530
Tel: (202) 514-4964
Fax: (202) 616-8470
karen.s.bloom@usdoj.gov
robert.c.merritt@usdoj.gov

*Counsel for Defendants*