XAVIER BECERRA
Attorney General of California
NICKLAS A. AKERS (SBN 211222)
Senior Assistant Attorney General
MICHAEL E. ELISOFON (SBN 240707)
BERNARD A. ESKANDARI (SBN 244395)
Supervising Deputy Attorneys General
STEVEN D. DE SALVO (SBN 199904)
WILLIAM R. PLETCHER (SBN 212664)
Deputy Attorneys General
 300 South Spring Street, Suite 1702
 Los Angeles, CA 90013
 Tel: (213) 269-6348
 Fax: (213) 897-4951
 Email: bernard.eskandari@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA,**<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**UNITED STATES DEPARTMENT OF EDUCATION, et al.,**<br><br>　　　　　Defendants. | Case No. 17-cv-07106-SK<br><br>**CALIFORNIA'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date:　　　June 4, 2018<br>Time:　　　1:30 p.m.<br>Courtroom:　A, 15th Floor<br>Judge:　　　Hon. Sallie Kim |

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................... 1

Background ..................................................................................................................... 2

    I.      California Was Essential to ED's Adoption and Implementation of the
Corinthian Full-Relief Rule ...................................................................................... 2

    II.    ED Grants Full Relief to 28,000 Borrowers Under the Corinthian Full-
Relief Rule ............................................................................................................... 3

    III.   ED Abandons the Corinthian Full-Relief Rule ....................................................... 4

    IV.   ED's Actions Have Harmed Borrowers ..................................................................... 5

Legal Standard ................................................................................................................ 6

Argument ......................................................................................................................... 6

    I.      Defendants' 12(b)(1) Challenge to California's Standing Fails ........................... 6

           A.     California Has Standing Because ED's Actions Have Injured
California's Proprietary Interests ...................................................................... 7

               1.     ED's Actions Have Injured California's Public Colleges and
Universities ........................................................................................ 7

               2.     ED's Actions Have Injured the State Fisc ...................................... 9

           B.     California Has Standing as Parens Patriae ............................................... 10

           C.     California Has Standing Because ED's Actions Have Injured
California's Sovereign Interest ...................................................................... 12

    II.    Defendants' 12(b)(6) Challenges All Fail ........................................................... 14

           A.     Defendants Invite Error by Addressing the Merits Without the
Benefit of an Administrative Record ...................................................... 14

           B.     Claim I (Unreasonable Delay) States a Plausible Claim for Relief ......... 16

           C.     Claim II (Unlawful Retroactive Application) States a Plausible
Claim for Relief ............................................................................................ 17

           D.     Claim III (Unequal Treatment) States a Plausible Claim for Relief ........ 19

           E.     Claims IV and V (Unlawful Debt Collection) State Plausible
Claims for Relief ........................................................................................ 20

Conclusion ..................................................................................................................... 24

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Abrams v. Heckler*
   582 F. Supp. 1155 (S.D.N.Y. 1984)........................................................................11

5

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*
   458 U.S. 592 (1982)...............................................................................7, 10, 12

6

7

*Am. Rivers v. FERC*
   201 F.3d 1186 (9th Cir. 1999)...............................................................................11

8

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009).................................................................................................6

9

10

*Aziz v. Trump*
   231 F. Supp. 3d 23 (E.D. Va. 2017) ................................................................8, 12

11

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007).................................................................................................6

12

13

*Bennet v. Spear*
   520 U.S. 154 (1997).................................................................................18, 19, 20

14

*Bowen v. Georgetown Univ. Hosp.*
   488 U.S. 204 (1988)...............................................................................................17

15

16

*Brower v. Evans*
   257 F.3d 1058 (9th Cir. 2001)...............................................................................17

17

18

*California v. Health & Human Servs.*
   281 F. Supp. 3d 806 (N.D. Cal. 2017) ..........................................................6, 7, 12

19

20

*Challenge v. Moniz*
   218 F. Supp. 3d 1171 (E.D. Wash. 2016) ....................................................10, 11, 12

21

*Coffey v. CIR*
   663 F.3d 947 (8th Cir. 2011).................................................................................13

22

23

*Cort v. Crabtree*
   113 F.3d 1081 (9th Cir. 1997)..........................................................................18, 19

24

25

*Daniels v. United States*
   947 F. Supp. 2d 11 (D.D.C. 2013) ........................................................................15

26

*Darby v. Cisneros*
   509 U.S. 137, 154 (1993).......................................................................................24

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

<u>Page</u>

3

*Diamond v. Charles*

4

476 U.S. 54 (1986) ..................................................................................................12

*Dieffenbacher v. DeVos*

5

No. 17-00342, 2017 WL 4786096 (C.D. Cal. June 9, 2017) ....................................23

6

*Dist. Hosp. Partners. v. Sebelius*

7

794 F. Supp. 2d 162 (D.D.C. 2011) ........................................................................15

8

*Dong v. Chertoff*

513 F. Supp. 2d 1158 (N.D. Cal. 2007) ..................................................................16

9

*Ensco Offshore Co. v. Salazar*

10

781 F. Supp. 2d 332 (E.D. La. 2011) ......................................................................17

11

*Greater Yellowstone Coal. v. Kempthorne*

12

577 F. Supp. 2d 183 (D.D.C. 2008) ........................................................................19

13

*Houseton v. Nimmo*

670 F.2d 1375 (9th Cir. 1982) ................................................................................17

14

*INS v. Yueh-Shaio Yang*

15

519 U.S. 26 (1996) ..................................................................................................22

16

*In re DRAM Antitrust Litig. v. Micron Tech.*

17

546 F.3d 981 (9th Cir. 2008) ....................................................................................6

18

*In re Edmond*

934 F.2d 1304 (4th Cir. 1991) ................................................................................11

19

*In re Taibibi*

20

213 B.R. 261 (E.D.N.Y. 1997) ................................................................................11

21

*Kansas ex rel. Hayden v. United States*

22

748 F. Supp. 797 (D. Kan. 1990) ...........................................................................12

23

*Krebs v. Charlotte Sch. of Law*

No. 17-00190, 2017 WL 3880667 (W.D.N.C. Sept. 5, 2017) .................................22

24

*Landgraf v. USI Film Prods.*

25

511 U.S. 244 (1994) ................................................................................................17

26

*Leuthold v. Camp*

405 F.2d 499 (9th Cir. 1969) ..................................................................................13

27

*Lujan v. Defs. of Wildlife*

28

iii

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

504 U.S. 555 (1992) ..................................................................................6

4

*Massachusetts v. EPA*
549 U.S. 497 (2007) ...........................................................................11, 12

5

6

*Massachusetts v. Mellon*
262 U.S. 447 (1923) ...............................................................................11

7

*Maya v. Centex.*
658 F.3d 1060 (9th Cir. 2011) ..................................................................6

8

9

*Missouri ex rel. Koster v. Harris*
847 F.3d 646 (9th Cir. 2017) ...................................................................11

10

*Missouri v. Illinois*
180 U.S. 208 (1901) ...............................................................................10

11

12

*Muwekma Ohlone Tribe v. Kempthorne*
452 F. Supp. 2d 105 (D.D.C. 2006) ...........................................................19

13

14

*New York v. Citibank, N.A.*
537 F. Supp. 1192 (S.D.N.Y 1982) ...........................................................10

15

16

*Norton v. S. Utah Wilderness All.*
542 U.S. 55 (2004) ...........................................................................16, 17

17

*Nuesse v. Camp*
385 F.2d 694 (D.C. Cir. 1967) ................................................................13

18

19

*Occidental Petroleum Corp. v. SEC*
873 F.2d 325 (D.C. Cir. 1989) ................................................................15

20

*Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*
279 F. Supp. 3d 1011 (N.D. Cal. 2018) ..............................................7, 8, 9

21

22

*Salazar v. King*
822 F.3d 61 (2d Cir. 2016) .....................................................................19

23

24

*Shroyer v. New Cingular Wireless Servs.*
622 F.3d 1035 (9th Cir. 2010) ..................................................................6

25

*Sierra Forest Legacy v. Sherman*
646 F.3d 1161 (9th Cir. 2011) ................................................................11

26

27

*Swedish Am. Hosp. v. Sebelius*
691 F. Supp. 2d 80 (D.D.C. 2010) ...........................................................16

