1

2

3                          UNITED STATES DISTRICT COURT

4                        NORTHERN DISTRICT OF CALIFORNIA

5

6   PEOPLE OF THE STATE OF                    Case No.  17-cv-07106-SK
    CALIFORNIA,

7              Plaintiff,
                                              **ORDER GRANTING DEFENDANTS'**
8        v.                                   **MOTION TO DISMISS**

9   UNITED STATES DEPARTMENT OF               Regarding Docket No. 26
    EDUCATION, et al.,

10             Defendants.

11

12          Defendants the United States Department of Education and Betsy DeVos, in her official

13  capacity as Secretary of Education ("Defendants") move to dismiss this action for lack of subject

14  matter jurisdiction under Fed.R.Civ.P. 12(b)(1) and failure to state a claim under Fed.R.Civ.P.

15  12(b)(6).  Having carefully considered the parties' papers, relevant legal authority, the record in

16  the case, and having had the benefit of oral argument, the Court hereby GRANTS Defendants'

17  motion for the reasons set forth below.  The Court also gives leave for Plaintiff the People of The

18  State of California ("Plaintiff") to file an amended complaint within 30 days of this Order.

19                                 **BACKGROUND**

20          Corinthian Colleges Inc. ("Corinthian"), a for-profit college headquartered in California,

21  operated more than 100 campuses under the names Everest, Heald, and Wyotech, including more

22  than 30 campuses in California.  (Complaint at Dkt. 1, ¶¶ 23, 36.)  In October 2013, California

23  sued Corinthian to stop fraudulent conduct designed to lure vulnerable students to Corinthian's

24  programs.  (Dkt. 1, ¶¶ 24, 25.)[1]

25

26  _____

27          [1]  Individual plaintiffs filed a putative class action suit, *Calvillo Manriquez et al v. DeVos
    et al,* Case No. 3:17-cv-07210-SK, alleging similar but not identical claims under the
    Administrative Procedures Act, the Privacy Act, and the Constitution.  On May 25, 2018, the
28  Court granted in part and denied in part plaintiffs' motion for preliminary injunction.  (Dkt. 60.)
    The present matter and Case No. 17-cv-07210 are deemed "related" by the Court.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In April 2015, based on a joint investigation with the California Attorney General, the

2    United States Department of Education (the "Department") fined Corinthian $30 million for

3    falsifying job-placement rates.  (Dkt. 1, ¶ 27.)  Shortly thereafter, Corinthian closed and filed for

4    bankruptcy.  (Dkt. 1, ¶¶ 29, 30.)  In March 2016, California obtained a $1.1 billion default

5    judgment against Corinthian in California state court, and the court found that Corinthian engaged

6    in systematic and widespread misrepresentations to defraud students and taxpayers.  (Dkt. 1, ¶ 31.)

7    The Department determined that Corinthian's fraud left thousands of students eligible for

8    discharge of their federal student loans under the Department's borrower-defense regulation, 34

9    C.F.R. § 685.206(c)(1) (authorized by 20 U.S.C. § 1087e(h)), and under the terms of the

10   promissory notes of their loans.  (Dkt. 1, ¶¶ 17-19, 32.)  With the California Attorney General, the

11   Department determined that students who relied on misrepresentations found in Corinthian's

12   published job-placement rates had a cause of action under California law that qualified these

13   students for forgiveness of their federal direct student loans and refunds of the amounts paid.

14   (Opposition at Dkt. 29, at p. 9.)  To implement this relief, the Department created a "streamlined

15   process" of reviewing claims that would simplify and expedite relief, thus reducing the burden on

16   borrowers.  (Dkt. 1, ¶¶ 32, 33.)

17   Plaintiff calls the streamlined process the "Corinthian Full-Relief Rule" ("Corinthian

18   Rule") which governs the borrower-defense claims of "whole groups of Corinthian students (for

19   example, an entire academic program at a specific campus during a certain time frame)."  (Dkt. 1,

20   ¶ 33.)  The Corinthian Rule is based on state law theories developed by the California Attorney

21   General, including the following:

22   •   Because Corinthian was headquartered in and managed from California, California
          law applies for purposes of determining whether there was a cause of action against
23        the school. (Dkt. 1, ¶ 36.)

24   •   Corinthian misrepresented job-placement rates at certain campuses, for certain
          programs, during certain time periods ("Corinthian Fraud Findings").  (Dkt. 1, ¶¶
25        32, 40-42.)

26   •   Borrowers subjected to the Corinthian Fraud Findings were eligible for borrower-
          defense relief, which was expedited by the use of a "simple attestation form"
27        provided by the Department that allowed borrowers "to document the impact of
          Corinthian's inflated job-placement rates on them in a manner that supported a
28        cause of action under California's Unfair Competition Law."  (Dkt. 1, ¶¶ 37, 66.)

