JOSEPH H. HUNT
Assistant Attorney General

ALEX G. TSE
Acting United States Attorney

MARCIA BERMAN
Assistant Branch Director

KAREN S. BLOOM
Senior Counsel
R. CHARLIE MERRITT
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
919 East Main Street, Suite 1900
Richmond, VA 23219
(202) 616-8098 (phone)
(804) 819-7417 (fax)
E-mail: robert.c.merritt@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA ex rel. Xavier Becerra, Attorney General of California,<br><br><br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION and BETSY DEVOS, in her official capacity as Secretary of Education<br><br><br>Defendants. | No.  3:17-cv-7106-SK<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Date: December 17, 2018<br>Time: 1:30 p.m.<br>Place: Courtroom C, 15th Floor<br>Magistrate Judge Sallie Kim |

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 3

    I.     Statutory And Regulatory Background ........................................................................ 3

    II.    Factual Background ...................................................................................................... 4

    III.   Proceedings Before This Court ..................................................................................... 5

    IV.   Plaintiff's Amended Complaint .................................................................................... 7

STANDARD OF REVIEW ....................................................................................................... 7

ARGUMENT ............................................................................................................................. 8

    I.     Plaintiff Lacks Standing To Sue ................................................................................. 8

        A.    Plaintiff Lacks Standing To Sue The Federal Government To Protect Its Quasi-
             Sovereign Interests In The Health And Well-Being Of Its Residents ................... 8

        B.    Plaintiff Does Not Plausibly Allege That Defendants Have Caused Concrete
             Harm To Any Sovereign Interest ...................................................................... 10

        C.    Plaintiff Does Not Plausibly Allege That Defendants Have Caused Concrete
             Harm To Any Proprietary Interest .................................................................... 13

            1.    Plaintiff Fails to Sufficiently Allege Injury to a Proprietary Interest in
                Certain Students Attending its Public Colleges and Universities .............. 13

            2.    Plaintiff Fails to Sufficiently Allege Injury to a Proprietary Interest in
                Protecting its Investment in Outreach to Corinthian Borrowers ................ 17

    II.    Claims 5 And 6 Do Not State Reviewable Claims Under Section 706(2) Of The
          Administrative Procedure Act ("APA") ...................................................................... 18

        A.    Plaintiff Has Not Identified Any Concrete, Discrete "Agency Action" Subject
             To Judicial Review Under Section 706(2) Of The APA ..................................... 19

         B.    Plaintiff Does Not Allege That The Department Engaged In Any Unlawful
             Collection Activity .............................................................................................. 21

            1.    Claims 5 and 6 Erroneously Assume that Collection Activity Must Cease
                Before the Secretary Determines a Borrower Defense is Successful ......... 21

2.   Treasury's Regulation Does Not Prohibit Collection Activity While a
Borrower Defense Claim is Pending.......................................................... 22

CONCLUSION........................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 8

*Citizens Against Ruining the Env't v. EPA*,
   535 F.3d 670 (7th Cir. 2008) ............................................................................... 9

*Ctr. for Biological Diversity v. U.S. Dep't of Housing and Urban Dev.*,
   241 F.R.D. 495 (D. Ariz. 2006) ................................................................. 20, 21

*Defs. of Wildlife v. Flowers*,
   No. CIV 02195, 2003 WL 22143270 (D. Ariz. Aug. 18, 2003) ...................... 21

*Elk Run Coal Co. v. U.S. Dep't of Labor*,
   804 F. Supp. 2d 10 (D.D.C. 2011) ................................................................... 20

*Evans v. Wells Fargo Bank, N.A.*,
   No. 13-cv-2371, 2013 WL 4049062 (N.D. Cal. Aug. 8, 2013) ......................... 8

*Friends of the Earth, Bluewater Network Div. v. U.S. Dep't of Interior*,
   478 F. Supp. 2d 11 (D.D.C. 2007) ............................................................. 20, 21

*Hawaii v. Trump*,
   859 F.3d 741 (9th Cir. 2017) ....................................................................... 13, 14

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................. 2, 8, 16-17

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S., 882 (1990) ......................................................................................... 20

*Manriquez v. DeVos*,
   No. 3:17-cv-7210 (N.D. Cal.) ................................................................. *passim*

*Max Sound Corp. v. Google, Inc.*,
   147 F. Supp. 3d 948 (N.D. Cal. 2015) ........................................................... 7-8

*Mendia v. Garcia*,
   768 F.3d 1009 (9th Cir. 2014) ......................................................................... 18

*Missouri ex rel. Koster v. Harris*,
   847 F.3d 646 (9th Cir. 2017) .............................................................................. 9

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004) ........................................................................................... 20

*Oregon v. Legal Servs. Corp.*,
    552 F.3d 965 (9th Cir. 2009) ................................................................ 9

*Schmier v. U.S. Court of Appeals for the Ninth Circuit*,
    136 F. Supp. 2d 1048 (N.D. Cal. 2001) .................................................. 8

*Sierra Forest Legacy v. U.S. Forest Serv.*,
    598 F. Supp. 2d 1058 (N.D. Cal. 2009) ................................................ 19

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ........................................................................... 8

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ............................................................................... 17

*Trump v. Hawaii*,
    138 S. Ct. 377 ...................................................................................... 13

*Virginia ex rel. Cuccinelli v. Sebelius*,
    656 F.3d 253 (4th Cir. 2011) ............................................................... 10

*Washington v. Trump*,
    847 F.3d 1151 (9th Cir. 2017) ........................................................ 13, 14

*Wyoming ex rel. Crank v. United States*,
    539 F.3d 1236 (10th Cir. 2008) ........................................................... 12

**<u>Statutes</u>**

20 U.S.C. § 1087e ........................................................................................ 3

31 U.S.C. § 3716 .......................................................................................... 3

31 U.S.C. § 3720A ....................................................................................... 3

31 U.S.C. § 3720D ....................................................................................... 4

**<u>Administrative and Executive Materials</u>**

31 C.F.R. § 285.5 ................................................................................... 3, 22

34 C.F.R. pt. 34 ............................................................................................ 4

34 C.F.R. § 685.206 ......................................................................... 3, 22, 23

Student Assistance General Provisions,
    81 Fed. Reg. 39,330 (June 16, 2016) .................................................. 23

**<u>Other Authorities</u>**

Everest/WyoTech Attestation Forms,
    https://studentaid.ed.gov/sa/sites/default/files/ev-wy-attestation-form.pdf ........................... 4

Heald College Attestation Forms,
    https://studentaid.ed.gov/sa/sites/default/files/heald-attestation-form.pdf ............................ 4

List of Everest/WyoTech Programs and Enrollment Dates Covered by Department of Education
Findings,
    https://studentaid.ed.gov/sa/sites/default/files/ev-wy-findings.pdf ......................................... 4

List of Heald College Programs and Enrollment Dates Covered by Department of Education
Findings,
    https://studentaid.ed.gov/sa/sites/default/files/heald-findings.pdf ........................................... 4

U.S.  Department of Education, Improved Borrower Defense Discharge Process Will Aid
Defrauded Borrowers, Protect Taxpayers Press Release,
    https://www.ed.gov/news/press-releases/improved-borrower-defense-discharge-process-will-
    aid-defrauded-borrowers-protect-taxpayers ...................................................................... 4, 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO DISMISS

Notice is hereby given that on December 17, 2018, at 1:30 p.m., or as soon thereafter as counsel may be heard, before the Honorable Sallie Kim, in Courtroom C of the 15th Floor of the Philip E. Burton Courthouse and Federal Building, 450 Golden Gate Avenue, San Francisco, California 94102, Defendants will move the Court to dismiss Plaintiff's First Amended Complaint.

