1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    PEOPLE OF THE STATE OF
     CALIFORNIA,                                  Case No.  17-cv-07106-SK

8                    Plaintiff,

9         v.                                      **ORDER DENYING IN PART AND
                                                  GRANTING IN PART DEFENDANTS'
10   UNITED STATES DEPARTMENT OF                   MOTION TO DISMISS**
     EDUCATION, et al.,
11                                                Regarding Docket Nos. 42, 43
                     Defendants.
12

13

14        This matter comes before the Court upon consideration of the motion by Defendants

15   United States Department of Education and Secretary Betsy DeVos to dismiss the First Amended

16   Complaint of Plaintiff the People of the State of California (the "State") for lack of subject matter

17   jurisdiction.  (Dkt. 42.)  Having carefully considered the parties' papers, relevant legal authority,

18   and the record in the case, and having had the benefit of oral argument, the Court hereby DENIES

19   Defendants' motion to dismiss Claims 1 through 4 and GRANTS Defendants' motion to dismiss

20   Claims 5 and 6 for the reasons set forth below.

21                            **PROCEDURAL HISTORY**

22        The State originally filed its complaint on December 14, 2017.  (Dkt. 1.)  Defendants

23   moved to dismiss based on lack of standing, among other grounds, and on June 27, 2018, the

24   Court granted that motion to dismiss but granted the State leave to amend.  (Dkt. 36.)  In the

25   Order, the Court held that the State failed to show standing based on an injury to its proprietary

26   interest based on harm to the State's universities or based on a harm to the State because the State

27   had expended funds on a joint investigation of the Corinthian schools and outreach to former

28   students at the Department's request.  (*Id*.)  The Court did not address the other arguments in

United States District Court
Northern District of California

1    Defendants' motion to dismiss because the Court granted the motion to dismiss.  (*Id*.)

2          The State filed its First Amended Complaint on July 27, 2018.  (Dkt. 37.)

3                              **BACKGROUND**

4          Corinthian Colleges Inc. ("Corinthian"), a for-profit college headquartered in California,

5    operated more than 100 campuses under the names Everest, Heald, and Wyotech, including more

6    than 30 campuses in California.  (First Amended Complaint at Dkt. 37, ¶¶ 30, 43.)  In October

7    2013, California sued Corinthian to stop fraudulent conduct designed to lure vulnerable students to

8    Corinthian's programs.  (Dkt. 37, ¶¶ 31, 32.) [1]

9          In April 2015, based on a joint investigation with the California Attorney General, the

10   United States Department of Education (the "Department") fined Corinthian $30 million for

11   falsifying job-placement rates.  (Dkt. 37, ¶ 34.)  Shortly thereafter, Corinthian closed its campuses

12   and filed for bankruptcy.  (Dkt. 37, ¶¶ 35, 36.)  In March 2016, California obtained a $1.1 billion

13   default judgment against Corinthian in California state court, and the court found that Corinthian

14   engaged in systematic and widespread misrepresentations to defraud students and taxpayers.  (Dkt.

15   37, ¶¶ 37, 38.)

16         The Department determined that Corinthian's fraud left thousands of students eligible for

17   discharge of their federal student loans under the Department's borrower-defense regulation, 34

18   C.F.R. § 685.206(c)(1) (authorized by 20 U.S.C. § 1087e(h)), and under the terms of the

19   promissory notes of their loans.  (Dkt. 37, ¶¶ 40-42, 229.)  With the California Attorney General,

20   the Department determined that students who relied on misrepresentations found in Corinthian's

21   published job-placement rates had a cause of action under California law that qualified these

22   students for forgiveness of their federal direct student loans and refunds of the amounts paid.

23   (Opposition at Dkt. 43, at page 9.)  To implement this relief, the Department created a

24   "streamlined process" of reviewing claims that would simplify and expedite relief, thus reducing

25   _____

26         [1]  Individual plaintiffs filed a putative class action suit, *Calvillo Manriquez et al v. DeVos
     et al,* Case No. 3:17-cv-07210-SK, alleging similar but not identical claims under the

27   Administrative Procedures Act, the Privacy Act, and the Constitution.  On May 25, 2018, the
     Court granted in part and denied in part plaintiffs' motion for preliminary injunction.  (Dkt. 60.)

28   The present matter and Case No. 17-cv-07210 are deemed "related" by the Court under Local Rule
     3-12.

                                        2

United States District Court
Northern District of California

the burden on borrowers.  (Dkt. 37, ¶¶ 3, 41, 42.)

