1  XAVIER BECERRA
   Attorney General of California
2  NICKLAS A. AKERS (SBN 211222)
   Senior Assistant Attorney General
3  BERNARD A. ESKANDARI (SBN 244395)
   Supervising Deputy Attorney General
4  STEVEN D. DE SALVO (SBN 199904)
   AMY E. CHMIELEWSKI (SBN 295352)
5  Deputy Attorneys General
    300 South Spring Street, Suite 1702
6   Los Angeles, CA 90013
    Tel: (213) 269-6348
7   Fax: (213) 897-4951
    Email: bernard.eskandari@doj.ca.gov
8
   *Attorneys for Plaintiff the People of the State of
9  California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF EDUCATION, et al.,**<br><br>Defendants. | Case No. 17-cv-07106-SK<br><br>**CALIFORNIA'S NOTICE OF MOTION AND MOTION TO COMPLETE THE ADMINISTRATIVE RECORD IN ACCORDANCE WITH 5 U.S.C. § 706; MEMORANDUM IN SUPPORT**<br><br>Date:  September 16, 2019<br>Time:  9:30 a.m.<br>Courtroom: C, 15th Floor<br>Judge: Hon. Sallie Kim |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 16, 2019, at 9:30 a.m., a hearing in this matter will occur in Courtroom C, 15th Floor, of the Philip E. Burton Courthouse and Federal Building, 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Sallie Kim.

At the hearing, California will, and hereby does, move for an order directing the U.S. Department of Education and Secretary DeVos (collectively, "ED") to revisit and complete the administrative record in accordance with 5 U.S.C. § 706 and to produce a privilege log in this case. This is not a discovery motion under Rules 26 through 37 of the Federal Rule of Civil Procedure.

This motion is based on this notice of motion; the memorandum of points and authorities; the proposed order; the declaration of Bernard A. Eskandari and exhibits; all pleadings and filings in this and the related case, *Calvillo Manriquez v. DeVos* (N.D. Cal. Case No. 17-07210); and oral argument, if the Court allows.

## ISSUES TO BE DECIDED

1. Whether the administrative record prepared by ED is incomplete where ED has excluded identifiable documents, omitted all privileged documents without identifying the privileges being asserted, and included a certification that is inadequate on its face.

2. Whether ED must provide a privilege log that details the documents withheld from the administrative record based on an assertion of privilege so that the Court may meaningfully evaluate those assertions.

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................................................. 1

Background ................................................................................................................................. 2

Legal Standard ............................................................................................................................ 4

    I.     Judicial Review Under the Administrative Procedure Act Requires the "Whole Record" ..................................................................................................... 4

    II.    The Court Should Order Completion of the Administrative Record Where There Is "Clear Evidence" that the Agency Did Not Prepare the "Whole Record" ............................................................................................................... 5

Argument ..................................................................................................................................... 6

    I.     There Is "Clear Evidence" that ED Has Not Prepared the "Whole Record" .......... 6

        A.    ED Has Excluded Specific, Identifiable Documents from the Administrative Record ................................................................................ 6

        B.    ED Has Excluded All "Privileged" Documents from the Administrative Record ................................................................................ 9

        C.    ED Has Certified an Administrative Record that Is Inadequate on Its Face ........................................................................................................ 10

            1.    ED's Certification Omits the Core Agency Decision Under Review ............................................................................................... 10

            2.    ED's Certification Applies the Wrong Standard ........................... 11

    II.    ED Must Provide a Privilege Log ....................................................................... 12

Conclusion and Relief Requested .............................................................................................. 12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*
   143 F. Supp. 2d 7 (D.D.C. 2001) ...................................................................................5

*Citizens to Pres. Overton Park, Inc. v. Volpe*
   401 U.S. 402 (1971) .................................................................................................4, 11

*Ctr. for Food Safety v. Vilsack*
   No. 15-01590, 2017 WL 1709318 (N.D. Cal. May 3, 2017) ..........................9, 10, 12

*Gill v. U.S. Dep't of Justice*
   No. 14-3120, 2015 WL 9258075 (N.D. Cal. Dec. 18, 2015) ............................ *passim*