28

iv

**TABLE OF AUTHORITIES**
(continued)

Page

*Telecom. Research & Action Ctr. v. FCC*
  750 F.2d 70 (D.C. Cir. 1984) ...........................................................................15, 17

*Territory of Am. Samoa v. Nat'l Marine Fisheries Serv.*
  No. 16-00095, 2017 WL 8316931 (D. Haw. Aug. 10, 2017) ...................................12

*Texas v. United States*
  809 F.3d 134 (5th Cir. 2015)..................................................................................9

*Texas v. United States*
  86 F. Supp. 3d 591 (S.D. Tex. 2015) ...................................................................12

*United States v. Hughes*
  813 F.3d 1007 (D.C. Cir. 2016) ...........................................................................24

*Walter O. Boswell Mem'l Hosp. v. Heckler*
  749 F.2d 788 (D.C. Cir. 1984) .............................................................................15

*Washington v. Trump*
  847 F.3d 1151 (9th Cir. 2017)......................................................................6, 8, 9

*Wyoming ex rel. Crank v. United States*
  539 F.3d 1236 (10th Cir. 2008)............................................................................14


**STATUTES AND REGULATIONS**

5 U.S.C. § 551 ...........................................................................................................7, 17

5 U.S.C. § 704 ...............................................................................................................23

5 U.S.C. § 706 .................................................................................................16, 17, 19

12 U.S.C. § 36 ...............................................................................................................13

20 U.S.C. § 1087e ...........................................................................................................2

20 U.S.C. § 1099a ...........................................................................................................7

31 C.F.R. § 285.2 ...........................................................................................................20

31 C.F.R. § 285.5 .........................................................................................16, 20, 21, 22

31 U.S.C. § 3716 ...........................................................................................................20

31 U.S.C. § 3720A ........................................................................................................20

v

# TABLE OF AUTHORITIES
### (continued)

**Page**

34 C.F.R. § 668.32 ..............................................................................................5, 8

34 C.F.R. § 685.206 ............................................................................................. *passim*

Cal. Bus. & Prof. Code § 17200. ......................................................................3, 14

Fed. R. Civ. P. 8 ......................................................................................................21

Fed. R. Civ. P. 12 ...................................................................................1, 6, 14, 16

## CONSTITUTIONAL PROVISIONS

Cal. Const. Article V, § 13 ......................................................................................14

## COURT RULES

D.D.C. L.Cv.R. 7 ....................................................................................................15

N.D. Cal. Civil L.R. 16-5 ........................................................................................14

## OTHER AUTHORITIES

81 Fed. Reg. 39330 (June 16, 2016) ......................................................................13

Office of Inspector General, Federal Student Aid's
Borrower Defense to Repayment Loan Discharge Process (Dec. 8, 2017) ...................................3

**INTRODUCTION**

Defendants have not yet submitted an administrative record, and the merits of this case cannot be resolved without one. Because of this, Defendants' Motion to Dismiss ("MTD") is left presenting improper denials of the Complaint's well-pleaded allegations—which at this point must be taken as true. The MTD's central argument consists of denying that the U.S. Department of Education ("ED") implemented a rule applicable to defrauded Corinthian borrowers. But the Complaint alleges that ED created just such a rule, memorialized it in memoranda, adopted procedures to enforce it, publicly announced it, and consistently applied it for two years to grant 28,000 borrowers more than $500 million in relief. Defendants deny this, calling these actions "ad hoc" "emergency measures." MTD at 1, 16, 17. The Complaint also alleges that in all 28,000 instances, ED discharged the entirety of the borrower's student loan and refunded all amounts paid (as required by California law), without a single exception. Defendants deny this too, saying ED "generally awarded full discharges." MTD at 8. Defendants also dispute that there is any final agency action for this Court to review, even though the Complaint alleges that ED adopted a rule, consistently applied it, abruptly delayed it, and then abandoned and replaced it. Each of these is reviewable. In short, Defendants' 12(b)(6) challenges are improper at this stage and meritless.

Defendants' 12(b)(1) challenge to California's standing is also meritless. Defendants argue that States never have parens patriae standing to sue the federal government. The Supreme Court disagrees, and numerous courts have repeatedly held that States may rely on their parens patriae standing where, as here, they sue the federal government to enforce a federal statute and to enjoin agency action alleged to be in contravention of that statute. Separate from parens patriae standing, California also has standing from injuries to its proprietary interest based on harms to its (1) public colleges and universities, and (2) state fisc, both of which are directly traceable to ED's actions. Finally, California's sovereign interest is squarely implicated too because the federal regulatory regime at issue incorporates California state law to determine relief for defrauded borrowers. Accordingly, California has multiple bases for Article III standing.

The MTD should be de denied in its entirety, so that the Court can properly resolve this case with the benefit of the administrative record on summary judgment.

1

# BACKGROUND

## I. CALIFORNIA WAS ESSENTIAL TO ED'S ADOPTION AND IMPLEMENTATION OF THE CORINTHIAN FULL-RELIEF RULE

Corinthian Colleges Inc. ("Corinthian") was a massive for-profit college, headquartered in and managed from California, that engaged in rampant fraud to lure vulnerable students in to its programs. Compl. ¶¶ 23-24, 36. At its height, Corinthian operated more than 100 campuses under its Everest, Heald, and Wyotech brands, including more than 30 campuses in California. *Id*. ¶ 23.

In October 2013, California sued Corinthian to stop its abusive conduct. *Id*. ¶ 25. In April 2015, based on a joint investigation with the California Attorney General, ED fined Corinthian $30 million for falsifying job-placement rates. *Id*. ¶ 26. Almost immediately, Corinthian closed down and filed bankruptcy. *Id*. ¶ 30. In March 2016, California obtained a $1.17 billion default judgment against Corinthian, with court findings that Corinthian engaged in systematic and widespread misrepresentations to defraud students and taxpayers. *Id*. ¶ 31.

Corinthian's fraud, as ED itself determined, left tens of thousands of students eligible for discharge of their federal student loans under ED's borrower-defense regulation, 34 C.F.R. § 685.206(c)(1) (authorized by 20 U.S.C. § 1087e(h)), and under the terms of their loan notes. Compl. ¶¶ 18, 19, 32. California was an essential partner with ED in implementing a streamlined process to provide these thousands of defrauded students with critical relief from their federal student loans. *Id*. ¶¶ 32-44. In consultation with the California Attorney General, ED determined that students who relied on misrepresentations found in Corinthian's published job-placement rates had a cause of action under California law that qualified them under 34 C.F.R. § 685.206(c)(1) to have their federal direct student loans forgiven and receive refunds for amounts paid. Compl. ¶ 32; *see also* MTD at 16 ("[T]he Department's own findings determined that these campuses had engaged in actionable wrongdoing under state law."). To implement this relief, ED created a "streamlined process" to review claims, which would simplify and expedite relief and reduce the burden on borrowers. Compl. ¶ 33.

This work resulted in a rule ("Corinthian Full-Relief Rule") to govern the borrower-defense claims of "whole groups" of Corinthian students who enrolled in programs subject to ED's fraud

2

findings. *Id.* The Corinthian Full-Relief Rule consists of the following ED determinations based on state-law theories developed by the California Attorney General:

- California is the "applicable state law" for purposes of determining, nationwide, whether there is a cause of action against the school under 34 C.F.R. § 685.206(c)(1), because Corinthian was headquartered in and managed from California, *id.* ¶ 36;

- Corinthian misrepresented job-placement rates at specified campuses, for certain educational programs, during specific time periods ("Corinthian Fraud Findings"[1]), *id.* ¶¶ 32, 40-42;

- Borrowers covered by the Corinthian Fraud Findings are eligible for borrower-defense relief and can establish their eligibility "through an expedited process" by completing and submitting a "simple attestation form" provided by ED, which allows borrowers to document the impact of Corinthian's misrepresented job-placement rates on them in a manner that supports a cause of action under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq., *id.* ¶¶ 37, 66; and

- California law controls the scope of relief, *id.* ¶ 38, which entitles borrowers covered by the Corinthian Fraud Findings to "full relief" by discharging the entirety of their federal loans and refunding all amounts paid, *id.* ¶¶ 33, 45.

ED memorialized the Corinthian Full-Relief Rule in various internal legal memoranda. *Id.* ¶ 52.[2] Numerous, consistent public statements from ED further confirm the existence of this rule. *Id.* ¶¶ 32-34, 36-41, 66. And if there were any doubt (which there cannot be), as discussed below, for nearly two years ED consistently applied the Corinthian Full-Relief Rule to grant—without exception—full relief to 28,000 defrauded Corinthian borrowers, representing $558 million in loan relief.[3] *Id.* ¶¶ 45-49.