2

- California law controls the scope of relief.  (Dkt. 1, ¶ 38.)  Therefore, California maintains that borrowers subject to the Corinthian Rule were entitled to full relief of their federal loans, including a refund of all amounts paid.  (Dkt. 1, ¶¶ 33, 45.)

The Department "memorialized" the Corinthian Rule in various legal memoranda identified in a report by the Office of Inspector General as "Federal Student Aid's Borrower Defense to Repayment Loan Discharge Process" (December 8, 2017).[2]  Plaintiff maintains that public statements from the Department confirm the existence of the Corinthian Rule.  (Dkt. 1, ¶¶ 32-34, 36-41, 66.)  The Department determined that over 80,000 borrowers, of which 38,000 were Californians, were eligible for expedited loan relief under the Corinthian Rule.  (Dkt. 1, ¶ 42.)  The Department provided outreach to eligible borrowers.  (Dkt. 1, ¶ 43.)  For nearly two years, without exception, the Department consistently applied the Corinthian Rule to grant full relief to 28,000 defrauded Corinthian borrowers.  (Dkt. 1, ¶¶ 45-49.)

On January 20, 2017, the Department, "abandoning" the Corinthian Rule, stopped approving borrower defense claims.  (Dkt. 1, ¶¶ 87, 88.)  In June 2017, Secretary DeVos (the "Secretary") announced a "regulatory reset."  (Dkt. 1, ¶¶ 62, 63.)  The Secretary then announced what Plaintiff calls the "Partial Relief Rule."[3]  (Dkt. 29 at page 5.)  The Partial Relief Rule attempts to measure "the harm Corinthian borrowers actually incurred" from Corinthian's fraud by "comparing average earnings at Corinthian programs with the average earnings at comparable programs."  (Motion to Dismiss at Dkt. 26 at page 8, n.8 ("December 20, 2017 Press Release").)[4]  The Partial Relief Rule affords defrauded Corinthian borrowers with a minimum of 10% loan relief.  (December 20, 2017 Press Release.)  As of December 20, 2017, the Department approved the discharge of 12,900 claims and denied 8,600 pending claims.  (December 20, 2017 Press

---

[2] Patrick J. Howard, *Federal Student Aid's Borrower Defense to Repayment Loan Discharge Process,* U.S. Department of Education Office of Inspector General (2017), https://www2.ed.gov/about/offices/list/oig/auditreports/fy2018/i04r0003.pdf.

[3] The Court takes judicial notice of the December 20, 2017 Press Release.  In the related action, the Plaintiffs referred to the new rule as the "Average Earnings Rule."

[4] U.S. Department of Education, *Improved Borrower Defense Discharge Process Will Aid Defrauded Borrowers, Protect Taxpayers* (Dec. 20, 2017), https://www.ed.gov/news/press-releases/improved-borrower-defense-discharge-process-will-aid-defrauded-borrowers-protect-taxpayers

United States District Court
Northern District of California

Release.)

Plaintiff asserts five claims under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq*. First, Plaintiff asserts a claim for unreasonable delay of agency action under the APA, 5 U.S.C. § 706(1). (Dkt. 1, ¶¶ 73-83.) Second, Plaintiff asserts a claim for unlawful retroactive agency action under the APA, 5 U.S.C. § 706(2)(A). (Dkt. 1, ¶¶ 84-91.) Third, Plaintiff alleges that the Defendants' actions are arbitrary and capricious because they made inconsistent findings and treated equally situated borrowers unequally. (Dkt. 1, ¶¶ 92-96.) In the fourth and fifth claims, Plaintiff alleges that Defendants' actions in abandoning the Corinthian Rule and instituting the Partial Relief Rule are not in accordance with the law because Defendants are attempting to collect debts that are not "legally enforceable" and because the use of offset and wage garnishments are unlawful. (Dkt. 1, ¶¶ 97-106.)

Plaintiff seeks an order vacating the denials of borrower-defense claims for former Corinthian students and compelling the Department to approve and grant full relief to all pending and future claims submitted by former Corinthian students. (Dkt. 1, ¶¶ A-C.) Plaintiff also asks the Court to declare as unlawful and set aside the Department's action to collect loans subject to borrower defense claims in which a forbearance or collection stoppage was requested, and to set aside the Department's determinations and certifications that the loans in question are subject to administrative offset, tax refund offset, or administrative wage garnishment. (Dkt. 1, ¶¶ D-G.)

## ANALYSIS

### A.   Legal Standards

#### 1.   Motion to Dismiss under Rule 12(b)(6)

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. On a motion to dismiss under Rule 12(b)(6), the Court construes the allegations in the complaint in the light most favorable to the non-moving party and takes as true all material allegations in the complaint. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986) (citation omitted).