Defendants move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The basis for this motion is set forth more fully in the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES
### INTRODUCTION

Less than three months ago, this Court dismissed this case, in its entirety, finding that Plaintiff, the State of California, lacked standing to bring this action for federal student loan relief on behalf of individual student borrowers. The Court found that, as a state, Plaintiff did not have standing to sue the federal government as *parens patriae*, *i.e.*, to vindicate an asserted interest in the health and well-being of its residents. While the Court acknowledged that Plaintiff might have standing to sue the federal government if it could show "that it has either a proprietary interest in the matter or a sovereign interest in the matter, combined with a procedural right," the Court found that Plaintiff's original complaint had not adequately pled injury to either interest, and that, based on Plaintiff's theory of the case, it "cannot show" any such injury. *See* Order Granting Defs.' Mot. to Dismiss ("Order Granting MTD") at 9, ECF No. 36.  Plaintiff has amended its complaint, but it is based on the same theory as before: the Amended Complaint challenges the same conduct, seeks the same relief, and once again fails to allege that Plaintiff has suffered direct, concrete injury. Accordingly, the Court should reach the same result as before, and dismiss Plaintiff's Amended Complaint.

Although Plaintiff's amendments add several pages of additional allegations designed to establish standing, they do little more than recycle legal arguments that this Court has already rejected. For example, Plaintiff claims a "parens patriae interest in protecting the health, safety, and welfare of its residents," First Am. Compl. for Declaratory & Injunctive Relief ("Amended Complaint" or "Am. Compl.") ¶ 136, ECF No. 37,  and claims standing to vindicate the interests

of its residents and to protect their well-being, even though this Court has previously found that a state lacks standing to sue the federal government as *parens patriae*. Similarly, Plaintiff claims sovereign interests in enforcing its consumer protection laws and in the Department of Education's ("Department") enforcement of its federal borrower defense regulation, to the extent that regulation incorporates state law. These arguments, too, the Court has rejected, finding that the Department's decisions regarding the amount of loan relief to award individual borrowers do not interfere with California's ability to enforce its own state laws, and that the federal borrower defense regulation does not incorporate state law as it pertains to the question raised by Plaintiff's lawsuit, *i.e.*, the amount of loan relief to which successful borrower defense applicants are entitled. Finally, although Plaintiff provides examples of anonymous students who allegedly have been deterred from attending state colleges and universities by the Department's actions, the "some day" intentions of these borrowers to, at some undetermined point in the future, enroll in public colleges do not support a finding of actual, imminent injury, in the form of a concrete loss of tuition dollars, as necessary to support standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). Indeed, these allegations fall well short of the showing that the Court indicated was necessary to show standing on this basis, *i.e.*, that the Department's actions prevented specific individuals whom state universities had either admitted or employed from enrolling or conducting research at state universities. *See* Order Granting MTD at 10. Thus, as before, the Court should dismiss the Amended Complaint for lack of standing.

Claims 5 and 6 of Plaintiff's Amended Complaint should be dismissed for the additional reason that Plaintiff has not even attempted to supplement its allegations with respect to the Department's purported unlawful debt collection activity, which form the basis for these claims. Because Plaintiff neither identifies any particular unlawful collection activity, nor plausibly explains why collection activity with respect to any of the hypothetical borrowers it references would be unlawful, these claims should be dismissed for failure to state a claim.

Because Plaintiff has failed to cure the fatal pleading deficiencies this Court has previously identified, its Amended Complaint should be dismissed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BACKGROUND**

The Court is by now familiar with the legal and factual background relevant to Plaintiff's case.  Defendants present an abbreviated version of that background here, to prevent repetition, and respectfully refer the Court to their previously filed motion to dismiss for a fuller discussion. *See* Defs.' Mot. to Dismiss Pl.'s Compl. ("First MTD") at 3-9, ECF No. 26.

**I.     Statutory And Regulatory Background**

Congress has authorized the Secretary of Education ("Secretary") to "specify in regulations which acts or omissions of an institution of higher education" that a Federal Direct Loan borrower can assert as a defense to his or her obligation to repay federal student loans.  *See* 20 U.S.C. § 1087e(h).  Pursuant to this authority, the Department has codified regulations that permit a borrower to assert as a defense to repayment "any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law." 34 C.F.R. § 685.206(c)(1).  If the borrower's asserted defense is "successful," the Secretary notifies the borrower that s/he "is relieved of the obligation to repay all or part of the loan and associated costs and fees that the borrower would otherwise be obligated to pay . . . [and] . . . affords the borrower such further relief as the Secretary determines is appropriate under the circumstances." *Id*. § 685.206(c)(2).

The Department is authorized to collect delinquent federal student loan debt through a variety of tools, including, as relevant here, administrative offset and wage garnishment.   In particular, federal law requires the Department to refer delinquent nontax debt to the Department of the Treasury's centralized Treasury Offset Program ("TOP") for collection through offset of federal nontax and tax refund payments.  31 U.S.C. §§ 3716(c)(6), 3720A; 31 C.F.R. §§ 285.5(c), (d).  TOP generally applies to past-due, legally enforceable debts.  *See* 31 U.S.C. § 3716(c)(6)(A); 31 C.F.R. § 285.5(d).  Accordingly, the Department must certify that any debt referred to Treasury for collection through administrative offset is, among things, "[l]egally enforceable," *i.e.*, that "there has been a final agency determination that the debt . . . is due, and there are no legal bars to collection by offset."  31 C.F.R. § 285.5(b).  The Department is further authorized to collect delinquent nontax debts through administrative wage garnishment, so long as it notifies the debtor

1  of its intent to do so and provides the debtor an opportunity for a hearing concerning the "existence

2  or the amount of the debt."  31 U.S.C. § 3720D(b)(5)(A); *see also* 34 C.F.R. pt. 34 (setting forth

3  Department procedures for collecting debt through administrative wage garnishment).

4  **II.  Factual Background**

5  In 2015, the Department determined that Corinthian Colleges, Inc. ("Corinthian")

6  systematically misrepresented the rates at which its graduates were employed (*i.e.*, its "job

7  placement rates") across a number of its campuses nationwide.  The Department then published

8  on its website lists of Corinthian campuses and academic programs covered by these findings, as

9  well as the range of dates to which the findings apply at each program ("findings cohorts").[1]  The

10 Department also created "attestation forms,"[2] which allowed borrowers who attended Corinthian

11 programs covered by the findings cohorts to apply for a borrower defense discharge by providing

12 certain information about the program they attended and their reliance on the program's

13 representations about its job placement rates.