The State calls the streamlined process the "Corinthian Full-Relief Rule" ("Corinthian Rule") which governs the borrower-defense claims of "whole groups of Corinthian students (for example, an entire academic program at a specific campus during a certain time frame)."  (Dkt. 37, ¶ 43.)  The Corinthian Rule is based on state law theories developed by the California Attorney General, including the following:

- Because Corinthian was headquartered in and managed from California, California law applies for purposes of determining whether there was a cause of action against the school. (Dkt. 37, ¶ 43.)

- Corinthian misrepresented job-placement rates at certain campuses, for certain programs, during certain time periods ("Corinthian Fraud Findings").  (Dkt. 37, ¶ 43.)

- Borrowers subjected to the Corinthian Fraud Findings were eligible for borrower-defense relief, which was expedited by the use of a "simple attestation form" provided by the Department that allowed borrowers "to document the impact of Corinthian's inflated job-placement rates on them in a manner that supported a cause of action under California's Unfair Competition Law."  (Dkt. 37, ¶ 43.)

- California law controls the scope of relief.  (Dkt. 37, ¶ 43.)  Therefore, California maintains that borrowers subject to the Corinthian Rule were entitled to full relief of their federal loans, including a refund of all amounts paid.  (Dkt. 37, ¶¶ 43, 45-46.)

The Department "memorialized" the Corinthian Rule in various legal memoranda identified in a report by the Office of Inspector General as "Federal Student Aid's Borrower Defense to Repayment Loan Discharge Process" (December 8, 2017).[2]  The State maintains that public statements from the Department confirm the existence of the Corinthian Rule.  (Dkt. 37, ¶¶ 48-51, 58-64, 183, 196.)  The Department determined that over 80,000 borrowers, of which 38,000 were Californians, were eligible for expedited loan relief under the Corinthian Rule.  (Dkt. 37, ¶ 52.)  The Department provided outreach to eligible borrowers.  (Dkt. 37, ¶ 71.)  For nearly two years, without exception, the Department consistently applied the Corinthian Rule to grant full relief to 28,000 defrauded Corinthian borrowers.  (Dkt. 37, ¶ 9, 68, 78.)

On January 20, 2017, the Department, abandoning the Corinthian Rule, stopped approving

---

[2] Patrick J. Howard, *Federal Student Aid's Borrower Defense to Repayment Loan Discharge Process,* U.S. Department of Education Office of Inspector General (2017), https://www2.ed.gov/about/offices/list/oig/auditreports/fy2018/i04r0003.pdf.

United States District Court
Northern District of California

1   borrower defense claims.  (Dkt. 37, ¶¶ 85, 178.)  In June 2017, Secretary DeVos (the "Secretary")

2   announced a "regulatory reset."  (Dkt. 37, ¶ 95.)  The Secretary then announced what The State

3   calls the "Partial Relief Rule." [3]  (Dkt. 43 at page 10.)  The Partial Relief Rule attempts to measure

4   "the harm Corinthian borrowers actually incurred" from Corinthian's fraud by "comparing

5   average earnings at Corinthian programs with the average earnings at comparable programs."

6   (Motion to Dismiss at Dkt. 42 at page 10, n.3 ("December 20, 2017 Press Release").) [4]   The

7   Partial Relief Rule affords defrauded Corinthian borrowers with a minimum of 10% loan relief.

8   (December 20, 2017 Press Release.)  As of December 20, 2017, the Department approved the

9   discharge of 12,900 claims and denied 8,600 pending claims.  (December 20, 2017 Press Release.)

10  The Department has applied the Partial Relief Rule retroactively, sweeping in borrowers with

11  pending claims who applied for full, expedited relief under the Full Relief Rule and borrowers

12  who have not yet applied but would formerly have been eligible for full relief.  (Dkt. 37, ¶ 106.)

13       The delayed and withholding of relief under the Full Relief Rule and retroactive

14  application of the Partial Relief Rule have harmed California citizens who were defrauded by

15  Corinthian.  (Dkt. 37, ¶¶ 109-121.)  Corinthian borrowers have suffered psychological distress and

16  profound economic consequences.  (Dkt. 37, ¶¶ 109-111.)  For borrowers who will retain loans

17  with a defaulted status under the Partial Relief Rule, federal law cuts off the availability of other

18  funding to continue pursuing an education.  (Dkt. 37, ¶ 115.)  The Department's application of the

19  Partial Relief Rule harms California's interests in avoiding economic harm to borrowers,

20  promoting the well-being of its citizens, including through the education of its residents,

21  protecting consumers, and regulating education at all levels within the state.  (Dkt. 37, ¶¶ 122-

22  138.)  And California's public colleges and universities, which lose the opportunity to educate

23  former Corinthian students under the Partial Relief Rule, suffer as well.  (Dkt. 37, ¶¶ 139-148.)