*Inst. for Fisheries Res. v. Burwell*
   No. 16-01574, 2017 WL 89003 (N.D. Cal. Jan. 10, 2017) ........................................9, 12

*J.L. v. Cissna*
   No. 18-04914, 2019 WL 2223803 (N.D. Cal. May 22, 2019) .................................8, 10

*Nat'l Council of La Raza v. U.S. Dep't of Justice*
   411 F.3d 350 (2d Cir. 2005) ..........................................................................................7

*Oceana, Inc. v. Pritzker*
   No. 16-06784, 2017 WL 2670733 (N.D. Cal. June 21, 2017) .......................6, 10, 11

*People of State of Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*
   No. 05-03508, 2006 WL 708914 (N.D. Cal. Mar. 16, 2006) ......................5, 9, 11, 12

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*
   No. 17-05211, 2018 WL 1210551 (N.D. Cal. Mar. 8, 2018) .....................1, 5, 10, 12

*S.F. Bay Conservation & Dev. Comm'n v. U.S. Army Corps of Eng'rs*
   No. 16-05420, 2018 WL 3846002 (N.D. Cal. Aug. 13, 2018) ....................................8

*Saget v. Trump*
   375 F. Supp. 3d 280 (E.D.N.Y. 2019) .........................................................................5

*San Miguel v. Kempthorne*
   587 F. Supp. 2d 64 (D.D.C. 2008) ...............................................................................5

*Sierra Club v. Zinke*
   No. 17-07187, 2018 WL 3126401 (N.D. Cal. 2018) ...................................................9

*Thompson v. U.S. Dep't of Labor*
   885 F.2d 551 (9th Cir. 1989) ....................................................................................4, 5

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*U.S. Lines, Inc. v. Fed. Mar. Comm'n*
   584 F.2d 519 (D.C. Cir. 1978) ..................................................................................................4

*United Farm Workers v. U.S. Env't Prot. Agency*
   No. 07-03950, 2008 WL 3929140 (N.D. Cal. Aug. 26, 2008) ...................................................9

*Winnemem Wintu Tribe v. U.S. Forest Serv.*
   No. 09-01072, 2014 WL 3689699 (E.D. Cal. July 24, 2014) ..................................................11


**STATUTES AND REGULATIONS**

5 U.S.C. § 551 ...............................................................................................................................2

5 U.S.C. § 552 ..........................................................................................................................7, 8

5 U.S.C. § 706 ...............................................................................................................................4

34 C.F.R. § 685.206 .......................................................................................................................2


**OTHER AUTHORITIES**

U.S. Dep't of Justice, Env't & Nat. Res. Div., Guidance to Federal Agencies on
   Compiling the Administrative Record (Jan. 1999) ..................................................................12

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The U.S. Department of Education and Secretary DeVos (collectively, "ED") have prepared an incomplete administrative record, which (if left as-is) will effectively block Administrative Procedure Act ("APA") review of the agency decision central to this case: ED's decision in December 2017 to abandon and replace its 2015 borrower-defense program—which had provided 100% debt relief to 28,000 student-loan borrowers defrauded by Corinthian Colleges, Inc. ("Corinthian")—with a new program to provide defrauded borrowers with as little as 10% relief.

Although federal agencies usually benefit from a presumption that the administrative record is complete, ED is entitled to no such presumption here because there is "clear evidence" that the record is lacking. *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. 17-05211, 2018 WL 1210551, at *2 (N.D. Cal. Mar. 8, 2018).

First, a December 2017 report by ED's Office of Inspector General confirms the existence of internal legal memoranda that ED necessarily considered in abandoning and replacing its Corinthian full-relief program. In particular, that report describes six internal memoranda, which provide the "Basis" for ED's various borrower-defense processes as adopted and implemented before January 20, 2017, and two other highly relevant documents—none of which appears in the administrative record.

Second, ED takes the position that privileged documents are not part of the record. This Court, however, has consistently held otherwise. ED has also not provided a privilege log, notwithstanding this Court's uniform mandate requiring detailed logs in all APA cases.

Third, ED's certification of the administrative record is deficient. The certification excludes the central agency decision at issue in this case, focusing instead on individual borrower-relief adjudications. Moreover, even assuming the certification addressed the appropriate agency decisions, ED has certified only that the record includes documents "underlying" those decisions, rather than those that ED "directly or indirectly considered," which is a requirement under the APA to ensure meaningful judicial review of agency decision-making.