## II.   ED GRANTS FULL RELIEF TO 28,000 BORROWERS UNDER THE CORINTHIAN FULL-RELIEF RULE

Based on substantial evidence provided by California and other States through multiple independent investigations of Corinthian, ED ultimately determined that the Corinthian Fraud

---

[1] Defendants accept the existence of these ED findings. *See, e.g.*, MTD at 6 (referring to "findings cohorts").

[2] Citing a report by the Office of Inspector General that specifically identifies these memoranda, Federal Student Aid's Borrower Defense to Repayment Loan Discharge Process, (Dec. 8, 2017), http://www2.ed.gov/about/offices/list/oig/auditreports/fy2018/i04r0003.pdf.

[3] In disputing this fact, Defendants artfully quote a Special Master report: "outreach efforts to notify borrowers 'that they may be eligible for [some] debt relief based on borrower defense.'" MTD at 17 (Defendants' alteration).

Findings applied to more than 80,000 borrowers—including 38,000 Californians—who enrolled in approximately 1,600 Corinthian programs offered between 2010 and 2015 in 24 States. *Id.* ¶¶ 32, 40-42. These borrowers became immediately eligible for expedited and full loan relief under the Corinthian Full-Relief Rule. *Id.* ¶ 42.

To help implement this relief, ED partnered with the California Attorney General and other States to provide outreach to eligible Corinthian borrowers. *Id.* ¶ 43. This was possible because ED itself maintains individualized program-level enrollment data for the vast majority of Corinthian borrowers. *Id.* California's outreach efforts were time consuming, costly, and undertaken in cooperation with ED in connection with the Corinthian Full-Relief Rule. *Id.*

Between 2015 and January 20, 2017, ED consistently applied the Corinthian Full-Relief Rule, without exception. *Id.* ¶¶ 45-49. ED approved 28,000 Corinthian borrower-defense claims and in every instance granted full relief as dictated by the Corinthian Full-Relief Rule. *Id.*

### III. ED ABANDONS THE CORINTHIAN FULL-RELIEF RULE

On January 20, 2017, ED abruptly halted approving borrower-defense claims; ED did not approve a single borrower-defense claim between then and the filing of this Complaint on December 14, 2017. *Id.* ¶ 51, 52. In January 2017, the backlog of pending claims included 39,000 from Corinthian borrowers (11,000 from Californians). *Id.* ¶ 50. By July 2017, that number had grown to 45,000 (13,000 from Californians). *Id.* ¶ 54.

ED has deliberately abandoned the Corinthian Full-Relief Rule. *Id.* ¶ 87-88. This was apparent at the time California filed this Complaint, based on ED's failure to approve a single pending claim for more than 11 months. *Id.* ¶¶ 6, 78. ED's public statements also confirmed abandonment; these statements included, among other things, a "regulatory reset" announced by Secretary DeVos in June 2017, *id.* ¶ 61, and an ED procurement notice stating that "policy changes may necessitate certain claims already processed be revisited to assess other attributes," *id.* ¶ 63.

The MTD further confirms ED's abandonment (and, thus, indefinite delay) of the Corinthian Full-Relief Rule. MTD at 8. The MTD cites an ED press release that announced a new

rule ("Partial-Relief Rule") that replaces the Corinthian Full-Relief Rule.[4] *Id*. This new rule, according to Defendants, supplants the Corinthian Full-Relief Rule by attempting to measure "the harm Corinthian borrowers actually incurred" from Corinthian's fraud by "comparing average earnings at Corinthian programs with the average earnings at comparable programs." *Id*. The Partial-Relief Rule will afford defrauded Corinthian borrowers as little as 10% loan relief. *See id*. (press release cited by Defendants). ED has already deployed this new rule to adjudicate 12,900 claims, *id*., the majority of which will receive only partial discharges—notwithstanding ED's prior determination that these borrowers are eligible for full loan relief under the Corinthian Full-Relief Rule and California law.

## IV. ED'S ACTIONS HAVE HARMED BORROWERS

ED has compounded, through months of inaction, the harm suffered by Corinthian's victims. Compl. ¶¶ 68-72. Many of Corinthian's victims—whom ED had already determined were eligible for "expedited" loan relief—have now been waiting years for promised relief. *Id*. Even for borrowers whose loans ED properly placed in forbearance during the pendency of their claims, having these invalid loans on their credit reports has prevented them from securing financing for cars, homes, and other life necessities. *Id*. ¶¶ 69-70. While these loans sit in limbo, interest continues to accrue. *Id*. ¶ 69. Adding further insult, 34 C.F.R. § 668.32(g) bars many of these borrowers from obtaining new loans to restart their educations at legitimate schools, including California's public colleges and universities. Compl. ¶¶ 22, 70.

ED has further compounded the harm by employing unlawful debt-collection methods against defrauded borrowers. *Id*. ¶¶ 71-72. In numerous instances, ED has failed to implement promised forbearances and collection stoppages for borrowers with pending claims, meaning that ED continues to unlawfully seize government payments (through "administrative offset") and garnish their wages. *Id*. ED also deploys these severe methods against Corinthian borrowers who have not yet submitted a borrower-defense claim, despite the fact that ED can specifically identify

---

[4] Defendants contend that the Complaint's allegations are "contradictory" because of this press release. MTD at 14. However, Defendants fail to disclose that this press release was issued six days *after* the filing of the Complaint.

1    which borrowers have valid defenses to repayment based on individualized program-level

2    enrollment data in ED's possession. *Id*. ¶ 72. As recently as September 2016, more than 30,000

3    Corinthian students were subject to administrative offset and more than 4,000 to wage

4    garnishment. *Id*. ¶ 71.

5                                          **LEGAL STANDARD**

6             A court should grant a Rule 12(b)(1) motion to dismiss only if "the complaint, considered

7    in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In*

8    *re DRAM Antitrust Litig. v. Micron Tech.*, 546 F.3d 981, 984-85 (9th Cir. 2008). A Rule 12(b)(6)

9    motion to dismiss should be granted only if the complaint fails to state a cognizable legal theory

10   or allege facts sufficient to support a cognizable legal theory. *Shroyer v. New Cingular Wireless*

11   *Servs.*, 622 F.3d 1035, 1041 (9th Cir. 2010). For either type of motion, the Court "must accept as

12   true all material allegations of the complaint and must construe the complaint in favor of the

13   complaining party." *Maya v. Centex.*, 658 F.3d 1060, 1068 (9th Cir. 2011); *see also Ashcroft v.*

14   *Iqbal*, 556 U.S. 662, 678 (2009). "[G]eneral factual allegations of injury resulting from the

15   defendant's conduct may suffice, for on a motion to dismiss [a court] presum[es] that general

16   allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of*

17   *Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted). If the plaintiff alleges

18   "enough facts to state a claim to relief that is plausible on its face," the motion must be denied.

19   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

20                                             **ARGUMENT**

21   **I.    DEFENDANTS' 12(B)(1) CHALLENGE TO CALIFORNIA'S STANDING FAILS**

22            The Complaint's allegations readily establish the required elements for standing to sue

23   Defendants. To establish Article III standing, a plaintiff need only demonstrate (1) "that it has

24   suffered a concrete and particularized injury that is either actual or imminent," (2) "that the injury

25   is fairly traceable to the defendant," and (3) "that it is likely that a favorable decision will redress

26   that injury." *Washington v. Trump*, 847 F.3d 1151, 1159 (9th Cir. 2017).

27            "States are not normal litigants for the purposes of invoking federal jurisdiction and are

28   entitled to special solicitude in [the] standing analysis." *California v. Health & Human Servs.*,

                                                      6

281 F. Supp.3d 806, 821 (N.D. Cal. 2017) (quotations and citations omitted). States have standing to protect their "proprietary interests," as though they were a private party. *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez* ("*Snapp*"), 458 U.S. 592, 601 (1982). States may also sue to assert their "quasi-sovereign interests" in "the health and well-being—both physical and economic—of [their] residents in general." *Id*. at 607. States also have standing to protect their "sovereign interests," which include the power to create and enforce their laws. *Id*. at 601.