If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th

1    Cir. 1990); *Cook, Perkiss & Lieche, Inc. v. N. Cal. Collection Serv., Inc.,* 911 F.2d 242, 247 (9th

2    Cir. 1990) (citations omitted).

3          As a general rule, "a district court may not consider any material beyond the pleadings in

4    ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), overruled

5    on other grounds, *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation

6    omitted). However, documents subject to judicial notice, such as matters of public record, may be

7    considered on a motion to dismiss. *See Harris v. Cty of Orange*, 682 F.3d 1126, 1132 (9th Cir.

8    2012) (citation omitted). In doing so, the Court does not convert a motion to dismiss to one for

9    summary judgment. *See Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986),

10   overruled on other grounds by *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).

11   "The court need not . . . accept as true allegations that contradict matters properly subject to

12   judicial notice . . . ." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

13          **2.    Motion to Dismiss under Rule 12(b)(1) and Standing**

14          When a defendant moves to dismiss for lack of subject matter jurisdiction pursuant to Rule

15   12(b)(1), the plaintiff bears the burden of proving that the court has jurisdiction to decide the

16   claim. *Thornhill Publ'n Co. v. Gen. Tel. & Elecs. Corp.,* 594 F.2d 730, 733 (9th Cir. 1979).

17   Federal courts can only adjudicate cases which the Constitution or Congress authorizes them to

18   adjudicate: cases involving diversity of citizenship, or those cases involving a federal question, or

19   where the United States is a party. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S.

20   375, 377 (1994).

21          A Rule 12(b)(1) motion can be either "facial" or "factual." *Safe Air for Everyone v.*

22   *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where an attack on jurisdiction is a "facial" attack

23   on the allegations of the complaint, the factual allegations of the complaint are taken as true and

24   the non-moving party is entitled to have those facts construed in the light most favorable to him or

25   her. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996).

26          In a "factual attack," the moving party questions the veracity of the plaintiff's allegations

27   that "would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. The

28   plaintiff's allegations are questioned by "introducing evidence outside the pleadings." *Leite v.*

United States District Court
Northern District of California

1    *Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "When the defendant raises a factual attack, the

2    plaintiff must support her jurisdictional allegations with 'competent proof,' under the same

3    evidentiary standard that governs in the summary judgment context." *Id.* (quoting *Hertz Corp. v.*

4    *Friend*, 559 U.S. 77, 96-97 (2010)). While the plaintiff typically has the burden of proof to

5    establish subject matter jurisdiction, "if the existence of jurisdiction turns on disputed factual

6    issues, the district court may resolve those factual disputes itself." *Id.* at 1121-22 (citing *Safe Air*

7    *for Everyone*, 373 F.3d at 1039-40).

8         Federal courts have jurisdiction only over "cases" and "controversies." U.S. Const. Art.

9    III, § 2. A court is required to dismiss an action if the court lacks jurisdiction. Fed. R. Civ. P.

10   12(h)(3). The burden to prove standing – that there is a case or controversy – is on the party

11   invoking federal jurisdiction. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). "A

12   plaintiff must demonstrate standing for each claim he seeks to press" and for "'each form of relief

13   sought.'" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (quoting *Friends of the*

14   *Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185 (2000)). When a plaintiff "defends

15   against a motion to dismiss at the pleading stage, 'general factual allegations of injury resulting

16   from the defendant's conduct may suffice[.]'" *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969

17   (9th Cir. 2009) (quoting *Lujan*, 504 U.S. at 561).

18        To establish standing, a plaintiff must show: (1) an "injury in fact," (2) with a "causal

19   connection," i.e., "fairly traceable" to the conduct of the defendant, and (3) that it is "likely" and

20   not merely "speculative" that the injury will "be redressed by a favorable decision." *Lujan*, 504

21   U.S. at 560 (internal citations and quotations omitted). An injury in fact must be "concrete and

22   particularized" and "actual or imminent" as opposed to merely conjectural or hypothetical. *Id.*

23   **B.    Analysis of Standing**

24        Defendants argue that Plaintiff lacks standing to bring suit and thus that the Court lacks

25   subject matter jurisdiction over this action under Article III of the Constitution. Plaintiff alleges

26   that it has standing based on Plaintiff's proprietary interests at stake and because Plaintiff alleges

27   facts sufficient to meet the requirements for standing set forth by the Supreme Court in

28   *Massachusetts v. EPA*, 549 U.S. 497, 519 (2007).

United States District Court
Northern District of California

6

The law regarding standing of a state to sue the federal government is slightly unclear. The parties agree that a state may sue the federal government for injuries to a state's direct proprietary interests, such as ownership of property that the federal government's actions harm. *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 601-02 (1982). However, there is confusion about whether a state may sue the federal government under what has traditionally been known as a *parens patriae* theory or if there is another theory under which a state may sue the federal government and what those standards are. A brief history is required to show why there is confusion in this regard.