14 Throughout 2015 and 2016, as the number of borrower defense applications began to

15 increase exponentially, the Department began to award full discharges of Direct Loan debt to

16 Corinthian borrowers who were able to establish a successful defense to repayment based on the

17 Department's job placement rate findings.  The Department has engaged in a process of reviewing

18 its procedures for resolving such claims, however, and, on December 20, 2017, announced an

19 "improved discharge process for borrower defense to repayment [] claims."  *See* U.S. Department

20 of Education, Improved Borrower Defense Discharge Process Press Release (December 20, 2017)

21 ("December Press Release").[3]  Under this new methodology, the Department would afford

22 borrower defense relief based on the harm Corinthian borrowers actually incurred as a result of

23 their school's misconduct, measured by comparing the average earnings of graduates of Corinthian

24 [1] *See* https://studentaid.ed.gov/sa/sites/default/files/heald-findings.pdf (listing Heald College
25 programs) (last visited Sept. 13, 2018); https://studentaid.ed.gov/sa/sites/default/files/ev-wy-findings.pdf (listing Everest/WyoTech programs).
26 [2] *See* https://studentaid.ed.gov/sa/sites/default/files/heald-attestation-form.pdf (displaying
27 attestation forms for Heald College); https://studentaid.ed.gov/sa/sites/default/files/ev-wy-attestation-form.pdf (displaying attestation forms for Everest/WyoTech).
28 [3] *See* https://www.ed.gov/news/press-releases/improved-borrower-defense-discharge-process-will-aid-defrauded-borrowers-protect-taxpayers.

programs with the average earnings of completers of comparable programs that the Department determined met its "gainful employment" requirement. *Id*. The Department announced in the December Press Release that it had approved for discharge 12,900 pending claims submitted by former Corinthian students (and that it had denied another 8,600 pending claims) and that, going forward, claims would be "adjudicated systematically under the newly announced discharge process." *Id*.

### III.   Proceedings Before This Court

Plaintiff filed its original complaint in this Court on December 14, 2017, seeking relief on behalf of the entire group of student borrowers covered by what Plaintiff referred to as the "Corinthian Fraud Findings," (*i.e.*, the Department's findings regarding Corinthian's misrepresentation of job placement rates for the "findings cohorts" described above). *See* Compl. for Declaratory & Injunctive Relief ("Compl.") ¶ 42, ECF No. 1; *id*., Demand for Relief(B) at 24-25. The Complaint was largely premised on Plaintiff's contention that the Department, through its findings and various public announcements, created a "rule" prospectively "qualif[ying]" all borrowers covered by those findings for "expedited borrower-defense relief," *id*. ¶ 42, defined by Plaintiff as "complete discharge of their federal student loans and refunds of any amounts paid on them," *id*. ¶ 38. As relief, Plaintiff requested, among other things, that the Department approve and grant full discharges to all claims submitted by borrowers covered by Plaintiff's "rule" (and the Department's findings). *Id*., Demand for Relief. Defendants moved to dismiss the complaint, asserting primarily that Plaintiff lacked standing to bring a suit seeking loan relief on behalf of private parties.

The week after Plaintiff filed its original complaint, on December 20, 2017, a group of Corinthian borrowers filed a complaint similarly alleging that the Department had created a "rule" (referred to by those plaintiffs as the "Corinthian Job Placement Rate Rule") entitling all individuals covered by the Department's job placement rate findings to a full discharge of their loans. *See* Class Action Compl. for Declaratory & Injunctive Relief ¶ 54, *Manriquez v. DeVos*, No. 3:17-cv-7210 (N.D. Cal.), ECF No. 1. These plaintiffs are seeking to certify a class consisting of a similar set of borrowers as the ones that Plaintiff purports to represent in this action: all Direct

Loan borrowers covered by the Department's job placement rate findings whose loans the Department has not fully discharged. *See id.* ¶¶ 196-197. After the Department announced its partial discharge methodology, the *Manriquez* plaintiffs amended their complaint to include claims that this methodology (referred to by those plaintiffs as the "Average Earnings Rule") violated the Privacy Act and the Due Process Clause, and is arbitrary and capricious. *See* First Am. Compl. for Declaratory & Injunctive Relief ¶ 171, *Manriquez*, No. 3:17-cv-7210 (N.D. Cal.), ECF No. 58.

On May 25, 2018, the Court granted the *Manriquez* plaintiffs' motion for preliminary injunction in part, finding that the plaintiffs had demonstrated a likelihood of success with respect to their Privacy Act claim only, and enjoining the Department from using the Average Earnings Rule to adjudicate borrower defense claims. *See Manriquez*, No. 3:17-cv-7210 (N.D. Cal.), ECF No. 60. On June 19, 2018, the Court entered an amended order requiring the Department to "cease all efforts to collect debts" from any individual who had attended a program covered by the Department's job placement rate findings and who either (1) received only partial relief under the Average Earnings Rule, or (2) has a pending application for borrower defense. *See id.*, ECF No. 70. The Department has appealed both orders. *See id.*, ECF No. 81.

After it issued its preliminary injunction in *Manriquez*, the Court entered an order granting Defendants' motion to dismiss in this case on the basis that Plaintiff had "not pleaded facts sufficient to show standing to bring this suit." Order Granting MTD at 17. The Court rejected Plaintiff's primary basis for asserting standing – that it was acting as *parens patriae* to protect the health and well-being of its residents –, instead finding that "States may not sue the federal government under the *parens patriae* prong of standing." *Id.* at 14. The Court then rejected each of Plaintiff's alternate theories of standing, including its arguments that the Department's actions injured its (1) proprietary interest in obtaining tuition dollars for its public colleges and universities; (2) proprietary interest in recouping investments made in conducting borrower defense outreach; (3) purported sovereign interest in the Department's enforcement and interpretation of the Department's borrower defense regulation; and (4) sovereign interest in preventing fraud and enforcing the state's own consumer protection laws. The Court gave Plaintiff 30 days to file an amended complaint.

1   **IV.**  **Plaintiff's Amended Complaint**

2         Plaintiff's Amended Complaint is identical in substance to its original complaint.  It asserts

3 the same causes of action, adding only a claim for unlawfully withheld agency action that is largely

4 a rehash of its claim for unreasonably delayed agency action (for both claims, the agency action at

5 issue is the approval of pending claims and granting of full discharges).  *Compare* Am. Compl.

6 ¶ 194 *with* Am. Compl. ¶ 211.  It seeks substantively identical relief – again, an order compelling

7 the Department to grant full discharges to all borrowers covered by the Department's job

8 placement rate findings and invalidating a broad set of agency determinations that loans subject to

9 borrower defenses are legally enforceable.  *See id.*, Demand for Relief at 45-46.  Most importantly,

10 it is, as before, an action seeking loan relief on behalf of individual student borrowers, challenging,

11 from the very first paragraph, the Department's alleged "failure to expeditiously discharge the

12 entirety of these students' [allegedly] invalid federal loans."  *Id.* ¶ 1.  As evidenced by the existence

13 of the related *Manriquez* litigation, these student borrowers are fully capable of representing their

14 own interests, and the state of California has no independent interest, sufficient to confer Article

15 III standing, in the outcome of their quest to secure individual relief.  Although Plaintiff has added

16 several pages of allegations in support of its standing here, the Court had already largely rejected

17 those arguments.  To the extent Plaintiff offers any new factual allegations, they are insufficient to

18 cure the shortcomings of Plaintiff's original complaint or establish standing.