24

25       [3] The Court takes judicial notice of the December 20, 2017 Press Release.  In the related
    action, the individual plaintiffs referred to the new rule as the "Average Earnings Rule."

26

27       [4] U.S. Department of Education, *Improved Borrower Defense Discharge Process Will Aid
    Defrauded Borrowers, Protect Taxpayers* (Dec. 20, 2017), https://www.ed.gov/news/press-
    releases/improved-borrower-defense-discharge-process-will-aid-defrauded-borrowers-protect-
    taxpayers.

28

California's fisc and its sovereign interest in applying its law have likewise been affected because students cannot attend California's public colleges and universities. (Dkt. 37, ¶¶ 140 – 147, 162-166, 167-169.) For example, California's public colleges and universities lose the funds from the federal work-study program (20 U.S.C. § 1087-51-1087-58) that the students who cannot attend would otherwise bring to California's coffers. (Dkt. 37, ¶ 161.)

Individual California students have suffered concrete harm as a result of the Partial Relief Rule. Drawing from the many students affected, the State recounts the stories of five particular students who have been injured by the Department's actions. (Dkt. 37, ¶ 159.) N.C. obtained federal loans to attend a Corinthian institution, but was unable to find a job in her field. (Dkt. 37, ¶ 150.) She defaulted on her federal loans in 2016 and was unable to afford tuition without federal aid when she recently sought to enroll in Citrus Community College to earn a degree that would actually enable her to find work in her field. (Dkt. 37, ¶¶ 150-151.) Natalie Carapia submits a declaration in support of the State's position. (Dkt. 43-2.) Carapia attended a Corinthian College school but was not able to discharge her federal loans, even after she submitted a request for relief. (Dkt. 43-2, ¶¶ 11-13.) She attended Citrus Community College and then attempted to re-enroll but was not able to do so because her prior federal student loan debt made her ineligible for more financial aid. (Dkt. 43-2, ¶ 15.) Carapia cannot attend Citrus Community College without financial aid. (Dkt. 43-2, ¶¶ 15.)

Similarly, A.H. received two Corinthian degrees, but was unable to find work in her field of study or transfer course credits. (Dkt. 37, ¶ 152.) She subsequently enrolled at CSU East Bay; however, she is no longer eligible for federal aid because she has maximized her aggregate eligibility. (Dkt. 37, ¶ 152.) Relief from her Corinthian loans would change that, but the Department has not acted on her application, which has been pending for three years. (Dkt. 37, ¶ 152.) Ashley Harmon submits a declaration in support of the State's position. (Dkt. 43-4.) Harmon's declaration mirrors A.H.'s allegations. In addition, Harmon says that two weeks before the fall semester of 2013 was to begin, the financial aid office of CSU East Bay informed her that she was no longer eligible for financial aid because she had "maxed out on federal loans." (Dkt. 43-4, ¶ 29.) Thus, Harmon withdrew from school. (Dkt. 43-4, ¶ 29.)

I.M. attended a Corinthian institution and recently lost his job.  (Dkt. 37, ¶ 154-155.)  He also recently learned that he will receive only a 10 percent discharge of his Corinthian loans under the Partial Relief Rule.  (Dkt. 37, ¶ 155.)  He cannot afford to pay off the loans, as the education he received did not enable him to obtain or retain employment.  (Dkt. 37, ¶ 155.)  He likewise cannot afford to pursue further education.  (Dkt. 37, ¶ 155.)  Isaac Mendoza submits a declaration that mirrors I.M.'s allegations.  (Dkt. 43-5.)

R.D. has a borrower-defense claim before the Department that has been pending for 28 months.  (Dkt. 37, ¶ 157.)  A father of three, his outstanding Corinthian loans, and the prospect that the Department may only forgive 10 percent of their value, have kept him from reenrolling in school to gain the education he needs to better support his family.  (Dkt. 37, ¶ 157.)  Rthwan Dobashi submits a declaration in support of the State's position.  (Dkt. 43-3.)  Dobashi also attended a Corinthian College school, with the assistance of federal loans, applied for but did not receive discharge of debt, and would like to return to college.  (Dkt. 43-3,  ¶¶ 8-21.)  Dobashi cannot do so because he cannot afford to obtain additional loans with unpaid loans.  (Dkt. 43-3,  ¶ 27.)