Accordingly, the Court should order ED to revisit the administrative record, complete it,

1

and produce a privilege log. Under similar circumstances, when ordering completion of an incomplete record, this Court has ordered the agency to provide a declaration explaining the search used to compile the revised record and its results. The Court should do so here too.

**BACKGROUND**

In this APA action, California challenges ED's failure to grant full, expedited debt relief to tens of thousands of federal student-loan borrowers who were defrauded by Corinthian, a now-defunct operator of predatory schools. (First Amended Complaint at Dkt. 37 ("FAC"), ¶ 2.) Between 2015 and January 2017, under its borrower-defense regulation, 34 C.F.R. § 685.206(c)(1), ED adopted and implemented a full-relief methodology and process (i.e., a "rule" under 5 U.S.C. § 551(4)), and used it to discharge 100% of the federal loans of 28,000 Corinthian borrowers, without exception, totaling more than $558 million in debt relief. (FAC, ¶¶ 79-82.) On January 20, 2017, application of the rule came to a halt as ED stopped approving any new discharges. (FAC, ¶¶ 85-99.) In December 2017, ED announced that it had abandoned its full-relief rule and replaced it with a new one to grant defrauded borrowers partial relief, as little as 10%. (FAC, ¶¶ 100-08.)

California alleges that ED violated the APA in four distinct ways: (1) unlawfully applying a new, retroactive partial-relief rule to Corinthian borrowers who had settled expectations of full relief (FAC, ¶¶ 5, 106, 109, 138, 171-85); (2) unreasonably delaying relief to defrauded Corinthian borrowers, thousands of whom have been waiting more than three years for promised relief (FAC, ¶¶ 6, 108, 109, 138, 186-202); (3) unlawfully withholding agency actions from defrauded Corinthian borrowers (FAC, ¶¶ 6, 108, 138, 203-11); and (4) arbitrarily and capriciously treating defrauded Corinthian borrowers differently depending on when they applied for relief (FAC, ¶¶ 212-18).

The agency decision central to these allegations is ED's decision in December 2017 to abandon and replace its prior full-relief rule applicable to defrauded Corinthian borrowers (i.e., the "Corinthian Full-Relief Rule" or "Corinthian Rule") (FAC, ¶¶ 79-82) and replace it with a rule that provides only partial relief (i.e., the "Partial-Relief Rule" or "Average Earnings Rule") (FAC, ¶¶ 85-108).

The Court has already determined in the related class action, *Calvillo Manriquez v. DeVos* (N.D. Cal. Case No. 17-07210), that this decision is a final agency action subject to judicial review under the APA. (Order Granting in Part and Denying in Part Plaintiff's Motion for Preliminary Injunction at Dkt. 60, Case No. 17-07210 ("PI Order"), at 16-17 ("[T]he Average Earnings Rule is a 'final agency action' subject to review . . . ."); *id*., at 6 n.2 ("The Court understands that the Secretary challenges the very existence of the Corinthian Rule, but for purposes of this Order, the Court will refer to the Corinthian Rule as a shorthand for describing the process that was, for practical purposes, in place before January 20, 2017.").)

ED's certification, however, makes clear that the administrative record does not include the full universe of documents considered by ED in making this decision. Rather, ED has prepared an administrative record that includes only a narrow set of documents "underlying [ED]'s decisions concerning its *granting* of discharges between 2015 and 2018":

> [T]rue copies of the administrative records underlying the Department of Education's decisions concerning its *granting* of discharges between 2015 and 2018 of Federal Direct Loans made to borrowers who the Department determined were eligible for such relief based on their borrower defense to repayment discharge applications, submitted on the basis of the Department's findings that certain schools operated by Corinthian Colleges, Inc. had made misrepresentations as to the job placement rates of specific programs during certain periods of time.

(Certification of the Administrative Record at Dkt. 65-1 ("AR Cert."), at 1 (emphasis added).) Although the agency adjudications to grant Corinthian borrower-defense discharges are relevant, they are not the fundamental, policy-based decision to abandon and replace the Corinthian Full-Relief Rule that is at the core of this case.