Contrary to Defendants' arguments, the Complaint alleges facts that fully satisfy Article III standing. As discussed below, California has a significant and real interest at stake in this controversy and has suffered concrete, actual injury to its proprietary, quasi-sovereign, and sovereign interests as a result of ED's actions surrounding the delay and abandonment of the Corinthian Full-Relief Rule. Each injury alone is independently sufficient to confer standing.[5] These injuries are plainly traceable to ED's actions, and a favorable ruling from this Court will redress them.

## A.   California Has Standing Because ED's Actions Have Injured California's Proprietary Interests

Like "associations and private parties, a State is bound to have a variety of proprietary interests," and "like other such proprietors it may at times need to pursue those interests in court." *Snapp*, 458 U.S. at 601. California alleges injury to two separate propriety interests: (1) California's public colleges and universities are harmed by ED's delay and abandonment of the Corinthian Full-Relief Rule; and (2) California has expended resources and funds on outreach at ED's request, which are now lost because of ED's delay and abandonment of the Corinthian Full-Relief Rule.

### 1.  ED's Actions Have Injured California's Public Colleges and Universities

California has a proprietary interest in the educational missions of its public colleges and

---

[5] Defendants do not dispute that California is a "person" under the APA, 5 U.S.C. § 551(2), entitled to judicial review of agency action, *id*. § 702. *See, e.g.*, *California*, 281 F. Supp. 3d at 822 n.10. Defendants also do not dispute that California falls within the "zone of interests" of the relevant statute, here the Higher Education Act. The Higher Education Act specifically contemplates involvement by the States and delegates responsibility to the States. *See* 20 U.S.C. § 1099a.

1    universities. *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011, 1034

2    (N.D. Cal. 2018). This includes the ability of colleges and universities to attract and enroll

3    students and to hire faculty and staff of their choosing. *See Trump*, 847 F.3d at 1160-61

4    (Executive Order preventing nationals from seven countries from entering the United States

5    harmed States' propriety interest because "some of these people will not enter state universities");

6    *Regents of Univ. of Cal.*, 279 F. Supp. 3d at 1033 (cancellation of student enrollment establishes

7    injury to university's proprietary interest); *Aziz v. Trump*, 231 F. Supp. 3d 23, 33 (E.D. Va. 2017)

8    (State has standing where Executive Order would "depriv[e]" university of "some faculty or staff

9    members").

10       ED's delay and abandonment of the Corinthian Full-Relief Rule prevents students from

11   enrolling in California's public colleges and universities, thus directly impairing California's

12   propriety interest. Compl. ¶¶ 22, 70. Specifically, without the full discharge of their loans,

13   borrowers who were in default when they submitted their borrower-defense claims, or those that

14   already maxed out their federal student aid award, are barred under 34 C.F.R. § 668.32(g) from

15   taking out new loans to restart their educations while their claims languish. Compl. ¶¶ 22, 70.

16       There is nothing "speculative" or "hypothetical" about this proprietary harm to California,

17   as urged by Defendants. MTD at 13-14. Though the precise number students prevented from

18   enrolling may not be quantifiable at the pleadings stage, this Court can reasonably infer from the

19   Complaint that among the 13,000 California residents awaiting loan discharges, ED's delay is

20   actively preventing some definite number from enrolling in a California public college or

21   university. *See Trump*, 847 F.3d at 1161 ("*some* of these people will not enter state universities,

22   *some* will not join those universities as faculty, *some* will be prevented from performing

23   research") (emphasis added); *Aziz*, 231 F. Supp. 3d at 33 ("depriving [universities] of *some*

24   faculty and staff members") (emphasis added). It is perfectly predictable that students whose

25   educations were abruptly cut short due to the closure of Corinthian would likely seek to restart

26   their education elsewhere in California.

27       This deprivation of enrollment at California's public colleges and universities establishes a

28   concrete injury to California's proprietary interest that is traceable to ED's delay in processing

1   borrower-defense applications under the Corinthian Full-Relief Rule and is redressable by this

2   Court. *See Trump*, 847 F.3d at 1161 ("no difficulty" making "two logical steps" under similar

3   circumstances and concluding that State had standing). This alone is sufficient to confer Article

4   III standing on California.

5                   **2.  ED's Actions Have Injured the State Fisc**

6           California's expenditure of state resources to assist ED with outreach to borrowers eligible

7   for relief under the Corinthian Full-Relief Rule also constitutes injury to California's proprietary

8   interest, now that ED has abandoned that rule. California was an essential partner with ED in

9   adopting and implementing the Corinthian Full-Relief Rule. Compl. ¶¶ 2, 3, 22, 27, 32-33, 36, 40,

10  43, 44. California has expended time, resources, and funds in this role investigating Corinthian,

11  sharing evidence and legal theories with ED, and assisting ED with outreach. *Id.* ¶¶ 3, 43, 44. At

12  ED's request, California and other States specifically agreed to help with outreach to eligible

13  borrowers once ED's own outreach efforts stalled in 2016. *Id.*[6]

14          State expenditures incurred as a result of federal agency action constitute an injury to a

15  State's proprietary interest sufficient to confer standing. *See, e.g.*, *Texas v. United States*, 809

16  F.3d 134, 155 (5th Cir. 2015) (state subsidies used to offset the cost of printing additional driver

17  licenses, incurred as a result of the federal Deferred Action for Parents of Americans program,

18  gave Texas standing to challenge that program), *aff'd by an equally divided Court*, *United States*

19  *v. Texas*, 136 S.Ct. 2271 (2016). Specifically, agency action that deprives a party, including a

20  State, of the benefit of its past expenditures and investments establishes an injury to that party's

21  proprietary interest. *See Trump*, 847 F.3d at 1159-61 (Executive Order barring foreign nationals

22  would deprive State of "investment" of visa-application costs for two interns prevented from

23  entering the United States); *Regents of Univ. of Cal.*, 279 F. Supp. 3d at 1033-34 (university's

24  "investments" in recruiting and retaining employees would be "lost" if they were deported).

25          California's "investment" of state resources in outreach to borrowers eligible for full loan

26  ─────────────────
            [6] As part of that effort, the States used a common fund administered by the National
27  Association of Attorneys General to retain a settlement administrator, causing the States to incur
    nearly $290,000 in costs. *See* Amici Curiae Brief of California, et al. [Doc. No. 46], *Cavillo*
28  *Manriques v. DeVos* (N.D. Cal. Case No. 17-07210-SK).

                                                    9

1    relief under the Corinthian Full-Relief Rule are now "lost" by ED's delay and abandonment of the

2    rule. *Id*. This injury is directly traceable to ED's actions and redressable by a favorable ruling

3    ordering ED to apply the Corinthian Full-Relief Rule to borrowers already determined eligible for

4    relief under it. This injury to California's proprietary interest is sufficient to confer Article III

5    standing on California.

6        **B.    California Has Standing as Parens Patriae**

7        California has also adequately pleaded parens patriae standing. The doctrine of parens

8    patriae allows States to bring suit on behalf of their citizens. *Snapp*, 458 U.S. at 600-01. States

9    can bring actions as parens patriae where there they allege (1) an injury to a sufficiently

10   substantial segment of their population, (2) a quasi-sovereign interest, and (3) an interest apart

11   from the interests of private parties. *Id*. at 607. The Complaints allegations meet all three factors.

12       The first factor is readily met. The Complaint alleges that 13,000 Californians have been

13   harmed by ED's delay and abandonment of the Corinthian Full-Relief Rule. Compl. ¶ 54. This is

14   more than enough to establish in injury to a substantial segment of California's population. *See,

15   e.g.*, *Snapp*, 458 U.S. at 599 (parens patriae standing where 787 residents injured).

16       The second factor is also readily met. California "has a quasi-sovereign interest in the

17   health and well-being—both physical and economic—of its residents in general." *Id*. at 607; *see

18   also, e.g.*, *Missouri v. Illinois*, 180 U.S. 208, 241 (1901) ("[I]f the health and comfort of the

19   inhabitants of a State are threatened, the State is the proper party to represent and defend them.").

20   There can be no serious dispute that the economic health and well-being of California's citizens

21   are implicated by ED's actions and this litigation. Compl. ¶¶ 68-72. Moreover, courts have

22   repeatedly held that a State's interest in protecting consumers within its borders is itself quasi-

23   sovereign in nature. *See, e.g.*, *New York v. Citibank, N.A.*, 537 F. Supp. 1192, 1197 (S.D.N.Y

24   1982) ("state has a 'quasi-sovereign' interest in protecting the welfare of its citizens and that

25   interest includes protection of its citizens from fraudulent and deceptive practices") (quotation

26   and citation omitted).