### 1.  *Snapp v. Puerto Rico*

The Supreme Court held in *Snapp v. Puerto Rico* that a state (or territory, such as Puerto Rico), could sue under a theory of *parens patriae* where the state asserts an injury to a "quasi-sovereign" interest. *Id.* at 600-01. This requires a state to "articulate an interest apart from the interests of particular private parties, *i.e.*, the State must be more than a nominal party." *Id.* at 607. Generally, there are two categories of quasi-sovereign interests. "First, a state has a quasi-sovereign interest in the health and well-being -- both physical and economic -- of its residents in general." *Id.* Typically these are injuries that the state, "if it could, would likely attempt to address through its sovereign lawmaking powers." *Id.* For example, in *Missouri v. Illinois,* 180 U.S. 248 (1901), Missouri sought to enjoin defendants from discharging sewage which polluted the Mississippi River in Missouri to protect its citizens from that injury. Second, "a State has a quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system." *Id.* For instance, the state may ensure that its residents are not excluded from the benefits or the alleviation of hardships "that flow from participation in the federal system." *Id.* at 608. In *Snapp,* the Supreme Court found that Puerto Rico's allegations that Puerto Ricans were denied access to domestic work opportunities given to other United States workers by Congress fell within Puerto Rico's quasi-sovereign interests and supported a *parens patriae* action. *Id.* at 608. In a footnote in *Snapp*, the Supreme Court remarked that a state cannot sue the federal government under a theory of *parens patriae*. *Id.* at 609 n. 16.

//

7

2.        *Massachusetts v. EPA*

The Supreme Court directly addressed the right of a state to sue the federal government in *Massachusetts v. EPA*. There, the Supreme Court held that the State of Massachusetts could sue the federal government to challenge Environmental Protection Agency's refusal to regulate greenhouse gas emissions from motor vehicles under the Clean Air Act.  *Massachusetts,* 549 U.S. at 521. The majority opinion did not rely on the *parens patriae* doctrine but focused instead on three different reasons that the State of Massachusetts showed standing:  (1) the State of Massachusetts owned land that the federal government's actions adversely affected; (2) the State of Massachusetts had a sovereign interest in the environmental issues at stake in the case; and (3) the State of Massachusetts had a "procedural right" to sue the federal government under the Clean Air Act.  *Id.* at 519-21.

With regard to the second factor, the State of Massachusetts' sovereign interest, the Supreme Court focused on the relinquishment of the right of the State of Massachusetts to address environmental issues and to enter into treaties and agreements with other states and foreign nations regarding those issues when the State of Massachusetts joined the United States of America.  *Id.* at 519.  The Supreme Court reasoned that, since the State of Massachusetts ceded oversight of that area to the federal government, it could seek redress against the federal government because the federal government was not protecting the environmental rights of citizens.  *Id.* at 519-20.  That right, combined with the ability of the State of Massachusetts to challenge the federal government under the Clean Air Act, created standing.  *Id.*

Finally, the Supreme Court said that a state that has a procedural right to challenge the action of the government, as under the Clean Air Act, a state has a lesser burden than the *Lujan* standard.  *Id.* at 517-18.  Instead, a state in that situation is required only to show that there is "some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed" the party.  *Id.* at 518.  Nonetheless, the Supreme Court analyzed standing for the State of Massachusetts under the more exacting standard of *Lujan*.  *Id.* at 521.

The Supreme Court noted also that states are not "normal litigants" and are entitled to "special solicitude" in the analysis because of the sovereign interests at stake.  *Id.* at 518-20. The

United States District Court
Northern District of California

1    Supreme Court did not explain the term "special solicitude" and did not delineate the specific

2    ways in which states are not normal litigants.  *Id.*

3        **3.    *Sierra Forest Legacy v. Sherman***

4        After *Massachusetts v. EPA*, the Ninth Circuit summarized the standards for a state to sue

5    the federal government in *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161,1178 (9th Cir. 2011).

6    In *Sierra Forest*, the plaintiff, also the State of California, brought actions against the United

7    States Forest Service alleging violations of the National Environmental Policy Act ("NEPA") with

8    respect to the Forest Service's 2004 Sierra Nevada Forest Plan Amendment, which allowed

9    mechanical thinning of trees over controlled burns, increasing the maximum size of tress subject

10   to logging, and altering grazing limitations affecting protected wildlife.  *Id.* at 1171.

11       The Ninth Circuit, quoting *Snapp*, stated that the State of California "does not have

12   standing as *parens patriae* to bring an action against the Federal Government."  *Id.*  at 1178

13   (internal citation omitted).  However, the Court found that the State of California had a desire both

14   to protect its "territory" and "proprietary interests" in land affected by the environmental policy at

15   issue, and thus the State of California had standing to sue.  *Id*.

16       Given this history, it is clear that Plaintiff here can sue the federal government under a

17   theory – not identified as *parens patriae* – if Plaintiff can show that it has either a proprietary

18   interest in the matter or a sovereign interest in the matter, combined with a procedural right.