19         Plaintiff's Amended Complaint should be dismissed for the same reasons the Court

20 dismissed the first complaint.  And while the Amended Complaint does include additional factual

21 allegations identifying the agency action that it alleges to be unlawful in some of its claims, it still

22 fails, as a matter of law, to state a claim for "unlawful debt collection," providing an additional

23 basis to dismiss Claims 5 and 6.

24                        **STANDARD OF REVIEW**

25         Defendants move to dismiss the Amended Complaint in its entirety pursuant to Rule

26 12(b)(1) of the Federal Rules of Civil Procedure, and to dismiss Claims 5 and 6 pursuant to Rule

27 12(b)(6).  "Standing is properly challenged through a Rule 12(b)(1) motion because it is 'a

28 threshold jurisdictional issue.'"  *Max Sound Corp. v. Google, Inc.*, 147 F. Supp. 3d 948, 952 (N.D.

Cal. 2015) (citation omitted).  As the party invoking federal jurisdiction, Plaintiff "bear[s] the burden of showing standing by establishing, *inter alia*, that [it] ha[s] suffered an injury in fact, i.e., a concrete and particularized, actual or imminent invasion of a legally protected interest." *Evans v. Wells Fargo Bank, N.A.*, No. 13-cv-2371, 2013 WL 4049062, at *2 (N.D. Cal. Aug. 8, 2013) (citation omitted); *see also Schmier v. U.S. Court of Appeals for the Ninth Circuit*, 136 F. Supp. 2d 1048, 1051 (N.D. Cal. 2001).  Even if standing exists, Claims 5 and 6 should be dismissed pursuant to Rule 12(b)(6) because they do not contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

### I. <u>Plaintiff Lacks Standing To Sue</u>

The Court is well familiar with the "irreducible constitutional minimum of standing," which consists of three elements: that a plaintiff suffer a concrete injury-in-fact, that the injury be fairly traceable to the challenged action of the defendant, and that it be likely (as opposed to speculative) that the injury will be redressed by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. at 560-61.  "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly allege facts demonstrating' each element" of standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted).

In its Amended Complaint, Plaintiff asserts the same three types of injuries it argued in relation to its original complaint, *i.e.*, harm to its: (1) quasi-sovereign interests, (2) sovereign interests, and (3) proprietary interests.  The Court has already rejected many of Plaintiff's arguments as a matter of law, and the limited factual allegations that Plaintiff has added to its Amended Complaint are insufficient to support its standing.

### A. <u>Plaintiff Lacks Standing To Sue The Federal Government To Protect Its Quasi-Sovereign Interests In The Health And Well-Being Of Its Residents</u>

As was the case with Plaintiff's original complaint, the Amended Complaint seeks to procure loan relief on behalf of individual student borrowers by alleging that the Department has taken some actions and failed to take others related to the discharge of these borrowers' federal loans.  Thus, it describes the harm inflicted by this conduct predominantly from the perspective of

"California borrowers and residents" (subheading preceding Am. Compl. ¶¶ 109-121), namely that such resident borrowers suffer harm to their "economic health and well-being," their "financial and educational opportunities, their ability to continue their education and obtain higher-paying jobs," and "their ability to improve their lives after having fallen victim to a predatory school." *Id.* ¶ 110.  Only after documenting these harms – the ones that Plaintiff's lawsuit actually seeks to remediate – does Plaintiff attempt to describe, as it must, a distinct injury to *California*, separate and apart from the injuries suffered by its residents.  *See Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 651 (9th Cir. 2017) (to establish standing, a state must "articulate an interest apart from the interests of particular private parties" (citation omitted)).  But the harms it describes are the same ones allegedly suffered by its residents, *i.e.*, harm to residents' health and well-being. *Compare* Am. Compl. ¶ 110 (harm to borrowers) *with* Am. Compl. ¶ 123 (same harm to state).

The Court should reject Plaintiff's attempts to claim standing on this basis, or to otherwise "vindicate[e] the rights of its residents."  *See* Am. Compl. ¶¶ 122-124, 126, 130, 136-138.  These asserted "quasi-sovereign" interests are a clear invocation of the *parens patriae* doctrine, *see*, *e.g.*, *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 971 (9th Cir. 2009) (noting that a state can sue as *parens patriae* to protect its "quasi-sovereign interest in the health and well-being of its residents"), and this Court has made clear that "States may not sue the federal government under the *parens patriae* prong of standing."  Order Granting MTD at 14.  Indeed, although Plaintiff generally tries to avoid characterizing its Amended Complaint as a *parens patriae* action, it cannot help but recognize that its interest in "protecting the health, safety, and welfare of its residents" is appropriately characterized as a "*parens patriae* interest."  Am. Compl. ¶ 136.  Thus, to the extent Plaintiff seeks in these paragraphs to assert standing on the basis of harm to the health and well-being of individual borrowers who are already seeking to remedy this alleged harm in *Manriquez*, this Court has foreclosed it from doing so.  *See* Order Granting MTD at 6-9; *see also Citizens Against Ruining the Env't v. EPA*, 535 F.3d 670, 676 (7th Cir. 2008) ("the United States, and not the state, represents the people's interests"); *Koster*, 847 F.3d at 652 ("*parens patriae* standing is inappropriate where an aggrieved party could seek private relief").

### B.    Plaintiff Does Not Plausibly Allege That Defendants Have Caused Concrete Harm To Any Sovereign Interest

Plaintiff generally attempts to blur the line between its asserted quasi-sovereign interests (which this Court has already determined cannot form the basis for a suit against the federal government) and the type of sovereign interest that can, if adequately plead, support state standing. *See* Order Granting MTD at 9.  To the extent it is able to articulate a sovereign interest separate from the health and well-being of its citizens, however, Plaintiff describes theories of standing that this Court has already considered and rejected.  As this Court made clear in its previous ruling, "[o]nly when the federal government's action interferes with [a state's] sovereign interest can [a state] show injury for the purposes of establishing standing."  *Id.* at 16 (citing *Virginia ex rel. Cuccinelli v. Sebelius*, 656 F.3d 253, 269 (4th Cir. 2011)).  Although Plaintiff references several potential sovereign interests, it does not allege that Defendants' actions have interfered with any of those interests.

First, Plaintiff asserts a "strong" interest in preventing and redressing fraud and in seeing that its consumer protection laws are "uniformly and adequately enforced."  *See* Am. Compl. ¶¶ 124-126, 136.  As this Court has already determined, however, Plaintiff cannot show that the conduct that it challenges (which is the same in both complaints) has "impeded this interest."  Order Granting MTD at 16.  Regardless of how much relief the Department determines to award individual borrower defense applicants or what actions it takes in collecting debts from such applicants, Plaintiff's consumer protection laws remain equally valid and enforceable against Corinthian and other for-profit schools.  As this Court recognized, Plaintiff can take – and indeed has taken – "many actions to protect former students of the Corinthian schools: [it] can pass laws regarding for-profit schools in California, can grant its own relief to the former students of Corinthian schools, or take action against Corinthian directly."  *Id.*  Because the Department actions at issue in this litigation do not harm Plaintiff's ability to enforce and administer its own consumer protection laws, or to take whatever action it deems necessary to "deter[] predatory schools from violating California law," Am. Compl. ¶ 127, as the Court has already concluded, Plaintiff's attempt to claim standing on this basis should be rejected.