R.M., whose borrower-defense claim has been pending since 2015, was unable to find a job in her field of study or transfer credits after graduating from Corinthian.  (Dkt. 37, ¶ 158.)  She is ineligible for further federal aid and cannot afford to continue her education without it.  (Dkt. 37, ¶ 158.)  Rebecca Miyahara submits a declaration in support of the State's position that mirrors these allegations.  (Dkt. 43-6.)

In addition to the allegations of the Amended Complaint and the declarations listed above, the State submits the declaration of Paul Feist, Vice Chancellor for Communications for the California Community Colleges, explains that there are 114 community colleges and that they are available by statute to any student who possesses a high school degree or equivalent and that to other residents without a diploma if they are "capable of profiting from the instruction."  (Dkt. 43-1, ¶ 9) (citing Cal. Ed. Code § 76000).)  Feist further explains how the fact that some California residents cannot attend California community colleges because of the Partial Relief Rule hurts the State's educational mission of educating its residents.  (Dkt. 43-1, ¶ 16.)

The State asserts five claims under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq*.  First, the State asserts a claim for unlawful retroactive agency action under the APA, 5 U.S.C. § 706(2)(A).  (Dkt. 37, ¶¶ 171-185.)  Second, the State asserts a claim for unreasonable delay of agency action under the APA, 5 U.S.C. § 706(1).  (Dkt. 37, ¶¶ 186-202.)  Third, the State asserts a claim for unlawfully withheld agency action under the APA, 5 U.S.C. § 706(1).  (Dkt. 37, ¶¶ 203-211.)  Fourth, the State alleges that the Defendants' actions are arbitrary and capricious because they made inconsistent findings and treated equally situated borrowers unequally.  (Dkt. 37, ¶¶ 212-218.)  In the fifth and sixth claims, the State alleges that Defendants' actions in abandoning the Corinthian Rule and instituting the Partial Relief Rule are not in accordance with the law because Defendants are attempting to collect debts that are not "legally enforceable" and because the use of offset and wage garnishments are unlawful.  (Dkt. 37, ¶¶ 219-230.)

The State seeks an order vacating the denials of borrower-defense claims for former Corinthian students and compelling the Department to approve and grant full relief to all pending and future claims submitted by former Corinthian students.  (Dkt. 37, ¶¶ A-B.)  The State also asks the Court to declare as unlawful and set aside the Department's action to collect loans subject to borrower defense claims in which a forbearance or collection stoppage was requested, and to set aside the Department's determinations and certifications that the loans in question are subject to administrative offset, tax refund offset, or administrative wage garnishment.  (Dkt. 37, ¶¶ C-E.)  The State requests reasonable attorneys' fees and any other relief this Court deems just and proper.  (Dkt. 37, ¶¶ F-G.)

## ANALYSIS

### A.  Legal Standards

#### 1.  Motion to Dismiss under Rule 12(b)(6)

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  On a motion to dismiss under Rule 12(b)(6), the Court construes the allegations in the complaint in the light most favorable to the non-moving party and takes as true all material allegations in the complaint.  *Sanders v.*

1  *Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986) (citation omitted).

2      If the allegations are insufficient to state a claim, a court should grant leave to amend,

3  unless amendment would be futile.  *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th

4  Cir. 1990); *Cook, Perkiss & Lieche, Inc. v. N. Cal. Collection Serv., Inc.,* 911 F.2d 242, 247 (9th

5  Cir. 1990) (citations omitted).

6      As a general rule, "a district court may not consider any material beyond the pleadings in

7  ruling on a Rule 12(b)(6) motion."  *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), overruled

8  on other grounds, *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation

9  omitted).  However, documents subject to judicial notice, such as matters of public record, may be

10 considered on a motion to dismiss.  *See Harris v. Cty of Orange*, 682 F.3d 1126, 1132 (9th Cir.

11 2012) (citation omitted).  In doing so, the Court does not convert a motion to dismiss to one for

12 summary judgment. *See Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986),

13 overruled on other grounds by *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).