Because of this, the administrative record sheds little light on the agency decision-making at issue. Of the administrative record's 3,347 pages, more than 2,200 are heavily redacted/illegible spreadsheets (*e.g.*, DOE_0000243-408, DOE_0002399-2673[1]) and unintelligible computer printouts (DOE_0000409-840), including nearly 200 blank pages (DOE_0000659-852). More than 220 pages consist of pleadings filed in the related *Calvillo Manriquez v. DeVos* class action, documents that necessarily postdate the agency decisions at

---

[1] All "DOE" page cites are to the administrative record at Dkt. 65-2.

issue in this case. (DOE_0001430-1651.) And nearly 250 pages are publicly available websites captures (DOE_0001038-1190) and sample attestation forms (DOE_0001192-1287).

The record contains only around 200 pages of substantive documents, from the relevant time period, that are not readily publicly available. But none of these documents explain the legal basis for ED's decision to abandon and replace the Corinthian Full-Relief Rule, nor do they explain the formulation and contours of that rule to begin with. Notably, these documents do make repeated references to pre-2017 "determinations" by ED's Office of General Counsel supporting the legal underpinnings for Corinthian relief—documents that would no doubt shed light on the Corinthian Full-Relief Rule. (*E.g.*, DOE_0002675, DOE_0002831, DOE_0002878.) The documents reflecting these determinations are precisely the documents that ED considered when deciding to abandon the Corinthian Full-Relief Rule in December 2017 and replace it with the Partial-Relief Rule. However, the administrative record omits them.

## LEGAL STANDARD

### I. JUDICIAL REVIEW UNDER THE ADMINISTRATIVE PROCEDURE ACT REQUIRES THE "WHOLE RECORD"

Section 706 of the APA states that courts "shall review the whole record" of agency decision-making. 5 U.S.C. § 706. Judicial review of agency action must therefore be "based on the full administrative record that was before the [agency] at the time [it] made [its] decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). "The failure to include the information relied upon by the agency in the administrative record, even if later disclosed to the court is . . . inconsistent with the Administrative Procedure Act's requirement that review take place on 'the whole record.'" *U.S. Lines, Inc. v. Fed. Mar. Comm'n*, 584 F.2d 519, 534 n.43 (D.C. Cir. 1978).

"The 'whole' administrative record . . . consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (internal quotation marks omitted). For an administrative record to be complete, it "must contain materials that are *directly or indirectly related* to the agency's decision, not just those materials that the agency

4

California's Motion to Complete the Administrative Record in Accordance with 5 U.S.C. § 706
Case No. 17-cv-07106-SK

relied on." *People of State of Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, No. 05-03508, 2006 WL 708914, at *2 (N.D. Cal. Mar. 16, 2006) (emphasis added); *see also, e.g.*, *San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 71 (D.D.C. 2008) (administrative record must include "all materials that might have influenced the agency's decision, and not merely those on which the agency relied in its final decision") (internal quotation marks omitted); *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) ("[A] complete administrative record should include all materials that might have influenced the agency's decision, and not merely those on which the agency relied in its final decision.") (internal quotations marks omitted).

A "document need not literally pass before the eyes of the final agency decision maker to be considered part of the administrative record." *Lockyer*, 2006 WL 708914, at *2 (quoting *Miami Nation of Indians of Ind. v. Babbitt*, 979 F. Supp. 771, 777 (N.D. Ind. 1996)). Thus, a complete administrative record must include "the work and recommendations of subordinates." *Kempthorne*, 587 F. Supp. 2d at 71 (internal quotation marks omitted); *see also, e.g.*, *Amfac Resorts*, 143 F. Supp. 2d at 12 ("[I]f the agency decision[-]maker based his decision on the work and recommendations of subordinates, those materials should be included as well.").

## II. THE COURT SHOULD ORDER COMPLETION OF THE ADMINISTRATIVE RECORD WHERE THERE IS "CLEAR EVIDENCE" THAT THE AGENCY DID NOT PREPARE THE "WHOLE RECORD"

The administrative record is "not necessarily those documents that the agency has compiled and submitted as 'the' administrative record," *Thompson*, 885 F.2d at 555, and the Court need not take the agency's compilation at face value. Where it appears that the administrative record prepared by the agency is not the "whole record," a court should order its completion. *See generally Regents*, 2018 WL 1210551; *accord, e.g.*, *Saget v. Trump*, 375 F. Supp. 3d 280, 341 (E.D.N.Y. 2019) (citing cases).