27       The third and final factor for parens patriae standing is also met. California is more than a

28   nominal party; it has a distinct interest apart from any private party. California "has a far broader

10

1    interest (than any of its citizens)" in ensuring that consumers are protected throughout California

2    and the protection of future borrowers who attend predatory schools. *Challenge v. Moniz*, 218 F.

3    Supp. 3d 1171, 1182 (E.D. Wash. 2016) (citing *Snapp*'s guidance to consider the "indirect effects

4    of the injury," *Snapp*, 458 U.S. at 607); *see also, e.g.*, *In re Taibibi*, 213 B.R. 261, 271 (E.D.N.Y.

5    1997) (holding that county has an interest "*apart from that of its residents*, in ensuring the

6    consumers within its borders are protected from unfair or deceptive business practices")

7    (emphasis added); *In re Edmond*, 934 F.2d 1304, 1312 (4th Cir. 1991) ("The Division acted, not

8    as a class representative, but on behalf of the State's quasi-sovereign interest in ensuring

9    consumer protection and in securing its borders against violations."). California's interest is

10   distinct because a "private action [by citizens] may not produce complete relief for all of the

11   persons endangered—both current and future—but for which the State's inherent and

12   fundamental sovereign interests would represent." *Challenge*, 218 F. Supp. 3d at 1182.[7]

13        Relying on *Massachusetts v. Mellon*, 262 U.S. 447 (1923), Defendants argue that it is

14   "well-established" that States can never sue the federal government in their parens patriae

15   capacity. MTD at 12.[8] Defendants are wrong. The Supreme Court squarely rejected the view that

16   *Mellon* "cast significant doubt on a State's standing to assert a quasi-sovereign interest . . . against

17   the Federal Government," *Massachusetts v. EPA*, 549 U.S. 497, 520 n.17 (2007), observing that

18   "*Mellon* itself disavowed any such broad reading when it noted that the Court had been 'called

19   upon to adjudicate, not the rights of person or property, not rights of dominion over physical

20   domain, [and] *not quasi-sovereign rights actually invaded or threatened*.'" *Id.* (quoting *Mellon*,

21   262 U.S. at 484-85).

22        Moreover, courts have repeatedly held that States may rely on their parens patriae standing

23

24        [7] That California brings this suit to vindicate the rights of consumers readily distinguishes
     this litigation from *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 652 (9th Cir. 2017), cited by
25   Defendants. MTD at 12 n.11. In that case, States brought suit on behalf of an "identifiable group
     of individual egg farmers" to vindicate the rights of those egg farmers only. *Koster*, 847 F.3d at
     651.
26        [8] Defendants also cite *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1178 (9th Cir.
27   2011), MTD at 12, but this case affirmed California's standing, relying on the State's "congruent"
     proprietary interests and quasi-sovereign interests (there, its interest in protecting natural
     resources). As alleged, California here makes a similarly "congruent" showing.

28

where, as here, they sue the federal government "to enforce a federal statute and to enjoin agency action allegedly in contravention of that statute." *Abrams v. Heckler*, 582 F. Supp. 1155, 1160 (S.D.N.Y. 1984); *see, e.g.*, *Am. Rivers v. FERC*, 201 F.3d 1186, 1205 (9th Cir. 1999) (standing to enforce provisions of the Federal Power Act); *Aziz*, 231 F. Supp. 3d at 32-33 (States have sufficiently pleaded both propriety and parens patriae standing to challenge defendants' "travel ban"); *Territory of Am. Samoa v. Nat'l Marine Fisheries Serv.*, No. 16-00095, 2017 WL 8316931, at *5 (D. Haw. Aug. 10, 2017) (rejecting argument that States lack parens patriae standing to sue federal agency); *California*, 281 F. Supp. 3d at 822 (States had standing to sue federal agency where they were "more than merely a 'nominal party' in [a] suit asserting a quasi-sovereign interest in the physical health and well-being of their citizens"); *Challenge*, 218 F. Supp. 3d at 1178 (holding that State had parens patriae standing to sue federal agency"); *Kansas ex rel. Hayden v. United States*, 748 F. Supp. 797, 802 (D. Kan. 1990) (plaintiffs have standing to enforce provisions of the federal Disaster Relief Act).[9]

Accordingly, California's interests in the economic health and well-being of its citizens are implicated by ED's actions at issue in this litigation and are sufficient to confer standing on California as parens patriae.

## C.   California Has Standing Because ED's Actions Have Injured California's Sovereign Interest

California also has standing based on its sovereign interest in the enforcement and interpretation of its own laws. Among the most significant sovereign powers of a State is the "exercise of sovereign power over individuals and entities," which "involves the power to create and enforce a legal code, both civil and criminal." *Snapp*, 458 U.S. at 601. Enforcing state law is one of the "quintessential functions of a State." *Diamond v. Charles*, 476 U.S. 54, 65 (1986). This interest is unique to States because "the State alone is entitled to create a legal code, only the State has the kind of 'direct stake' . . . in defending the standards embodied in that code." *Id.*

---

[9] *Cf. Texas v. United States*, 86 F. Supp. 3d 591, 626 (S.D. Tex. 2015) (observing that states may rely on parens patriae against the federal government "to enforce the rights guaranteed by a federal statute"); *Massachusetts*, 549 U.S. at 520 n.17 (observing that a state has standing "to assert its rights under federal law").

1  ED's delay and abandonment (and replacement) of the Corinthian Full-Relief Rule injures

2  California's sovereign interest and creates a justiciable controversy under Article III. California's

3  sovereign interest is directly at stake because the federal borrower-defense rule, 34 C.F.R.

4  § 685.206(c)(1), expressly incorporates a state-law standard for determining when a borrower has

5  a valid federal defense and the appropriate scope of relief. This federal law is "wholly dependent

6  upon State law." 81 Fed. Reg. 39330, 39339 (June 16, 2016). Accordingly, the Corinthian Full-

7  Relief Rule necessarily required ED to interpret, apply, and enforce California law. Compl. ¶¶ 36-

8  38.

9  Where, as here, the federal law expressly incorporates state law, rendering the federal

10  standard an "admixture" of federal and state law, the State's sovereign interest in the enforcement

11  and interpretation of its own law is sufficiently at stake to confer standing. *Nuesse v. Camp*, 385

12  F.2d 694, 700 (D.C. Cir. 1967).

13  *Nuesse* is instructive. *Nuesse* involved a federal banking law, 12 U.S.C. § 36(c), that

14  authorized national banks to open branches only "if such establishment and operation are at the

15  time expressly authorized to State banks by the law of the State in question." *Id*. In *Nuesse*, a

16  federal agency, the Office of Comptroller of Currency ("OCC"), was about to grant permission to

17  a national bank to open a branch in Wisconsin that would have, according to the Wisconsin

18  Commissioner of Banks, run afoul of Wisconsin's state branching law. In holding that the "state

19  banking commissioner [had] sufficient standing to bring an action to enjoin the [OCC] from

20  unlawfully authorizing a national bank to open a branch where state law would not permit

21  branching by state banks," the court held—in language directly relevant here—that Wisconsin

22  had an interest in protecting state policies that were wrapped up in a federal law:

23  > [F]or various policy reasons [the federal government] decided to
24  > adopt and incorporate state law on issues of common concern. This
   > admixture of national and state policies, attaching national legal
   > force to a state policy, yields the corollary that *a state official
25  > directly concerned in effectuating the state policy has an "interest"
   > in a legal controversy . . . which concerns the nature and protection
26  > of the state policy*.

27  *Nuesse*, 385 F.2d at 700 (emphasis added). This holding was expressly adopted by the Ninth

28  Circuit in a similar action by the Montana Superintendent of Banks against the OCC. *Leuthold v.*

13

1  *Camp*, 405 F.2d 499, n.1 (9th Cir. 1969); *see also Coffey v. CIR*, 663 F.3d 947, 950 (8th Cir.