19   **C.    Standing Based On Plaintiff's Proprietary Interest**

20       There is no dispute that Plaintiff has the ability to sue to protect its proprietary interests.

21   Plaintiff argues that it has standing because Defendants' actions harmed two of Plaintiff's

22   proprietary interests:  (1) Defendants' delay and abandonment of the Corinthian Rule harms

23   Plaintiff's universities, and (2) Defendants' delay and abandonment of the Corinthian Rule harms

24   California because California expended funds on a joint investigation of the Corinthian schools

25   and on outreach to former students at the Department's request.

26       **1.    Injury to Public Universities**

27       Plaintiff does not identify a harm that is concrete and particularized to its public

28   universities, and Plaintiff cannot show that the requested relief in the form of re-institution of the

9

1    Corinthian Rule will address the problem.  Plaintiff addresses the harm to California's public

2    universities in two paragraphs.  In paragraph 22 of the Complaint, Plaintiff states:  "Finally, the

3    Department's timely approval of borrower-defense claims permits students with meritorious

4    claims to access additional federal aid, thereby allowing them to continue their studies at

5    California's public colleges and universities."  (Dkt. 1, ¶ 22.)  In paragraph 70, Plaintiff alleges

6    that students who have "already taken out the maximum federal student-aid award or defaulted on

7    their loans cannot access new federal loans while their borrower-defense claims are unresolved"

8    and thus, they cannot make "informed financial decisions about whether to take on additional debt

9    to enroll in new educational programs."  (Dkt. 1, ¶70.)  Plaintiff does not allege in the Complaint

10   that there are former Corinthian students who have applied and been admitted to California's

11   public universities but cannot attend because of the loans.

12         Plaintiff cites to recent cases in which courts ruled that harm to public universities

13   constitutes an injury in fact for the purposes of standing in the context of state challenges to an

14   executive order banning travel from certain countries.  *Washington v. Trump*, 847 F.3d 1151 (9th

15   Cir. 2017); *Aziz v. Trump*, 231 F. Supp. 3d 23 (E.D. Va. 2017); *Hawaii v. Trump*, 859 F.3d 741

16   (9th Cir. 2017), overruled on other grounds in *Trump v. Hawaii,* 585 U.S. __ (2018).  Plaintiff also

17   cites to a case in which the court found standing for the State of California to challenge the federal

18   government's abandonment of relief from immigration prosecution ("Deferred Action for

19   Childhood Arrivals – DACA").  *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec*., 279 F.

20   Supp. 3d 1011, 1034 (N.D. Cal. 2018).

21         However, in those cases, Plaintiffs asserted actual injury to the universities in question

22   because the challenged actions by the federal government prevented specific individuals whom the

23   universities had either admitted or employed from enrolling or conducting research.  For example,

24   in *Washington v. Trump*, the States of Minnesota and Washington sought injunctive relief from an

25   executive order refusing to admit refugees into the United States from seven countries.  847 F.3d

26   at 1159.  The court held that: "(1) the Executive Order prevents nationals of seven countries from

27   entering Washington and Minnesota; (2) as a result, some of these people will not enter state

28   universities, some will not join those universities as faculty, some will be prevented from

United States District Court
Northern District of California

10

performing research, and some will not be permitted to return if they leave." *Id.* at 1161.

In *Hawaii v. Trump*, the State of Hawaii challenged a different executive order barring entry of nationals from six countries. 859 F.3d at 757. The State of Hawaii was able to establish standing based on injury to its proprietary interest in its ability to recruit and enroll graduate and undergraduate students from the countries restricted by executive order. *Id.* at 763-64. Specifically, at least 23 graduate students and 29 visiting faculty from banned countries were impacted by the executive order. *Id.* The State of Hawaii maintained that the executive order impaired the University's "ability to fulfill its educational mission by hampering recruitment of diverse students, preventing scholars from considering employment at the University, dissuading current professors and scholars from continuing their scholarship at the University, hindering the free flow of ideas, and harming its values of inclusiveness and tolerance." *Id*. at 764.

In *Aziz v. Trump*, the court found that the Commonwealth of Virginia, challenging the same order as in *Washington v. Trump*, adequately alleged injury to its universities because already-employed faculty and staff could not travel and would have to forfeit grant money because they could not leave the country. 231 F. Supp. 3d at 33.