Similarly, Plaintiff's asserted interest in regulating post-secondary schools within its borders, Am. Compl. ¶¶ 131-135, fails to establish its standing because, once again, the wrongdoing by the Department that it challenges here – not granting the amount of relief to which Plaintiff asserts its residents are entitled under federal law; collecting debts from residents that Plaintiff believes are unenforceable – has no effect on Plaintiff's ability to use its own laws to regulate such schools.  The federal government and the states might partner in protecting student borrowers, but they remain separate sovereigns, each retaining a unique sovereign interest in the enforcement of their own laws.  As the Court has already determined, the Department's administration of its borrower defense regulation does not impede Plaintiff's sovereign interest in regulating post-secondary institutions and "eliminating fraud," and Plaintiff retains the ability to "take many actions to protect former students of the Corinthian schools."  Order Granting MTD at 16.  States are entitled to operate their own enforcement schemes without federal governmental interference; they are not entitled to compel the federal government to make federal law provide "Californians" with "appropriate relief when California law is violated."  Am. Compl. ¶ 134.  As this Court previously held, Plaintiff has no sovereign interest in the Department's enforcement of its borrower defense regulation, and no "independent or inherent interest in a federally-created and federally-financed system of loans."  Order Granting MTD at 15.

Next, Plaintiff turns to its (presumably) sovereign interest in "promoting opportunities for education in California's public colleges and universities."  Am. Compl. ¶ 127; see also *id*. ¶¶ 128-129 (alleging that California devotes "extensive" resources towards providing post-secondary education for its residents).  Plaintiff fails, however, to describe how its interest in promoting educational opportunities is harmed by the Department's discretionary decisions regarding how much federal loan relief to award resident borrowers.  Whether the Department awards former Corinthian students full discharges of their loans, no discharges, or something in the middle, Plaintiff remains free to devote whatever resources it deems appropriate towards funding its public colleges and universities and, ultimately, the "post-secondary education of its residents."  *Id*. ¶ 128. The same is true of Plaintiff's efforts to deter "private, predatory schools from unfairly competing" with these public colleges and universities.  *Id*. ¶ 127.  Even if California has a sovereign interest

in supporting its public colleges and universities, its allegations provide no basis to conclude that the Department has interfered with this interest in a manner sufficient to confer standing.

Finally, Plaintiff alleges that the Department's actions harm its "sovereign interest in state law." *See* Am. Compl. ¶¶ 167-170.  The crux of this argument is that the federal law standard for awarding borrower defense relief incorporates state law and that the Department has misapplied California law to the extent it has not provided "full restitution to victims who relied on Corinthian's falsified job-placement rates." *Id*. ¶ 169.  The Court has already rejected this theory of standing as inconsistent with the plain text of the borrower defense regulation: "state law regarding unfair competition creates the *right* to relief, but the federal statute and regulations creating the borrower defense do not rely upon state law to create the *type or amount* of relief." Order Granting MTD at 17.  Because the "amount of relief is not based on state law," *id*., Plaintiff's sovereign interest in the interpretation and enforcement of its own law is not impaired by the manner in which the Department awards borrower defense *relief*.

It makes no difference that, according to Plaintiff, the Department had previously interpreted the federal borrower defense regulation to depend on state law to determine "the scope of appropriate relief."  Am. Compl. ¶ 167.  Plaintiff's original complaint similarly argued that, notwithstanding the text of the regulation, the Department had, through prior practice, determined that the scope of relief for successful Corinthian borrowers would be based on state law. *See* Compl. ¶ 38.  The Court necessarily rejected this argument, concluding that the "regulation at issue gives the Secretary discretion to determine the amount of relief, not tethered to state law," and thus that Plaintiff was unable to "show injury to its ability to enforce its laws regarding unfair competition" based on the manner in which the Department interprets and administers the federal borrower defense regulation.  Order Granting MTD at 17.  Because the Department's challenged actions do not implicate California's ability to enforce, administer, or interpret its own laws, Plaintiff has alleged no injury to its sovereign interest. *Cf. Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1242 (10th Cir. 2008) (finding that state had standing to challenge an agency's interpretation of federal law that required the state to deny concealed carry permits to individuals

that it determined were entitled to such permits under state law, where agency's construction directly "interfere[d] with Wyoming's ability to enforce its legal code").

### C.   Plaintiff Does Not Plausibly Allege That Defendants Have Caused Concrete Harm To Any Proprietary Interest

As in the original complaint, Plaintiff attempts to assert injuries to two proprietary interests here: (1) that the Department's actions prevent students from attending state colleges and universities; and (2) that Plaintiff's "state fisc" is harmed insofar as the Department's actions have deprived it of the benefit of expenditures previously made on outreach to residents regarding their ability to assert a borrower defense.  Once again, Plaintiff fails to carry its pleading burden.

### 1.   Plaintiff Fails to Sufficiently Allege Injury to a Proprietary Interest in Certain Students Attending its Public Colleges and Universities

With respect to the alleged injury to public universities, this Court, in its prior order, acknowledged that in other recent cases standing had been established by states "assert[ing] actual injury to the universities in question because the challenged actions by the federal government prevented specific individuals whom the universities had either admitted or employed from enrolling or conducting research."  Order Granting MTD at 10.  In finding that Plaintiff lacked standing here, the Court distinguished the prior cases, noting that unlike in those cases, Plaintiff's original complaint contained no allegation "that any individual was unable to attend one of California's public universities because of the Partial Relief Rule," and that "even if there were such an allegation, Plaintiff cannot show that the harm is fairly traceable to Defendants' conduct." *Id*. at 12.  Plaintiff's Amended Complaint does not cure this deficiency.

The Court's prior order specifically relied on the Ninth Circuit's decisions in *Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017) and *Hawaii v. Trump*, 859 F.3d 741 (9th Cir. 2017), overruled on other grounds in *Trump v. Hawaii*, 138 S. Ct. 377 (2018).  In *Washington*, the plaintiff states challenged an Executive Order prohibiting individuals from seven specific countries from entering the United States.  The Ninth Circuit found that the plaintiff states had standing because the challenged Executive Order directly prevented specific visiting scholars from the banned countries from spending the time they had previously arranged to spend at the states' public universities.  *Washington*, 847 F.3d at 1159-60.  This, the court found, constituted a sufficient

injury to the schools' mission of "global engagement" – which relies on such visiting students and scholars – so as to establish the states' standing. *Id.* In particular, the Ninth Circuit invoked the doctrine of "third party standing" based on the close relationship between state universities and their actual students and faculty. *Id.* at 1160 (finding that the states, as operators of state universities, "may also assert the rights of *their students and faculty members*," after documenting specific examples of individuals whose presence at the schools the universities had taken concrete steps to sponsor, but who "have been prevented by the Executive Order from coming to the" state university (emphasis added)). Similarly, in *Hawaii v. Trump*, the plaintiff state was found to have standing to challenge a revised version of the Executive Order at issue in *Washington* because the state showed that eleven specific graduate students from countries affected by the Executive Order who had been admitted to its public university would be impeded by the Executive Order from attending. The Ninth Circuit found this sufficiently injured the state's proprietary interest in having a diverse student body[4] in its public university, so as to establish the state's standing. *Hawaii*, 859 F.3d at 764-65.