14 "The court need not . . . accept as true allegations that contradict matters properly subject to

15 judicial notice . . . ." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

16     **2.      Motion to Dismiss under Rule 12(b)(1) and Standing**

17     When a defendant moves to dismiss for lack of subject matter jurisdiction pursuant to Rule

18 12(b)(1), the plaintiff bears the burden of proving that the court has jurisdiction to decide the

19 claim. *Thornhill Publ'n Co. v. Gen. Tel. & Elecs. Corp.,* 594 F.2d 730, 733 (9th Cir. 1979).

20 Federal courts can only adjudicate cases which the Constitution or Congress authorizes them to

21 adjudicate: cases involving diversity of citizenship, or those cases involving a federal question, or

22 where the United States is a party.  *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S.

23 375, 377 (1994).

24     A Rule 12(b)(1) motion can be either "facial" or "factual."  *Safe Air for Everyone v.

25 Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Where an attack on jurisdiction is a "facial" attack

26 on the allegations of the complaint, the factual allegations of the complaint are taken as true and

27 the non-moving party is entitled to have those facts construed in the light most favorable to him or

28 her.  *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996).

United States District Court
Northern District of California

8

In a "factual attack," the moving party questions the veracity of the plaintiff's allegations that "would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. The plaintiff's allegations are questioned by "introducing evidence outside the pleadings." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context." *Id.* (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010)). While the plaintiff typically has the burden of proof to establish subject matter jurisdiction, "if the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." *Id.* at 1121-22 (citing *Safe Air for Everyone*, 373 F.3d at 1039-40). In addition, the Court may "review any evidence, such as affidavits or testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir. 1988). If there is no evidentiary hearing, the Court must view the disputed facts in the light most favorable to the non-moving party. *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996).

Federal courts have jurisdiction only over "cases" and "controversies." U.S. Const. Art. III, § 2. A court is required to dismiss an action if the court lacks jurisdiction. Fed. R. Civ. P. 12(h)(3). The burden to prove standing – that there is a case or controversy – is on the party invoking federal jurisdiction. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). "A plaintiff must demonstrate standing for each claim he seeks to press" and for "'each form of relief sought.'" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185 (2000)). When a plaintiff "defends against a motion to dismiss at the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice[.]'" *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009) (quoting *Lujan*, 504 U.S. at 561).

To establish standing, a plaintiff must show: (1) an "injury in fact," (2) with a "causal connection," *i.e.*, that the injury is "fairly traceable" to the conduct of the defendant, and (3) that it is "likely" and not merely "speculative" that the injury will "be redressed by a favorable decision." *Lujan*, 504 U.S. at 560 (internal citations and quotations omitted). An injury in fact must be

1    "concrete and particularized" and "actual or imminent" as opposed to merely conjectural or

2    hypothetical.  *Id.*   To establish an "injury in fact," a plaintiff who challenges the violation of a

3    procedural right must show that (1) "he has a procedural right that, if exercised, could have

4    protected his concrete interest," (2) "the procedures in question are designed to protect those

5    concrete interests," and (3) "the challenged action's threat to the plaintiff's concrete interest is

6    reasonably probable." *California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018).  "Relaxed standards

7    apply to the traceability and redressability requirements."  *Id.* (citation omitted).  The plaintiff

8    must only show that, "proper procedure *could* have" led to a substantive result.  *Id.*  (citation

9    omitted) (emphasis in original).

10       A plaintiff must establish standing for each claim.  *California v. Azar*, 911 F.3d at 570

11   (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).)  "Standing as to one claim

12   does not 'suffice for all claims arising from the same 'nucleus of facts.'"  *Id.*

**B.       Analysis of Standing for Claims 1 through 4**

14       Defendants argue that Plaintiff lacks standing to bring suit and thus that the Court lacks

15   subject matter jurisdiction over this action under Article III of the Constitution.  Plaintiff alleges

16   that it has standing based on Plaintiff's proprietary interests at stake and because Plaintiff alleges

17   facts sufficient to meet the requirements for standing set forth by the Supreme Court in

18   *Massachusetts v. EPA*, 549 U.S. 497, 519 (2007).  The Court finds that the First Amended

19   Complaint alleges harm to the State based on harm to the financial wellbeing of the State and the

20   mission of the State's system of public education – both community colleges and universities –

21   because the State has met its burden to show that students cannot attend California's public

22   colleges and universities because their federal loan debt from attending Corinthian schools

23   remains undischarged.  Thus, the State meets it burden to show standing.