Although there is a "presumption that the administrative record submitted by Defendants is complete," a plaintiff can rebut this presumption "with clear evidence to the contrary." *Lockyer*, 2006 WL 708914, at *2. Rebuttal does not require a showing of "bad faith or improper motive." *Id*. Rather, "[t]o meet the clear[-]evidence standard, a plaintiff must (1) identify reasonable, non-

5

speculative grounds for the belief that the documents were considered by the agency and not included in the record, and (2) identify the materials allegedly omitted from the record with sufficient specificity . . . ." *Gill v. U.S. Dep't of Justice*, No. 14-3120, 2015 WL 9258075, at *6 (N.D. Cal. Dec. 18, 2015) (internal quotation marks omitted). "[A] plaintiff can also rebut the presumption of completeness by showing that the agency applied the wrong standard in compiling the record." *Oceana, Inc. v. Pritzker*, No. 16-06784, 2017 WL 2670733, at *2 (N.D. Cal. June 21, 2017). The clear-evidence standard is easily met here.

## ARGUMENT

### I. THERE IS "CLEAR EVIDENCE" THAT ED HAS NOT PREPARED THE "WHOLE RECORD"

The administrative record prepared by ED is lacking in a number of ways, each of which alone (or taken together) establishes "clear evidence" to rebut the presumption of completeness. First, ED has excluded specific, identifiable documents that should be part of the record because agency decision-makers considered them in abandoning and replacing the Corinthian Full-Relief Rule. Second, ED has excluded privileged documents from the record (without providing a privilege log). Third, ED's certification of the record itself establishes that the record is incomplete on its face.

#### A. ED Has Excluded Specific, Identifiable Documents from the Administrative Record

There are at least eight specific, identifiable documents, including legal memoranda, omitted from the record that guided ED's decision-making with regard to the borrower-defense processes at issue in this case. These documents should be part of the administrative record. Indeed, most of these documents were already subject to a privilege challenge in the related class action. (Plaintiffs' Motion for Declaration that Documents Are Not Privileged at Dkt. 80, Case No. 17-07210.) And the Court assumed that these documents would be part of the administrative record in that case. (*Cf.* Transcript of Proceedings Held on 6/11/2018 at Dkt. 101, Case No. 17-07210, at 17 ("One thing that also occurred to me when I was reading some of the documents you submitted is that there's going to be a fight over attorney-client privilege on the administrative record . . . .").)

The existence of these documents is confirmed by ED's Office of Inspector General, in a December 8, 2017 report titled, "Federal Student Aid's Borrower Defense to Repayment Loan Discharge Process" ("OIG Report"). (DOE_0000881-922.) The OIG Report provides a comprehensive review of ED's policies and procedures regarding borrower defense, among other things, and specifically identifies eight documents. Each of these documents is necessary to explain the development of the legal policy at issue in this case.

The OIG Report describes six internal ED legal memoranda that provide the "Basis" for ED's Corinthian borrower-defense program as adopted and implemented before January 2017:[2]

- A May 2015 memorandum prepared by ED's Office of General Counsel regarding "job placement rate misrepresentation claims" for Corinthian's Heald College;

- An October 2016 memorandum prepared by ED's Borrower Defense Unit regarding "transfer of credit misrepresentation claims" for Heald College;

- An October 2016 memorandum prepared by ED's Borrower Defense Unit regarding "transfer of credit misrepresentation claims" for Corinthian's Everest and WyoTech campuses;

- A memorandum drafted by ED's Borrower Defense Unit to Under Secretary Ted Mitchell, dated January 9, 2017, regarding "Recommendation for Corinthian Borrowers Alleging That They Were Guaranteed Employment";

- A January 2017 memorandum prepared by ED's Borrower Defense Unit regarding "guaranteed employment misrepresentation claims" for ITT Technical campuses in California; and

- A January 2017 memorandum prepared by ED's Borrower Defense Unit regarding claims pertaining to the American Career Institute's Massachusetts campuses.[3]

(DOE_0000893-94.)