2  2011) (Virgin Islands could intervene as a matter of right where it had "sovereign interest" in

3  protecting its own tax statute; tax statute "mirrors" U.S. tax law, and IRS interpretation of statute

4  of limitations in tax cases would hamper Virgin Islands' ability to administer its own tax statute);

5  *Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1242 (10th Cir. 2008) (Wyoming had

6  standing to sue federal government under APA where agency interpreted state law allowing

7  "expungement" of misdemeanor convictions and concluded the state law did not satisfy federal

8  statute's definition of "expungement").

9        The same is true here. The California Attorney General, as the State's chief law officer,

10  Cal. Const. Art. V, § 13, is "directly concerned in effectuating" California's consumer-protection

11  statutes, including California's Unfair Competition Law, on which the Corinthian Full-Relief

12  Rule is based. Compl. ¶¶ 36-38. Accordingly, California law is central to and directly implicated

13  by ED's actions surrounding the delay and abandonment (and replacement) of the Corinthian

14  Full-Relief Rule. At stake here are the rights of defrauded borrowers and their entitlement under

15  California law to complete discharge of their invalid student loans—rights that are being enforced

16  through a federal program. California has a legally protected sovereign interest in the

17  enforcement of its laws, even when enforced (or unlawfully not enforced) by a federal agency.

18  California has standing to protect that interest.

19                      *        *        *

20        In sum, California has adequately pleaded separate, distinct injuries to each of its

21  propriety, quasi-sovereign, and sovereign interests that are traceable to ED's actions and

22  redressable by this Court. California therefore has multiple standing bases to maintain this suit.

23  **II.   DEFENDANTS' 12(B)(6) CHALLENGES ALL FAIL**

24       **A.   Defendants Invite Error by Addressing the Merits Without the Benefit of
         an Administrative Record**

25

26        Defendants' 12(b)(6) challenges are more properly considered arguments going to the

merits of this case, which will be heard on summary judgment with a review of the full

27

28

administrative record. *See* Civil L.R. 16-5.[10] It is well-established that "[i]f a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision." *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984); *accord, e.g.*, *Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 338 (D.C. Cir. 1989) ("[I]n order to allow for meaningful judicial review, the agency must produce an administrative record that delineates the path by which it reached its decision."). Where an APA case "can be resolved with nothing more than the statute and its legislative history, such as where a plaintiff alleges that a regulation is inconsistent with a statute," then a court may address the merits without an administrative record. *Dist. Hosp. Partners v. Sebelius*, 794 F. Supp. 2d 162, 171 (D.D.C. 2011). But that is not the case here.

Claim I (unreasonable delay) asks the Court to determine the reasonableness of ED's decision to indefinitely delay application of 34 C.F.R. § 685.206(c)(1) and the Corinthian Full-Relief Rule, which together dictated that ED expeditiously grant eligible borrowers full loan relief under California law. This is an inherently factual inquiry that requires the Court to apply a six-part test. *See Telecom. Research & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70 (D.C. Cir. 1984). Moreover, despite the Complaint's well-pleaded allegations, Defendants dispute the existence of the Corinthian Full-Relief Rule. Resolution of this dispute will require an administrative record. *See, e.g.*, *Daniels v. United States*, 947 F. Supp. 2d 11, 22 (D.D.C. 2013) (administrative record confirmed existence of a substantive policy).

Claim II (unlawful retroactive application) asks the Court to determine the legality of ED's application of the Partial-Relief Rule to borrowers already determined to be eligible for full relief under the Corinthian Full-Relief Rule. Despite California's well-pleaded allegations, Defendants again dispute the existence of the Corinthian Full-Relief Rule; resolution of this dispute will also requires an administrative record. *See, e.g.*, *id*.

---

[10] The futility of review at the pleadings stage of an APA claim is likely why Civil L.R. 16-5 does not contemplate the filing of a 12(b)(6) motion. That rule expects the defendant to answer and simultaneously file the administrative record so that the case can be resolved on summary judgment. *Id.* Similarly, in the District Court for the District of Columbia, which hears a majority of the nation's APA claims, the defendant must file a certified copy of the contents of the administrative *no later* than the filing of any dispositive motion. *See* D.D.C. L.Cv.R. 7(n)(1).

1    Claim III (unequal treatment) asks the Court to review whether ED's decision to break with

2    28,000 consistent adjudications under the Corinthian Full-Relief Rule by applying the Partial-

3    Relief Rule is arbitrary and capricious; this review necessarily requires an administrative record.

4    *See, e.g.*, *Swedish Am. Hosp. v. Sebelius*, 691 F. Supp. 2d 80, 89 (D.D.C. 2010) (without

5    administrative record, court cannot determine whether adjudicatory process was reasonable).

6    Finally, Claims IV and V (unlawful debt collection) seek a review of ED's decision to

7    certify as "legally enforceable," 31 C.F.R. § 285.5, the debts of borrowers with pending

8    borrower-defense claims and borrowers covered by the Corinthian Fraud Findings. This review

9    will also necessarily require an administrative record to decide whether ED's determinations of

10    legal enforceability were proper. *See, e.g.*, *id.* at 88 (administrative record needed to evaluate

11    agency's rationale at the time of its decision).

12    The lack of an administrative record at the pleadings stage is sufficient for the Court to

13    deny each of Defendants' 12(b)(6) challenges. Moreover, because the Complaint's allegations

14    each state a claim to relief that is plausible on its face, the Court should deny Defendants'

15    12(b)(6) challenges.

16    **B.    Claim I (Unreasonable Delay) States a Plausible Claim for Relief**

17    The Complaint sufficiently pleads unreasonably delayed agency action. 5 U.S.C. § 706(1).

18    To state this claim, California must "assert[] that an agency failed to take a *discrete* agency action

19    that it is *required to take*." *Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1161 (N.D. Cal. 2007)

20    (citation and quotations omitted). Defendants argue that no agency action was "clearly

21    mandated," MTD at 16-17, but as pleaded, the discrete and unequivocal agency action that ED

22    was required to take was compelled by 34 C.F.R. § 685.206(c)(1) and the Corinthian Full-Relief

23    Rule, which together mandated that ED expeditiously discharge eligible borrowers' loans as

24    required by California law.[11]

25    The Corinthian Full-Relief Rule qualified *identifiable* borrowers covered by the Corinthian

26    _____

[11] It is for this reason that Defendants' claim of "programmatic challenge" is inapt too.
27    MTD at 15. California does not request the Court to impose its own discretion but only to compel
ED to take a discrete and unequivocal action required by law. *See, e.g.*, *Norton v. S. Utah*
*Wilderness All.*, 542 U.S. 55, 64, (2004).

28

16

Fraud Findings as immediately eligible for full loan relief, conditioned only on the borrower submitting a completed claim form. There is no discretionary action for ED to take once these borrowers submit a claim; once a claim is submitted, ED has only the ministerial and non-discretionary task of finalizing full discharge—a task that ED has already performed 28,000 times. *See, e.g.*, *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("§ 706(1) empowers a court to compel only an agency to perform a ministerial or non-discretionary act") (quotation and citation omitted).

To evaluate an APA "delay" claim, courts apply the *TRAC* test, which is guided by the "rule of reason" and "take[s] into account the nature and extent of the interests prejudiced by the delay," among other factors. *Brower v. Evans*, 257 F.3d 1058, 1068-69 (9th Cir. 2001) (citing *TRAC*, 750 F.2d at 80). Under the circumstances, ED's continued delay in applying the Corinthian Full-Relief Rule defies reason and plainly prejudices affected borrowers. Compl. ¶¶ 68-72. ED has not applied the Corinthian Full-Relief Rule since January 20, 2017. *Id.* ¶ 51. The MTD confirms that this delay is now indefinite. *See* MTD at 8. But even as pleaded, ED's delay is unreasonable. *See, e.g.*, *Houseton v. Nimmo*, 670 F.2d 1375 (9th Cir. 1982) (finding a 16-month delay in processing a request for reconsideration to be the equivalent of a dismissal of the request); *Ensco Offshore Co. v. Salazar*, 781 F. Supp. 2d 332, 337-40 (E.D. La. 2011) (finding a delay of four to nine months unreasonable where permits were generally processed in two weeks' time). Accordingly, Claim I states a plausible claim for relief.

### C.   Claim II (Unlawful Retroactive Application) States a Plausible Claim for Relief

The APA bars ED from applying new rules retroactively. The APA defines "rule" to mean "the whole or a part of an agency statement of general or particular applicability and *future effect* designed to implement, interpret, or prescribe law or policy . . . ." 5 U.S.C. § 551(4) (emphasis added). The APA comports with the well-established maxim that "[r]etroactivity is not favored in the law." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Retroactive rulemaking is impermissible where it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."