Finally, in *Regents v. United States*, several plaintiffs – the States of California, Maine, Maryland and Minnesota, a municipality, a union and the Regents of the University of California – sued the Department of Homeland Security under the Constitution and the APA to enjoin the rescission of the DACA program. 279 F. Supp. 3d at 1026-28. DACA is a program that provided some undocumented aliens with protection from deportation and authorization to work. *Id.* at 1023. The court found that plaintiff adequately alleged harm to its public universities, i.e., that students already enrolled in California's public universities could not travel for research, and that without the ability to work and make money to pay for living expenses and tuition, students may be forced to leave school. *Id.* at 1033-34.[5]

---

[5] Plaintiff also points to language by the Court that also addresses harm to California's public universities. *Regents,* 279 F. Supp. 3d at 1034. Although the Court cited to those hypothetical future students, the decision did not turn solely on that harm. The court discusses harm from the perspective of a less diverse student body and talent pool, as opposed to enrollment of future students.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Here, in contrast to the four cases cited above, there is no concrete and particularized injury required to show standing based on this proprietary interest.  To show standing, a plaintiff must allege an injury that is "actual or imminent" rather than "conjectural or hypothetical."  *Lujan,* 504 U.S. at 560.  There is no allegation in the Complaint, as currently pled, that any individual was unable to attend one of California's public universities because of the Partial Relief Rule.  The most that Plaintiff alleges is that students who might theoretically want to attend one of California's public universities might not be able to make an informed decision.  The allegations in the Complaint simply do not allege a concrete injury to California's public universities.

In addition, even if there were such an allegation, Plaintiff cannot show that the harm is fairly traceable to Defendants' conduct.  Plaintiff argues that, because students are harmed financially, they cannot attend California's public universities.  Plaintiff argues that the link between Defendants' actions and the potential inability of students to attend California's public universities is direct because the former Corinthian students are specifically barred from obtaining federal loans because of the loans they already took out to attend the Corinthian schools, and thus Defendants' actions are preventing them from further education.  Plaintiff's pleadings for this motion to dismiss spell out this link, but the factual allegations of the Complaint do not.  Plaintiff alleged that the Corinthian schools preyed upon the most financially unsophisticated, low-income students.  (Dkt. 1, ¶ 24.)  That allegation undercuts Plaintiff's argument that these former Corinthian students are unable to attend California's public universities because they previously obtained federal loans that they cannot repay.  Plaintiff must plead a more direct link between the harm – the inability to attend California's public universities – and Defendants' actions in refusing to give full relief to former Corinthian students who took out federal loans.

**2.      Plaintiff's Investment in Investigation and Outreach**

Plaintiff alleges that it has a proprietary interest in this matter because it invested time and resources in an investigation of Corinthian schools with the Department and in outreach to former Corinthian students to encourage them to submit borrower defense claims to the Department.  Plaintiff alleges in the Complaint that it participated in a "joint investigation" with the Department to determine whether former Corinthian students were entitled to the borrower defense and that

12

1    Plaintiff engaged in "costly outreach efforts to notify students that they qualify for expedited debt

2    relief." (Dkt. 1, ¶¶ 3, 11, 27, 43, 44.) Plaintiff argues that, when a state invests resources into a

3    program that the federal government later affects, Plaintiff has a proprietary interest in that federal

4    action.

5         Plaintiff fails to show that the harm is fairly traceable to Defendants' conduct. Plaintiff

6    fails to show harm. Although Plaintiff invested time and resources in the investigation and

7    outreach, Plaintiff cannot show that it has suffered harm because Defendants' abandoned the

8    Corinthian Rule and adopted the Partial Relief Rule. The only way that Plaintiff can show harm in

9    this type of situation is to allege that Plaintiff relied upon Defendants' representations that the

10   Department would provide full relief to all former Corinthian students who had taken out federal

11   loans during a certain period of time and that Defendants only took action in investigation and

12   outreach based on those representations. Plaintiff cannot do so.

13        It is unclear how Plaintiff believes that Defendants have hurt its investment in

14   investigation. Plaintiff had an interest in investigating the Corinthian schools no matter what the

15   federal government did afterwards. The joint investigation led Plaintiff to pursue a civil action

16   against Corinthian, and Plaintiff prevailed in that litigation. (Dkt. 1, ¶¶ 25, 31.)

17        With regard to outreach, Plaintiff does not argue that it participated in outreach based on a

18   promise by Defendants to provide full relief from loans. Plaintiff points to various documents

19   showing that the Department was providing full relief to all borrowers to submitted attestation

20   forms. (Dkt. 1, ¶¶ 45, 48, 49.) However, Plaintiff does not allege that it would have refused to

21   conduct outreach if it knew that former Corinthian students might only receive partial relief.

22   Plaintiff does not allege that its participation in outreach was conditioned on full forgiveness of the

23   former Corinthian students' loans. Plaintiff had an interest in providing some relief to its residents

24   who were defrauded by Corinthian, even if it was only partial relief. Plaintiff cannot show that it

25   suffered an injury in fact – that is, classical reliance on a promise that the Defendants did not keep.

26   Plaintiff cannot show that it suffered an injury "that is fairly traceable to the conduct" of the

27   Defendants, because Plaintiff does not allege that it expended its resources in the joint

28   investigation and outreach based on Defendants' conduct or promises. Thus, Plaintiff cannot meet

United States District Court
Northern District of California

13

1    its burden to establish standing.