      Relying on these cases, this Court's Order dismissing Plaintiff's original complaint made clear that to establish standing on the basis of an alleged injury to its public universities, California would have to plead that specific individuals were "unable to attend one of California's public universities because of the Partial Relief Rule" and that allegations related to students who might "theoretically want to attend one of California's public universities" are insufficient. *See* Order Granting MTD at 12. The Court explained that in the prior cases standing had only been established because Plaintiffs asserted that the "challenged actions by the federal government prevented" from enrolling "specific individuals *whom the universities had … admitted*." *Id.* at 10 (emphasis added).

---

[4] It is unclear that the proprietary interest asserted in the Amended Complaint is the type of interest the Ninth Circuit has found to be cognizable to establish a state's standing. Plaintiff seems to assume that any loss of tuition funds from a student being unable to attend a state's public university would harm the state's proprietary interest (presumably, in additional funds being generated by the school). The cited Ninth Circuit cases, however, focused more on the state schools' interests in global engagement and having diverse student bodies. The examples Plaintiff lists in the Amended Complaint, even if they did describe individuals who had been admitted and then become unable to attend a state's school because of Government action, would not necessarily demonstrate a harm to the type of proprietary interest recognized by the Ninth Circuit.

Plaintiff's Amended Complaint contains no such allegation.  Although it adds allegations related to five individual former students, none of these allegations meet the bar set by this Court. With respect to two of the borrowers, the Amended Complaint does not allege these borrowers were ever admitted to a California university.  *See* Am. Compl. ¶ 154 (merely alleging that borrower I.M. is "interested in continuing his education,"); *id.* ¶ 158 (alleging only that borrower R.M. "wants to continue her education," and "has attempted to," but not that she ever applied and was admitted to a public university or college).  These fall squarely within the type of allegations that this Court found insufficient because they only show students who might "theoretically want to attend one of California's public universities."  *See* Order Granting MTD at 12.

The Amended Complaint's allegations about the three other sample borrowers fare no better.  While Plaintiff explains that each of these borrowers was enrolled at one point in a California public university, it also makes clear that each of these borrowers withdrew from that university years before the Department began engaging in the activity Plaintiff challenges (*i.e.*, years before the Department began adjudicating borrower defense claims pursuant to what Plaintiff calls the "Partial-Relief Rule").  *See* Am. Compl. ¶ 150 (borrower N.C. stopped taking classes at Citrus Community College in 2012), *id.* ¶ 152 (borrower A.H. "attended CSU East Bay on and off through 2013"), *id.* ¶ 156 (borrower R.D. had, before he even attended his Corinthian program in 2011-2013, "gone to San Jose City College and Peralta Community College District schools"). Thus, these do not constitute allegations "that any individual was unable to attend one of California's public universities because of the Partial Relief Rule."  Order Granting MTD at 12.

And regarding any of these borrowers' future intent to attend state schools, the Amended Complaint reveals nothing more than a theoretical desire to do so.  *See id.* ¶ 151 (alleging only that N.C. "recently sought to re-enroll" at a state community college, but not that she applied and was admitted); *id.* ¶ 153 (borrower A.H. "continues to want to re-enroll"); *id.* ¶ 154 (borrower I.M. is "interested in continuing his education including at a California community college"); *id.* ¶ 157 (borrower R.D. "thinks about going back to school" but feels his opportunity to do so "slipping away"); *id.* ¶ 158 (vaguely alleging that borrower R.M. "wants to continue her education," and that she has "attempted to attend community college," without describing any specific steps).

These allegations fall well short of alleging the existence of individuals whom Plaintiff's own "universities had either admitted or employed," that the federal government has prevented "from enrolling or conducting research."  Order Granting MTD at 10.

Thus, unlike in the cases the Court cited in its Order dismissing the original complaint, Plaintiff here fails to allege that any particular student, who was otherwise admitted to a California public university, is being prevented from attending that school *by the challenged action* of the Department.  This is highlighted by the information in the Amended Complaint showing that reasons unrelated to the Department's challenged activity are actually what is preventing these borrowers from attending California public universities.  *See* Am. Compl. ¶ 154 (borrower I.M. "is interested in continuing his education including at a California community college, but his experience at [a Corinthian program] left a sour taste in his mouth"); *id.* ¶¶ 156-57 (borrower R.D. "thought about going back to school at a California community college [but] did not enroll, however, in part, because he could not afford the cost of school in addition to the WyoTech loans that he had to pay back" and "because so much time has passed, he feels like the opportunity to go back to school is slipping away.  He now has three kids to care for, including a baby and a teenage daughter . . . .").

Moreover, this Court found that the original complaint's allegation that the Corinthian schools preyed upon the most financially unsophisticated, low-income students "undercuts Plaintiff's argument that these former Corinthian students are unable to attend California's public universities because they previously obtained federal loans that they cannot repay."  Order Granting MTD at 12.  The Amended Complaint reiterates this allegation, *see* Am. Compl. ¶¶ 22, 31 ("Like most predatory, for-profit schools, Corinthian kept enrollment—and profits—up by systemically targeting low-income, financially unsophisticated, and vulnerable groups . . ."), and offers no reason why the Court's ruling with respect to the inclusion of this language in the original complaint should not apply here.

Thus, Plaintiff's new "factual allegations" showing harm to its colleges and universities in the form of lost tuition dollars should be rejected as mere "'some day' intentions," *see Lujan v.*

1   *Defs. of Wildlife*, 504 U.S. at 564, not the type of "concrete and particularized injury required to

2   show standing" under the Court's Order.  Order Granting MTD at 12.

3          2.      Plaintiff Fails to Sufficiently Allege Injury to a Proprietary Interest in
                   Protecting its Investment in Outreach to Corinthian Borrowers

4          Plaintiff also reasserts its argument that the Department's actions – and in particular the

5   fact that it is not currently awarding full loan discharges to certain California borrowers – have

6   deprived Plaintiff of the benefit of its investment in "outreach to borrowers eligible for expedited

7   relief under the Corinthian Full-Relief Rule."  Am. Compl. ¶ 162.  But the Court considered and

8   rejected this theory of standing when it concluded that "Plaintiff had an interest in providing some

9   relief to its residents who were defrauded by Corinthian, even if it was only partial relief," and that

10  Plaintiff failed to allege that its outreach efforts were conditioned only on the Department

11  providing "full forgiveness" to all recipients of the outreach.  Order Granting MTD at 13.  As

12  Defendants have previously argued, even a partial discharge to these student borrowers would be

13  a return on the state's investment, undercutting its argument that it was deprived of all value of the

14  money it spent on its outreach efforts.

15         Significantly, Plaintiff does not allege, as the Court's Order found it must, that it would not

16  have spent time and resources on outreach efforts if it had known that the Department would

17  award, at any time, partial rather than full discharges to Corinthian borrowers that Plaintiff

18  communicated with.  Rather, Plaintiff now alleges that it "would not have spent time, resources,

19  and funds on outreach had it known that ED would cease providing *any* relief to defrauded

20  Corinthian borrowers."  Am. Compl. ¶ 166 (emphasis added).  But this is insufficient to establish

21  standing.  As an initial matter, the reason the Department has halted its adjudication of Corinthian

22  borrower defense claims is based not on the "Partial Relief Rule" or any other voluntary action,

23  but on this Court's preliminary injunction in *Manriquez*, an order with which Defendants

24  respectfully disagree and are currently contesting on appeal.  That the Court's preliminary

25  injunction has placed a temporary pause on the Department's adjudication of borrower defense

26  claims does not demonstrate "a fairly traceable connection between the plaintiff's injury and the

27  complained-of conduct of the defendant."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

28  103 (1998).