24       States may sue the federal government under the Administrative Procedures Act ("APA"),

25   5 U.S.C. §§ 701 *et seq.*, when the state's proprietary interests are at stake.  *Massachusetts v. EPA*,

26   549 U.S. 497, 519-21 (2007); *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161,1178 (9th Cir.

27   2011).  States can sue the federal government under the APA specifically when the sovereign

28   interest at stake is harm to the state's public universities.  *See*, *e.g.*, *Washington v. Trump*, 847

United States District Court
Northern District of California

1   F.3d 1151 (9th Cir. 2017); *Aziz v. Trump*, 231 F. Supp. 3d 23 (E.D. Va. 2017); *Hawaii v. Trump*,

2   859 F.3d 741 (9th Cir. 2017), overruled on other grounds in *Trump v. Hawaii,* 585 U.S. __ (2018);

3   *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011, 1034 (N.D. Cal.

4   2018).

5          Here, the State alleges, among other things, a sovereign interest in the well-being of its

6   public universities.  As noted in *Washington v. Trump*, *Aziz v. Trump*, *Hawaii v. Trump*, and

7   *Regents v. U.S. Dep't of Homeland Security*, the State has a sovereign interest in maintaining the

8   public mission of its public universities.  In addition, common sense dictates that, if students

9   cannot attend its public colleges and universities, the State suffers financially, and the State has

10  specifically alleged that it has suffered financial loss from the loss of federal work-study funds that

11  the former Corinthian students could bring to California's public colleges and universities.

12         In the earlier Order granting the motion to dismiss, the Court noted that the State had

13  pointed to a theoretical harm: that individuals could not attend California's universities because

14  they had student loans from attending a Corinthian College school, could not obtain relief from

15  that debt, and thus could not obtain additional loans and/or did not have funds to attend a

16  California university.  The Court noted that the State had failed to provide any specific evidence of

17  this particular harm.  Thus, the Court concluded that the State could not allege an injury that is

18  "actual or imminent" rather than "conjectural or hypothetical" as required by *Lujan,* 504 U.S. at

19  560.  The Court also held that the State did not show that the harm is fairly traceable to

20  Defendants' conduct, because there are so many other potential reasons that an individual cannot

21  attend a California university.

22         Here, the State has met its burden to show specific harm that is traceable to Defendants'

23  conduct with regard to Claims 1 through 4 but not for Claims 5 and 6, as discussed in more detail

24  below.  In particular, the State alleges in the First Amended Complaint facts to show concrete

25  harm fairly traceable to Defendants' conduct.  The State also provides declarations from students

26  who explicitly state that they cannot attend California's public colleges and universities because of

27  their undischarged federal debt.  Although the students' actual plans to attend California's public

28  colleges and universities vary in terms of concrete plans, at least one – Harmon – was forced to

United States District Court
Northern District of California

withdraw two weeks before classes began because she discovered that she was not eligible for financial aid.  In addition, even though other students may not have taken steps to enroll, there is no need to show actual admission to show that they planned to attend but could not because, as the Feist Declaration explains, California's community colleges are required to admit any student with a high school diploma.  (Dkt. 43-1, ¶ 9.)  Normally the Court would require a showing that students had applied for admission and had been accepted but were not able to attend because of their federal loan debt, but here that requirement makes no sense in light of the fact that the admission process is essentially a matter of providing a high school diploma.

The Court finds that that State has met its burden to show that the State's mission to educate its residents and the State's financial well-being are harmed by Defendants' actions as expressed in Claims 1 through 4.

**C.      Analysis of Standing for Claims 5 and 6**

With respect to Claims 5 and 6, the State has not met its burden to show standing.  In Claims 5 and 6, the State argues that Defendants have violated the APA by submitting loans of borrowers to the U.S. Department of Treasury for collection and "administrative offset" or through offset of tax refunds.  (Dkt. 37, ¶¶ 219 - 230.)  Unlike the allegations of Claims 1 through 4, the State argues on "information and belief" that Defendants have taken this action, and the State does not provide any specific link from this alleged action to the harm to the State.  For all the reasons that the Court previously found that the State lacked standing for the other claims, the Court also holds that the State fails to allege standing for Claims 5 and 6.  Because the Court makes this finding, the Court does not address Defendants' other arguments at this time.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss Claims 1 through 4 but GRANTS the motion to dismiss Claims 5 and 6.  Defendants may amend Claims 5 and 6 by April 1, 2019.

**IT IS SO ORDERED**.

Dated: March 4, 2019



_____
SALLIE KIM
United States Magistrate Judge