ED has further excluded from the administrative record a document titled, "Borrower

---

[2] These documents are not privileged because they are the governing frameworks (and thus working law) for various categories of borrower-defense claims. *See, e.g.*, *Nat'l Council of La Raza v. U.S. Dep't of Justice*, 411 F.3d 350, 360 (2d Cir. 2005) ("Like the deliberative process privilege, the attorney-client privilege may not be invoked to protect a document adopted as, or incorporated by reference into, an agency's policy.").

[3] Notably, two of the six documents have already been publicly released by ED under the Freedom of Information Act, 5 U.S.C. § 552, et seq. ("FOIA"). *See* Eskandari Decl., Exh. A (memorandum to Under Secretary Ted Mitchell) (also cited to in California's amended complaint, FAC, ¶¶ 45-46); Eskandari Decl., Exh. C (memorandum regarding American Career Institute).

Defense Unit Claims Review Protocol," which details eligibility for, and the amount of relief due, a successful borrower-defense applicant. The OIG Report confirms the existence and relevance of this document as well.[4] (DOE_0000892 ("BDU and its contractors reviewed claims for eligibility using criteria established in legal memoranda as the basis for approval. BDU and its contractors made claim determinations and performed quality control reviews on the claims.").)

Lastly, the OIG Report identifies "a final corrective action plan" that ED must develop "within 30 days of the issuance of [the OIG Report]." (DOE_0000883.) That plan "set[s] forth the specific action items and targeted completion dates necessary to implement final corrective actions on the findings and recommendations contained in [the OIG Report]." (*Id*.) That plan necessarily details ED's remedial steps to document "the amount of the loan discharges for job placement rate misrepresentation claims" (DOE_0000895), a determination central to the resolution of this case.

According to the OIG Report, these documents formed the basis for and explain ED's decision to adopt and implement the Corinthian Full-Relief Rule starting in 2015. ED necessarily considered them in deciding to abandon and replace that rule with the Partial-Relief Rule in 2017. Broadly speaking, these documents are important here because they speak to (1) the existence and contours of the Corinthian Full-Relief Rule; (2) how ED interpreted its borrower-defense regulation and whether ED believed that relief for Corinthian borrowers under that regulation was tethered to state law; and (3) whether ED expressly preserved its discretion in determining relief for defrauded Corinthian borrowers.

Without these documents, the record "does not explain the development of the legal policy at issue." *J.L. v. Cissna*, No. 18-04914, 2019 WL 2223803, at *2 (N.D. Cal. May 22, 2019). These are specific, identifiable documents that "were considered by the agency and not included in the record," and therefore their omission establishes "clear evidence" that the record is incomplete. *Gill*, 2015 WL 9258075, at *6; *see also, e.g.*, *S.F. Bay Conservation & Dev. Comm'n v. U.S. Army Corps of Eng'rs*, No. 16-05420, 2018 WL 3846002, at *3 (N.D. Cal. Aug. 13, 2018)

---

[4] ED has also since publicly released this document under FOIA. *See* Eskandari Decl., Exh. B.

("presumption of completeness" rebutted where "defendant in fact omitted documents that should have been included"). The Court should order ED to complete the record, which at a minimum must include the eight documents identified in the OIG Report.

### B. ED Has Excluded All "Privileged" Documents from the Administrative Record

ED takes the position that "[d]ocuments and information that are privileged or that are personally identifiable are not part of the administrative record." (AR Cert., at 1.) If correct, it would allow an agency to shield wide swaths of the record based on privileges (or other doctrines) that it need not identify, much less defend.

The Court has repeatedly held that privileged documents are properly part of the administrative record. This includes documents that may be subject to the attorney-client or deliberative-process privilege:

> It is obvious that in many cases internal comments, draft reports, inter- or intra-agency emails, revisions, memoranda, or meeting notes will inform an agency's final decision. Therefore, the government is wrong to assert that these types of materials, as a categorical matter, should be excluded from the universe of materials "directly or indirectly considered by agency decision-makers."