17

1   *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994).

2   The Complaint sufficiently pleads unlawful retroactive application of a new rule in

3   violation of the APA. 5 U.S.C. § 706(2)(A). California alleges that ED had a rule, the Corinthian

4   Full-Relief Rule, which it applied to qualify *identifiable* borrowers as immediately eligible for

5   full loan relief under California law. Compl. ¶¶ 32-44. Consistent with this rule, ED engaged in

6   massive outreach to inform borrowers of their eligibility, asked California and other States to

7   assist with outreach efforts when ED's efforts stalled, placed no time limits on when borrowers

8   could apply, and in fact granted full relief to 28,000 of these borrowers in accordance with the

9   Corinthian Full-Relief Rule and California law. Compl. ¶¶ 36, 43, 44, 47-49. As further alleged,

10  ED has now abandoned the Corinthian Full-Relief Rule and is applying a new rule to borrowers

11  already determined eligible for full relief under the Corinthian Full-Relief Rule. Compl. ¶ 87-90.

12  The MTD bolsters California's allegations by confirming that ED is now harming borrowers by

13  applying the Partial-Relief Rule to deny them full relief. MTD at 8. As pleaded, this is a textbook

14  definition of an agency applying a new rule retroactively.

15  *Cort v. Crabtree*, 113 F.3d 1081 (9th Cir. 1997), is controlling here. *Cort* barred a federal

16  agency from retroactively applying a new rule limiting relief to claimants already determined

17  eligible for relief by that agency. There, the Bureau of Prisons had a policy of reducing the

18  sentences of "nonviolent" offenders who completed a substance-abuse treatment program. *Id.* at

19  1082. The Bureau notified the plaintiffs that they were eligible for a sentence reduction based on

20  their offenses being "nonviolent." *Id.* However, before the plaintiffs could complete the treatment

21  program, the Bureau "altered its interpretation of nonviolent offenses" and denied the plaintiffs

22  eligibility for early release. *Id.* The Ninth Circuit held that the Bureau's new interpretation of

23  "nonviolent offense" could not be applied retroactively to deny relief to individuals that it had

24  already determined eligible under the old interpretation. *Id.* at 1085-86. The same is true here. ED

25  cannot retroactively apply a new rule to deny borrowers full relief that ED has already determined

26  are eligible for full relief under the Corinthian Full-Relief Rule.

27  Faced with well-pleaded allegations supporting unlawful retroactivity, Defendants raise a

28  host of unconvincing challenges. Defendants first attack the existence of the Corinthian Full-

18

1   Relief Rule. MTD at 17-18. As discussed, this a premature challenge at the pleadings stage

2   without an administrative record and, in any event, is belied by ED's own statements, actions, and

3   practice. Defendants next argue that California has not challenged any final agency action that

4   harms borrowers. MTD at 18. This argument fails under *Bennet v. Spear*, 520 U.S. 154 (1997).

5   ED's decision to adopt the Corinthian Full-Relief Rule, delay it, abandon it, and replace it are all

6   actions subject to judicial review because (1) each marks the "consummation" of the ED's

7   decision-making process, and (2) legal consequences follow from each decision, namely the

8   amount of relief to which defrauded Corinthian borrowers would receive. *Id*. at 178; *see also,*

9   *e.g.*, *Salazar v. King*, 822 F.3d 61, 82-84 (2d Cir. 2016) ("The APA does not require that the

10  challenged agency action be the agency's final word on the matter for it to be 'final' for the

11  purposes of judicial review."). Defendants lastly argue that ED's actions are unreviewable

12  because the Secretary retains ultimate discretion to determine the amount of relief for defrauded

13  borrowers. MTD at 18-19. This is not true. Relief under 34 C.F.R. § 685.206(c)(1) is determined

14  by state law (here, California's), not the Secretary's whims. And even if the Secretary did retain

15  plenary discretion (which she does not), this would have no bearing on the retroactivity analysis.

16  *See Cort*, 113 F.3d at 1085-86 (agency could reinterpret "nonviolent offense" but could not apply

17  reinterpretation retroactively). Accordingly, Claim II states a plausible claim for relief.

18      **D.    Claim III (Unequal Treatment) States a Plausible Claim for Relief**

19          California sufficiently pleaded that ED has arbitrarily and capriciously adjudicated similarly

20  situated Corinthian borrower-defense claimants unequally. 5 U.S.C. § 706(2)(A); *see, e.g.*,

21  *Muwekma Ohlone Tribe v. Kempthorne*, 452 F. Supp. 2d 105, 115 (D.D.C. 2006) ("[T]he APA

22  prohibit agencies from treating similarly situated petitioners differently without providing a

23  sufficiently reasoned justification for the disparate treatment."); *Greater Yellowstone Coal. v.*

24  *Kempthorne*, 577 F. Supp. 2d 183, 189 (D.D.C. 2008) ("Review of an agency action is more

25  demanding where the challenged decision stems from an administrative about-face.")

26          As alleged, ED granted full relief to 28,000 defrauded borrowers in accordance with the

27  Corinthian Full-Relief Rule and California law. Compl. ¶ 49. As further alleged, and as confirmed

28  by the MTD, ED is now applying the Partial-Relief Rule to adjudicate the claims of similarly

19

situated borrowers, covered by the exact same Corinthian Fraud Findings to deny them full relief, in contravention of California law. MTD at 8. As alleged, ED has provided no justification for this about-face, let alone a reasoned one. Compl. ¶¶ 57, 96.

Defendants argue that because some borrowers may still receive full discharges under the Partial-Relief Rule, not all borrowers are being denied full relief under ED's revised adjudicatory policy. MTD at 19-20. Defendants misconstrue California's claim, which seeks review of ED's decision to depart from prior adjudicatory policy (the Corinthian Full-Relief Rule)—an agency action which is reviewable. *See, e.g.*, *Bennet*, 520 U.S. at 178. Defendants also raise a similar host of challenges to this claim that all fail for the same reasons already discussed. Accordingly, Claim III states a plausible claim for relief.

### E.   Claims IV and V (Unlawful Debt Collection) State Plausible Claims for Relief

Claim IV alleges that ED has unlawfully certified as "legally enforceable" the debts of borrowers with pending borrower-defense claims, subjecting those borrowers to administrative offset. Compl. ¶¶ 99-101. Claim V alleges that ED has unlawfully certified for offset the debts of borrowers covered by the Corinthian Fraud Findings who have not yet submitted to ED a borrower-defense claim, even though ED is aware that these borrowers have valid defenses to repayment. Compl. ¶¶ 104-106. Both claims are sufficiently alleged.

By way of background, the U.S. Department of the Treasury ("Treasury") administers centralized offset through the Treasury Offset Program. 31 C.F.R. § 285.5(a)(1). Through offset, Treasury seizes certain government payments, including tax refunds, bound for a debtor to satisfy delinquent debt owed to the federal government. *Id.*; 31 C.F.R. § 285.5. Relevant here, before Treasury will offset a payment based on a delinquent student loan, ED must provide written certification to Treasury that, among other things, the borrower's loan is "legally enforceable." 31 C.F.R. § 285.5(d)(6); *see also* 31 U.S.C. §§ 3716 & 3720A; 31 C.F.R. § 285.2(d)(1). After ED submits a debt to Treasury for offset, it must provide written recertification to Treasury at least annually that the debt continues to be legally enforceable. 31 C.F.R. § 285.5(d)(7)(i). The Department must notify Treasury "immediately" of any change in the legal enforceability of the

20

1    debt. 31 C.F.R. § 285.5(d)(10)(iv); *see also* 31 C.F.R. § 285.2(d)(4) ("promptly notify"). A debt

2    is "legally enforceable" if "there has been a final agency determination that the debt, in the

3    amount stated, is due, and there are no legal bars to collection by offset." 31 C.F.R. § 285.5(b). A

4    debt that "is the subject of a pending administrative review process required by statute or

5    regulation" and for which "collection action during the review process is prohibited" is not

6    "legally enforceable." *Id.*

7         Defendants move to dismiss both of California's debt-collection claims, arguing that the

8    Complaint (1) does not identify any concrete, discrete agency action subject to judicial review;

9    (2) does not allege that ED has engaged in unlawful debt collection; and (3) fails to allege

10   exhaustion. MTD at 21. None of these arguments are valid.