2         Plaintiff cites to several cases to show that standing exists if the federal government's

3    actions adversely affect an investment by the state.  Those cases are distinguishable.  For example,

4    in *Texas v. United States*, 809 F.3d 134, 155 (5th Cir. 2015), aff'd by an equally divided Court,

5    *United States v. Texas*, 136 S. Ct. 2271 (2016), the State of Texas showed that the federal policy

6    that provided legal presence for undocumented aliens would force the State of Texas to issue

7    drivers' licenses as a financial loss.  809 F.3d at 155-56.  The State of Texas linked its actual

8    monetary loss to the action by the federal government.

9         In *Regents*, the State of California showed that it had clearly relied upon the federal

10   government's creation of a specific scheme, DACA, which allowed undocumented aliens to work.

11   *Regents,* 279 F. Supp. 3d at 1033-34.  Plaintiffs showed that they had invested funds in training

12   employees who had been given authorization to work under DACA and that they would lose that

13   investment because those employees would no longer be eligible to work.  *Regents,* 279 F. Supp.

14   3d at 1033.  Here, in contrast, Plaintiff  does not show that Plaintiff will lose funds as a result of

15   Defendants' actions.

16        **3.    Procedural Right**

17        As discussed above, although States may not sue the federal government under the *parens*

18   *patriae* prong of standing, states can sue the federal government when they have a procedural right

19   under a statute that authorizes suit against the federal government.  *Sierra Forest*, 646 F.3d at

20   1178 (internal citations and quotations omitted).  Plaintiff argues that the Court should provide

21   deference to Plaintiff based on the creation of a procedural right for Plaintiff to sue the federal

22   government under the APA.  The Supreme Court in *Massachusetts v. EPA* noted that Congress

23   specifically created a right for the State of Massachusetts "to challenge the rejection of its

24   rulemaking petition as arbitrary and capricious" under the relevant statute, 42 U.S.C. § 7607(b)(1).

25   549 U.S. at 520.  The Supreme Court further stated:  "When a litigant is vested with a procedural

26   right, that litigant has standing if there is some possibility that the requested relief will prompt the

27   injury-causing party to reconsider the decision that allegedly harmed the litigant."  *Id.* at 518

28   (citation omitted).  The Ninth Circuit also characterized the State of California's right as a

"procedural interest" in the regulatory scheme in *Sierra Forest*.  646 F.3d at 1179.

Plaintiff here argues that it has a procedural interest under the law because Congress created the APA, which provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  The APA further defines a "person" as "an individual, partnership, corporation, association, or public or private organization other than an agency."  5 U.S.C. § 551(2), s*ee also Maryland Dep't of Human Res. v. Dep't of Health and Human Servs.*, 763 F.2d 1441, n.1. (D.C. Cir. 1985) (APA defines "person" to include a state or state agency).

However, even a party with a procedural right must show a concrete, particularized injury. *Lujan*, 405 U.S. at 572-73.  For the reasons stated above, Plaintiff here does not have a concrete injury in its proprietary interests.  Because Plaintiff alleges a procedural right and an injury to its sovereign interests, analysis of that sovereign interest is necessary.

### 4.  Sovereign Interest in Borrower Defense Rule

Plaintiff alleges that it has a sovereign interest in the "wellbeing of California residents" and specifically for "California students who have been defrauded," as remedied by "the enforcement of" and "timely approval of" the statute that created the defense, 20 U.S.C. § 1087e(h), and "the borrower defense regulations implementing it," 34 C.F.R. § 685.206(c).  (Dkt. 1, ¶ 22.)  In addition, Plaintiff asserts an interest in the "enhance[ment] [of] state law-enforcement actions against predatory schools by providing additional remedies for violations of state law" and in deterring "school misconduct."  (Dkt. 1, ¶ 22.)

Plaintiff characterizes its interest in the enforcement of the borrower defense rule as a sovereign interest, but that interest is not sovereign in nature.  Plaintiff has no independent or inherent interest in a federally-created and federally-financed system of loans.  The existence and administration of the federal loan program in no way prevents Plaintiff from creating its own loan program for California residents or for providing relief in some manner to the affected California residents.  *See, e.g.*, *Oregon v. Legal Servs. Corp.,* 552 F.3d at 972 (because Oregon does not receive funding from the Legal Services Corp. (LSC) and is not regulated by the LSC, Oregon is

free to change its policies in the face of LSC funding, Oregon has no injury for standing). Plaintiff cannot have a sovereign interest in a federal program that was created to assist individuals through a federal statutory and regulatory scheme.

Another way to analyze whether an interest is sovereign is to use the Supreme Court's analysis in *Massachusetts v. EPA* regarding the assessment of a state's sovereign interest. There, a factor showing that the State of Massachusetts had a sovereign interest at stake was the relinquishment the right to negotiate treaties or agreements with other states or countries regarding the environment in the State of Massachusetts. *Massachusetts v. EPA,* 549 U.S. at 519-20. Here, there is no similar sovereign interest in federal loans because Plaintiff did not relinquish any rights in a federally-funded program to join the United States.