1    In any event, Plaintiff's allegation fails to establish standing on its own merits.  Plaintiff

2    still cannot show that it "suffered an injury in fact – that is, classical reliance on a promise that the

3    Defendants did not keep."  Order Granting MTD at 13.  Plaintiff does not allege, nor could it, that

4    the Department promised, in exchange for Plaintiff's investment in outreach, that it would award

5    full borrower defense relief to each borrower that applied for borrower defense relief based on that

6    outreach.  Plaintiff engaged in its outreach efforts knowing that it was not in control of what relief

7    the Department would ultimately award those students under its borrower defense regulation (or

8    indeed of whether those students would even assert their right to relief).  Having made the decision

9    to spend state funds in this way (and in furtherance of the same interest – securing debt relief for

10   resident borrowers – that it continues to pursue with this lawsuit), Plaintiff cannot now claim that

11   its expenditure was an "injury" somehow caused by the Department – a "self-inflicted" injury

12   cannot support Article III standing.  *See* Defs.' Reply Brief at 6, ECF No. 31 (citing *Mendia v.*

13   *Garcia*, 768 F.3d 1009, 1013 n.1 (9th Cir. 2014)).

14   **II.    Claims 5 And 6 Do Not State Reviewable Claims Under Section 706(2) Of The
         Administrative Procedure Act ("APA")**

15

16           Although Plaintiff used its Amended Complaint to attempt to identify some specific agency

17   action applying Plaintiff's so-called "Partial-Relief Rule" to actual residents, it has made no such

18   effort with respect to the collection activity that it asserts is unlawful in Claims 5 and 6.  *See* Am.

19   Compl. ¶¶ 117-118 (describing examples of "specific, identifiable students harmed by ED's delay

20   and withholding of relief, as well as students harmed by receiving only partial relief," but providing

21   no such examples of borrowers subjected to allegedly unlawful collection activity).  Claim 5 is

22   premised on Plaintiff's assertion that the loans of any borrower with a pending defense to

23   repayment claim are legally unenforceable for purposes of administrative and tax refund offset,

24   and that the Department has violated the APA by submitting the loans of "many [such] borrowers,"

25   *id*. ¶ 221, to Treasury for collection through these types of offset.  Claim 6 is specific to borrowers

26   in the findings cohorts, and again challenges the Department's submission of "many" of these

27   borrowers' loans to Treasury for offset.  *Id*. ¶ 227.  Whether or not such borrowers have actually

28   asserted defenses to repayment, Plaintiff alleges that their loans are not legally enforceable because

Plaintiff believes that the Department "is aware that borrowers covered by the Corinthian Fraud Findings have valid defenses to repayment." *Id.* ¶ 229.

Plaintiff's allegations that the Department has engaged in collection activity made unlawful by Treasury's offset regulations, Am. Compl. ¶¶ 223, 227, are sorely lacking. Fundamentally, the Amended Complaint does not identify any particular administrative offset, tax refund offset, or administrative wage garnishment determination; nor does it identify any particular borrowers who suffered allegedly illegal collection and under what circumstances. Neither Claim 5 nor Claim 6 quantifies the amount of alleged unlawful collection activity, other than to cursorily assert that "many borrowers," though unidentified, were affected. This is not surprising given that it has long been the Department's practice to place loans in "stopped collection" status, *i.e.*, to toll collection activity, while borrower defense applications are being processed. *See* First MTD at 8. But as described below, this practice is mandated by neither statute nor regulation.[5] Plaintiff's broad challenges to the Department's collection actions fail, then, because: (1) Plaintiff has not identified any concrete, discrete, "agency action" to form the basis of a claim under Section 706(2) of the APA; and (2) Plaintiff has not established that any debt collection activity against students who had asserted a borrower defense to repayment or who are members of a findings cohort is unlawful. The Court should dismiss Claims 5 and 6.

### A. Plaintiff Has Not Identified Any Concrete, Discrete "Agency Action" Subject To Judicial Review Under Section 706(2) Of The APA

Claims 5 and 6 fail for the fundamental reason that they do not allege any specific instance of allegedly unlawful debt collection. Under the APA, "[o]nly certain agency actions are subject to judicial review," *Sierra Forest Legacy v. U.S. Forest Serv.*, 598 F. Supp. 2d 1058, 1067 (N.D. Cal. 2009), and a plaintiff must "identify some 'agency action' that affects him in the specified

---

[5] The Court's preliminary injunction order in *Manriquez* mandates that the Department take these steps with respect to a similar class of borrowers as are at issue in Claim 6 (*i.e.*, those in covered job placement rate findings cohorts). Thus, as a practical matter, Plaintiff's claims are moot while the preliminary injunction remains in effect because the Department is forbidden by Court Order from taking the action Plaintiff seeks to enjoin. In any event, Plaintiff does not allege that the Department has undertaken collection activity in violation of the Court's preliminary injunction in *Manriquez*. Rather, the premise of Claim 6 is that, independent of the Court's Order, such collection activity violates the APA. As described above, that claim fails as a matter of law.

fashion." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. at 871, 882 (1990).  Notably absent from the

Amended Complaint are any allegations that would tie any particular instance of collection activity

to any individual borrower in a manner that would allow the Department to identify a specific

challenged action and prepare an administrative record that would enable the court to review

whether or not that discrete agency action complied with the requirements of the APA.  *See Ctr.*

*for Biological Diversity v. U.S. Dep't of Housing and Urban Dev.*, 241 F.R.D. 495, 502 (D. Ariz.

2006) (claim that does not identify any particular loan or grant of financial assistance that allegedly

violated statute does not adequately challenge a final agency action); s*ee also Elk Run Coal Co. v.*

*U.S. Dep't of Labor*, 804 F. Supp. 2d 10, 31 (D.D.C. 2011) (allegations that agency made unlawful

denials, devoid of "identifying facts such as when or by what agency action such denials issued"

are insufficient to "identify any discrete, final agency actions that this Court can review").  Because

Plaintiff has not identified any discrete, reviewable final agency action, as required by the APA,

the Court should dismiss Claims 5 and 6.  *See Friends of the Earth, Bluewater Network Div. v.*

*U.S. Dep't of Interior*, 478 F. Supp. 2d 11, 25 (D.D.C. 2007) ("A sure sign that a complaint fails

the 'final agency action' requirement is when 'it is not at all clear what agency action plaintiff

purports to challenge.'" (citation omitted)).

Moreover, because agency action must be "circumscribed" and "discrete," *Norton v. S.*

*Utah Wilderness All.*, 542 U.S. 55, 62 (2004), a plaintiff cannot "seek *wholesale* improvement of

[a federal program] [in court] . . . rather than in the . . . [agency] or . . . Congress, where

programmatic improvements are normally made," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. at 891.