*Inst. for Fisheries Res. v. Burwell*, No. 16-01574, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017); *accord, e.g.*, *Sierra Club v. Zinke*, No. 17-07187, 2018 WL 3126401, at *3 (N.D. Cal. 2018) ("This district has repeatedly required deliberative materials (such as internal comments, draft reports, emails, and meeting notes) to be added to the administrative record if they were considered in the agency's decision."); *Vilsack*, 2017 WL 1709318, at *4 ("[T]he Court agrees with other courts in this district which conclude that [internal deliberate processes] are part of the universe of materials directly or indirectly considered by agency decision-makers.") (internal quotation marks omitted); *United Farm Workers v. U.S. Env't Prot. Agency*, No. 07-03950, 2008 WL 3929140, at *2 (N.D. Cal. Aug. 26, 2008) (explaining that the Court's review of the whole record under the APA "includes internal correspondence, memoranda and drafts that were part of the EPA's decision making process"); *Lockyer*, 2006 WL 708914, at *3 ("Plaintiffs have also shown that the record is incomplete because it lacks internal and external agency documents relating to the decision-making process for the State Petitions Rule.").

9

| | |
|---|---|
| 1 | Accordingly, ED's failure to include in the record documents that ED deems privileged is |
| 2 | additional "clear evidence" to rebut the presumption of completeness. *See, e.g.*, *Ctr. for Food* |
| 3 | *Safety v. Vilsack*, No. 15-01590, 2017 WL 1709318, at *3 (N.D. Cal. May 3, 2017) ("The Court |
| 4 | finds that the presumption of completeness is rebutted because . . . Defendants admit that the AR |
| 5 | contains *only* '*all non-privileged materials* directly or indirectly considered by USDA in issuing |
| 6 | the Sunset Notice[.]'") (emphasis added); *Regents,* 2017 WL 4642324, at *5 (ordering defendants |
| 7 | "to complete the administrative record by adding to it all emails, letters, memoranda, notes, media |
| 8 | items, opinions and other materials directly or indirectly considered in the final agency decision"). |

### C. ED Has Certified an Administrative Record that Is Inadequate on Its Face

ED's certification itself provides further "clear evidence" to rebut the presumption of completeness in at least two ways. First, as discussed, the certification confirms that the administrative record does not address the central agency decision at issue in this case. Second, ED prepared the administrative record with the wrong standard. Each of these deficiencies alone is sufficient for the Court to order completion of the administration record. *See, e.g.*, *Oceana*, 2017 WL 2670733, at *3 ("The agency's inadequate certification overcomes the presumption of completeness . . . .").

#### 1. ED's Certification Omits the Core Agency Decision Under Review

First, ED's certification misapprehends the agency decision at issue in this case. The certification states that the administrative record consists only of documents "underlying [ED]'s decisions concerning its granting of discharges between 2015 and 2018 . . . ." (AR Cert., at 1.) As discussed, the decision actually under judicial review is ED's decision to abandon the Corinthian Full-Relief Rule and replace it with the Partial-Relief Rule. This is the final agency action that the Court already expects to review in this litigation. (PI Order, at 16-17.)

Accordingly, ED's certification establishes "clear evidence" that the record is deficient and should be ordered completed. *See, e.g.*, *Cissna*, 2019 WL 2223803, at *3 ("[T]he relevant agency action is not USCIS's revision of the CHAP, but its decision to adopt the underlying legal analysis. On the face of the certification, the [administrative record] is incomplete.").

### 2. ED's Certification Applies the Wrong Standard

Moreover, even if ED had certified a record that included the relevant decision under review (which it does not), ED's certification is still deficient. ED must certify that it has prepared the "whole record." Rather than certifying to the requisite "whole record" standard, ED instead certified that it has compiled "records underlying [ED]'s decisions . . . ." (AR Cert., at 1.) "[A] certification that does not make clear that the record includes all documents and materials directly or indirectly considered by the agency in making its decision suggests noncompliance with the standard according to which an administrative record should be compiled." *Oceana*, 2017 WL 2670733, at *2 (internal quotation marks omitted).

This matters because meaningful judicial review can occur only if the Court has the benefit of the full record that was before the agency at the time it made its decision, including evidence contrary to the agency's position. *See Volpe*, 401 U.S. at 420. An agency may not exclude information it considered on the grounds that it did not rely on that information. *Lockyer*, 2006 WL 708914, *2.