11        First, the Complaint sufficiently alleges a concrete, discrete agency action subject to

12   judicial review. Treasury's regulations require ED to certify, and to re-certify at least annually,

13   that any debt referred to Treasury is "legally enforceable"—that is, to make "a final agency

14   determination that the debt, in the amount stated, is due, and there are no legal bars to collection

15   by offset." 31 C.F.R. §§ 285.5(b), 285.5(d)(6), 285.5(d)(7)(i). In other words, for every debt that

16   ED refers to Treasury, there necessarily exists an attendant "final agency determination," which is

17   subject to judicial review. 5 U.S.C. § 704. Defendants' argument that the Complaint does not

18   identify a concrete, discrete agency action thus fails. MTD at 21-22. Defendants' claim that the

19   Complaint asserts a "programmatic challenge," MTD at 22, similarly fails: California seeks

20   review not of "general agency conduct" but of final agency determinations about the legal

21   enforceability of particular borrowers' debts. *Id.*

22        Second, Defendants wrongly allege that Claims IV and V must fail because the Complaint

23   fails to identify with particularity individual instances of ED's improper debt collection. MTD at

24   21. While the Complaint does not individually identify each of the borrowers against whom ED

25   engaged in unlawful debt collection, it is not required to do so. *See* Fed. R. Civ. P. 8. Of ED's

26   41.5 million loan recipients,[12] the Complaint identifies the number of Corinthian borrowers who,

27   _____

        [12] As of Q3 2016. *See* https://studentaid.ed.gov/sa/sites/default/files/fsawg/datacenter/
28   library/PortfolioSummary.xls

1   as of September 2016, were subject to offset (30,000) or wage garnishment (4,000); it also

2   identifies the number of borrowers with pending borrower-defense claims (over 85,000). Compl.

3   ¶¶ 55, 71. California alleges that by certifying these borrowers' debts as "legally enforceable" and

4   subjecting them to offset, ED engaged in unlawful debt collection practices. This is sufficiently

5   precise to survive the pleadings stage. Moreover, ED itself—not California—possesses the

6   individualized data that would identify each Corinthian borrower or other borrower with

7   borrower-defense claims who has been subject to administrative debt collection, since ED

8   necessarily certified their eligibility for offset.

9        With regard to Claim IV, Defendants also argue that the Complaint does not allege

10   unlawful debt collection because the debts of borrowers with pending borrower-defense claims

11   who have opted for forbearance are somehow still "legally enforceable." MTD at 22-24. This

12   contradicts the plain language of 31 C.F.R. § 285.5(b):

13        *Legally enforceable* refers to a characteristic of a debt and means
           there has been a final agency determination that the debt, in the
14        amount stated, is due, and there are no legal bars to collection by
           offset. Debts that are not legally enforceable for purposes of this
15        section include, but are not limited to, . . . . For example, if a
           delinquent debt is the subject of a pending administrative review
16        process required by statute or regulation, and if collection action
           during the review process is prohibited, the debt is not considered
17        legally enforceable for purposes of this section. . . .

18        Defendants argue that the debts of borrowers with pending borrower-defense claims who

19   opted for forbearance, which ED offered them, does not fall within the regulation's example of a

20   debts that are not "legally enforceable" because (1) they are not the subject of a pending

21   administrative review process required by statute or regulation, and (2) collection during the

22   review process is not prohibited. MTD at 24. Defendants' position is untenable. First, submission

23   of a borrower-defense claim triggers an administrative-review process required by 34 C.F.R.

24   § 685.206. *See Krebs v. Charlotte Sch. of Law*, No. 17-00190, 2017 WL 3880667, at *12

25   (W.D.N.C. Sept. 5, 2017) (ED's review of borrower-defense claims is an "administrative

26   process"). Second, ED explicitly told borrowers that they could opt for forbearance during ED's

27   review of their borrower-defense claim. Compl. ¶¶ 35, 37. Defendants' position cannot be that

28   ED could misrepresent to borrowers that it would halt all collection activity during review (even

22

1    if through "administrative grace," MTD at 20) and then turn around and collect against the

2    borrower anyway. *See, e.g.*, *INS v. Yueh-Shaio Yang*, 519 U.S. 26 (1996) ("irrational departure"

3    from general policy reviewable under the APA). Because ED provided forbearance, collection

4    against borrowers in forbearance is prohibited.[13]

5          With regard to Claim V, Defendants essentially argue that borrowers covered by the

6    Corinthian Fraud Findings who have not yet submitted a borrow-defense claim can be subject to

7    offset even though ED knows they have a valid defense to repayment, and that the Complaint thus

8    does not allege unlawful debt collection. MTD at 23. In essence, Defendants attempt to shift the

9    onus of asserting a bar to collection onto individual borrowers. But the plain language of

10   applicable regulations prevents this: ED has an independent duty to certify that there are no legal

11   bars to collection whenever it refers a debt to Treasury for offset. 31 C.F.R. § 285.5(d)(6).

12   Further, ED is under an ongoing obligation to "immediately" notify Treasury of any change in the

13   legal enforceability of the debt, 31 C.F.R. § 285.5(d)(10)(iv), and to recertify at least annually that

14   the debt is "legally enforceable," 31 C.F.R. § 285.5(d)(7)(i). As Defendants concede, ED has

15   already determined that borrowers subject to the Corinthian Fraud Findings have a valid borrower

16   defense based on a cause of action under California law—the parties just dispute the appropriate

17   amount of relief. MTD at 16 ("[T]he Department's own findings determined that these campuses

18   had engaged in actionable wrongdoing under state law."). Thus, as alleged, ED has determined

19   that the debts of borrowers covered by the Corinthian Fraud Findings are subject to bona fide

20   "legal bars to collection" under both the borrower-defense rule, 34 C.F.R. § 685.206(c)(1), and

21   the terms of each borrower's loan note.[14] Even though these borrowers have not yet asserted

---

[13] Defendants also appear to wrongly interpret the example set forth in 31 C.F.R. § 285.5(b) as being the only standard for determining which debts are not "legally enforceable," even though that regulation specifically states otherwise. Contrary to Defendants' focus on whether a debt is the subject of a pending administrative review process in which collection activity is prohibited during the course of review, other debts not falling within this category may still be not "legally enforceable."

[14] Defendants do not address the allegations that ED's "Master Promissory Note" includes a contractual defense to repayment if the school engaged in misconduct. Compl. ¶¶ 19, 105. Because this provision applies to borrowers covered by the Corinthian Fraud Findings, this constitutes an additional legal bar to collection of their loans. *See Dieffenbacher v. DeVos*, No. 17-00342, 2017 WL 4786096, at *1 (C.D. Cal. June 9, 2017) (borrower asserting defense under loan note).

1     borrower-defense claims, ED's continued certification of these debts for Treasury offset

2     constitutes unlawful debt collection.

3         Finally, contrary to Defendants' arguments, MTD at 25, administrative exhaustion is

4     inapplicable here. The APA is clear that final agency action is reviewable whether or not

5     administrative claims or remedies have been exhausted. 5 U.S.C. § 704. "Courts are not free to

6     impose an exhaustion requirement as a rule of judicial administration where the agency action has

7     already become 'final' under [the APA]." *Darby v. Cisneros*, 509 U.S. 137, 154 (1993); *see also*

8     *United States v. Hughes*, 813 F.3d 1007, 1009 (D.C. Cir. 2016) (rejecting argument that claim for

9     return of assets seized by agency was barred by exhaustion, noting "even assuming an available

10    administrative remedy, [the APA] imposes no prerequisite of administrative exhaustion unless it

11    is 'expressly required by statute or agency rule'") (quoting *Darby*, 509 U.S. at 143)).

12        Accordingly, Claims IV and V state plausible claims for relief.

13                         **CONCLUSION**

14        For these reasons, the Court should deny the MTD in its entirety.

15

16    Dated: May 8, 2018                         Respectfully submitted,

17                                     XAVIER BECERRA

18                                     Attorney General of California

19                                     /s/ Bernard A. Eskandari

20                                     BERNARD A. ESKANDARI
                                         Supervising Deputy Attorney General

21                                     *Attorneys for Plaintiff the People of the State*

22                                     *of California*

23

24

25

26

27

28