Furthermore, some of the relief that Plaintiff seeks here is barred because a state does not have standing "to protect her citizens from the operation of federal statutes." *Massachusetts v. EPA,* 549 U.S. at 520, n. 17 (citation omitted). To the extent that Plaintiff attempts to interfere in the collection of federal debt on behalf of its citizens, Plaintiff does not have standing to assert the right to relief on behalf of its citizens.

### 5.    Sovereign Interest in Eliminating Fraud

Plaintiff also claims that it has a sovereign interest in eliminating fraud. However, Plaintiff cannot show that the Defendants' actions have impeded this interest or that Plaintiff's interest is negatively affected in such a way that is fairly traceable to the Defendants' conduct. Plaintiff can take many actions to protect former students of the Corinthian schools: Plaintiff can pass laws regarding for-profit schools in California, can grant its own relief to the former students of Corinthian schools, or take action against Corinthian directly. Plaintiff did in fact take action against Corinthian in alleging fraud and successfully obtained a judgment against Corinthian, as noted above. (Dkt. 1, ¶ 25.) Only when the federal government's action interferes with Plaintiff's sovereign interest can Plaintiff show injury for the purposes of establishing standing. *Virginia ex rel. Cucinelli v. Sebelius*, 656 F.3d 253, 269 (4th Cir. 2011). This case is analogous to *Oregon v. Legal Services Corp.,* where the State of Oregon alleged that it had a sovereign interest in "regulating access to its civil justice system." *Oregon v. Legal Services Corp.*, 522 F.3d at 974.

1    The Ninth Circuit rejected that interest as being "indistinguishable from" the interest of the

2    regulated legal services organization.  *Id.*  Given that the State of Oregon's interest was identical

3    to the interests of its residents, the State of Oregon could not show that the federal government

4    harmed its sovereign interest.  *Id.*

5          Here, Plaintiff argues that Defendants have interfered with its interest in enforcing

6    Plaintiff's unfair competition law, which forms the basis of the borrower defense, because

7    Defendants have failed to enforce that law.  *Diamond v. Charles*, 476 U.S. 54, 65, (1986)

8    (enforcing state law is one of the "quintessential functions of a State.")  But in this situation, state

9    law regarding unfair competition creates the *right* to relief, but the federal statute and regulations

10   creating the borrower defense do not rely upon state law to create the *type or amount* of relief.

11   State law governs the right to relief under the borrower defense rule, as a borrower can assert as a

12   defense to repayment of a federal loan, "any act or omission of the school attended by the student

13   that would give rise to a cause of action against the school under applicable State law."  34 C.F.R.

14   § 685.206(c).  But once the borrower establishes the right to relief, the regulation provides that

15   "the Secretary notifies the borrower that the borrower is relieved of the obligation to repay all or

16   part of the loan and associated costs and fees that the borrower would otherwise be obligated to

17   pay." 34 C.F.R. § 685.206(c)(2).  "The Secretary affords the borrower such further relief as the

18   Secretary determines is appropriate under the circumstances."  *Id*.  Thus, the regulation at issue

19   gives the Secretary discretion to determine the amount of relief, not tethered to state law.  Given

20   this regulatory scheme, Plaintiff does not show injury to its ability to enforce its laws regarding

21   unfair competition, since the amount of relief is not based on state law.

                                        **CONCLUSION**

23        For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss.  Plaintiff

24   may file an amended Complaint within 30 days of this Order.

25        Because the Court finds that Plaintiff has not pleaded facts sufficient to show standing to

26   bring this suit, the Court will not address the specific claims at this time.  The Court specifically

27   grants leave to Plaintiff to amend those claims in light of the issues regarding standing.  The Court

28   also notes that, given that the Court is required to accept as true all facts pleaded in a complaint,

United States District Court
Northern District of California

17

1   Plaintiff may be able to allege facts that the Court did not find in ruling on the motion for

2   preliminary injunction in the companion case.  Thus, unless the Court is able to take judicial

3   notice of a fact that contradicts a fact in an amended complaint, the Court will be required to

4   accept as true the allegations of an amended complaint.  For example, the Court found in ruling on

5   the motion for preliminary injunction that the Plaintiffs did not meet their burden to show that the

6   Corinthian Rule existed (Case No. 17-7210, Dkt. 60 at page 26), but here, the Plaintiff argues that

7   the Secretary adopted the Corinthian Rule.  (Dkt. 1, ¶ 45.)  Because the earlier determination was

8   made on an absence of facts, as opposed to judicial notice of facts, the Court is required to accept

9   as true the facts alleged in an amended complaint as true in adjudicating a motion to dismiss.

10          **IT IS SO ORDERED**.

11   Dated: June 27, 2018



12   _____

13   SALLIE KIM
     United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

18