Claim 6 should be dismissed as an impermissible programmatic challenge to the manner in which

the Department awards relief on borrower defense claims.  The theory on which it is based – that

even without submitting a borrower defense application seeking such relief, a borrower should

obtain full discharge under the Department's borrower defense regulation any time the Department

"is aware" (at least in the estimation of a particular plaintiff) that such a borrower has a valid

defense to repayment, such that any loan debt s/he owes becomes legally unenforceable, *see* Am.

Compl. ¶ 229 – would turn the Secretary's borrower defense regulation and process for

adjudicating claims on its head.  As described further below, that process generally premises relief

based on a borrower defense to repayment on the Department's determination that a particular borrower who has submitted an application is entitled to such relief. In the absence of any such discrete, identifiable agency action to review, the Court risks "embarking on the kind of wholesale, programmatic review of general agency conduct for which courts are ill-suited, and for which they lack authority." *Friends of the Earth*, 478 F. Supp. 2d at 25; *Defs. of Wildlife v. Flowers*, No. CIV 02195, 2003 WL 22143270, at \*1 (D. Ariz. Aug. 18, 2003); *Ctr. for Biological Diversity*, 241 F.R.D. at 495.

**B.      Plaintiff Does Not Allege That The Department Engaged In Any Unlawful Collection Activity**

Even if Plaintiff had identified specific borrowers who faced collection activity after submitting borrower defense claims, and was not trying impermissibly to impose programmatic reforms, Claims 5 and 6 would still fail because they do not allege unlawful collection activity.

1.      Claims 5 and 6 Erroneously Assume that Collection Activity Must Cease Before the Secretary Determines a Borrower Defense is Successful

Claim 5 assumes that submission of a borrower defense application automatically renders the subject loans "not 'legally enforceable.'" Am. Compl. ¶ 223. Claim 6 further assumes (erroneously) that even where a borrower has not submitted a claim, Defendants may not certify a debt of that student as "legally enforceable" when Defendants are "aware" that the debts are subject to a valid defense to repayment. *Id*. ¶¶ 227, 229. These assumptions ignore the regulatory scheme for borrower defense claims, which authorizes the Department to grant discretionary relief to borrowers *who apply for it* where the *Department determines* that the borrower has a defense to repayment.

Contrary to Plaintiff's assertions, it is not the existence of evidence about a school's wrongdoing or even the Department's knowledge of that evidence that justifies relief on the basis of a borrower defense. Instead, the determination of whether a particular borrower is entitled to a discharge on the basis of a defense to repayment is delegated to the Secretary, and is necessarily based on the Secretary's assessment of whether the given borrower has demonstrated that s/he personally was harmed by conduct that would give rise to a cause of action under state law. Until the Secretary makes these determinations and discharges a particular loan debt, the mere existence

of a school's wrongdoing creates no particular "legal bar[] to collection by offset" on the basis of borrower defense. *See* 31 C.F.R. § 285.5(b) ("Legally enforceable … means there has been a final agency determination that the debt … is due, and there are no legal bars to collection by offset"). If the borrower does not "assert as a defense against repayment" a school's act or omission, then the Secretary cannot relieve the borrower of his obligation "to repay all or part of the loan," 34 C.F.R. § 685.206(c). Under this regulatory scheme, even where the borrower asserts a borrower defense, if the Secretary has not yet determined whether that defense is "successful," the borrower (and much less a state purporting to act on his behalf) cannot claim that any effort to collect his debt is unlawful. *See id.*

2.   Treasury's Regulation Does Not Prohibit Collection Activity While a Borrower Defense Claim is Pending

Claim 5 also erroneously alleges that a Treasury regulation prohibits collection of Direct Loans that are the subjects of pending borrower defense applications. *See* Am. Compl. ¶ 223. That the relevant regulation does not preclude collection of debts that are the subject of pending borrower defense applications is evident from the language of the regulation itself and its history.

Treasury's regulation defines "[d]ebts that are not legally enforceable" as those "covered by a statute that prohibits collection of such debt by offset." 31 C.F.R. § 285.5(b). Plaintiff has not identified any statute prohibiting its alleged collection. Moreover, in explaining that "debts covered by a statute that prohibits collection of such debt by offset" are "not legally enforceable," the regulation provides, as an example, that "if a delinquent debt is the subject of a pending administrative review process *required by statute or regulation*, and if collection action during the review process *is prohibited*, the debt is not considered legally enforceable." *Id.* (emphasis added). Plaintiff, in selectively relying on this "example," ignores these requirements, and does not allege either that the Secretary's evaluation of an affirmative borrower defense claim is an "administrative review process required by statute or regulation" regarding the validity of the underlying debt, or that collection activity during the pendency of this evaluation is prohibited (by a source other than the Treasury regulation quoted above).

The operative borrower defense regulation contemplates "borrower defenses" to repayment being made "[i]n any proceeding to collect on a Direct Loan," including "[t]ax refund

offset proceedings" and "wage garnishment proceedings," 34 C.F.R. § 685.206(c)(1)-(2).  This does not require the Department to consider borrower defenses brought outside the context of such "proceedings" and does not establish that review of such free-standing claims is a mandatory administrative review process to contest the validity of the underlying debt.  Plaintiff points to no other statutory or regulatory authority which does.  Moreover, the regulation provides for relief from payment obligations only if the Secretary determines that "the borrower's defense against repayment is successful."  *Id*.  This is inconsistent with Plaintiff's assertion that collection activity is precluded from the time a borrower defense is asserted, rather than from the time the Secretary determines the defense is "successful."  The regulation certainly does not prohibit collection activity during the pendency of a borrower defense claim.  Indeed, the Department has contemplated regulatory action to provide forbearance during such time period, *see* Student Assistance General Provisions, 81 Fed. Reg. 39,330, 39,355-356 (June 16, 2016), which would have been unnecessary if such activity were already precluded.  Because the Amended Complaint does not identify any borrower who requested forbearance or collection stoppage but who was nevertheless subjected to administrative offset or wage garnishment (including any borrower who was placed in such status as the result of the Court's preliminary injunction in *Manriquez*), and does not adequately allege any other unlawful conduct, Claim 5 should be dismissed.[6]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion and dismiss with prejudice Plaintiff's Amended Complaint.


Dated: September 13, 2018                    Respectfully submitted,


                                             JOSEPH H. HUNT
                                             Assistant Attorney General

---

[6] For the same reason, Plaintiff's allegation, Am. Compl. ¶ 224, that the Department's conduct is inconsistent with "agency statements and representations that it will stop collections on the loans of borrower-defense claimants that opt for forbearance" fails to state a claim.  Plaintiff has not identified any instance of collection activity violating such statements and so has not alleged any "inconsistent" conduct.

Defendants' Notice of Motion and Motion to Dismiss
3:17-cv-7106-SK

MARCIA BERMAN
Assistant Branch Director

*/s/ R. Charlie Merritt*
KAREN S. BLOOM
Senior Counsel (DC Bar No. 499425)
R. CHARLIE MERRITT
Trial Attorney (VA Bar No. 89400)
U.S. Department of Justice
Civil Division, Federal Programs Branch
919 East Main Street, Suite 1900
Richmond, VA 23219
(202) 616-8098 (phone)
(804) 819-7417 (fax)
E-mail: robert.c.merritt@usdoj.gov

*Attorneys for Defendants*