Accordingly, ED's failure to certify the record to the correct standard is itself enough to rebut the presumption of completeness. *Oceana*, 2017 WL 2670733, at *3 ("The plaintiff can . . . rebut the presumption of completeness by showing that the agency applied the wrong standard in compiling the record."); *see also, e.g.*, *Gill*, 2015 WL 9258075, at *6 ("Because Defendants certified an administrative record that, on its face, appears to contain less than all documents and materials directly or indirectly considered by the agency in making its decision, Plaintiffs have sufficiently rebutted the presumption of completeness."); *Winnemem Wintu Tribe v. U.S. Forest Serv.*, No. 09-01072, 2014 WL 3689699, at *11 (E.D. Cal. July 24, 2014) (ordering supplementation because "[t]he [agency] articulates an incorrect standard[;] regardless of relevance to a stated claim, the [agency] is to include all documents directly or indirectly considered by the agency decision-makers").

\* \* \*

In sum, there are a number of substantial deficiencies with the administrative record that—taken together or alone—establish "clear evidence" of incompleteness. ED should be ordered to

11

California's Motion to Complete the Administrative Record in Accordance with 5 U.S.C. § 706
Case No. 17-cv-07106-SK

revisit the administrative record and complete it.

**II.    ED MUST PROVIDE A PRIVILEGE LOG**

ED has not provided a privilege log to identify documents missing from the record but must do so. "Every court in this district to consider the issue . . . has required administrative agencies to provide a privilege log in withholding documents that otherwise belong in the administrative record." *Regents*, 2018 WL 1210551, at *6; *accord, e.g.*, *Gill*, 2015 WL 9258075, at *7; *Ctr. for Food Safety*, 2017 WL 1709318, at *5; *Inst. for Fisheries Res.*, 2017 WL 89003, at *1; *Lockyer*, 2006 WL 708914, at *4.[5]

The provision of a privilege log is critical in APA cases. As recognized by the Court, "if agencies were permitted to withhold materials from the administrative record on the basis of privilege, but were not required to submit a privilege log, their withholding based on privilege would never surface and would wholly evade review. This would invite all manner of mischief." *Regents*, 2018 WL 1210551, at *6.

Accordingly, ED must provide a privilege log of all documents withheld that is sufficiently detailed and informative to substantiate and justify each privilege assertion. That log must, at a minimum, (1) describe the document, (2) include all authors and recipients, (3) identify the basis for its withholding, and (4) substantiate any claimed privilege. *See Gill*, 2015 WL 9258075, at *7; *Regents*, 2018 WL 1210551, at *6.

To the extent there are any disputes over ED's privilege assertions, the common practice in the Northern District of California is for the Court to review the documents in camera. *See, e.g.*, *Regents*, 2018 WL 1210551, at *6.

**CONCLUSION AND RELIEF REQUESTED**

For these reasons, the Court should order ED to revisit and complete the administrative

---

[5] These principles are not unique to decisions of this Court but are also contained in the government's own guidance issued by the U.S. Department of Justice to other federal agencies. *See* U.S. Dep't of Justice, Env't & Nat. Res. Div., Guidance to Federal Agencies on Compiling the Administrative Record (Jan. 1999), at 4, available at http://environment.transportation.org/pdf/programs/usdoj_guidance_re_admin_record_prep.pdf ("If documents and materials are determined to be privileged or protected, the index of record must identify the documents and materials, reflect that they are being withheld, and state on what basis they are being withheld.").

record, including searching for all documents and materials directly or indirectly considered by ED in making the decision to abandon and replace its full-relief methodology for defrauded Corinthian borrowers. Under the circumstances, the Court should further order ED to provide a declaration explaining the search used to compile the revised record and its results.[6] Finally, the Court should order ED to provide a privilege log.

Dated: July 31, 2019

Respectfully submitted,

/s/ Bernard A. Eskandari
BERNARD A. ESKANDARI
Supervising Deputy Attorney General

---

[6] *See Gill*, 2015 WL 9258075, at *6 ("Given that Defendants should have already examined the universe of relevant documents, requiring Defendants to conduct another search should not pose too much of a burden. Defendants shall also provide a declaration explaining their search and its results.").