Xavier Becerra
Attorney General of California
Nicklas A. Akers (SBN 211222)
Senior Assistant Attorney General
Bernard A. Eskandari (SBN 244395)
Supervising Deputy Attorney General
Amos E. Hartston (SBN 186471)
Steven D. De Salvo (SBN 199904)
Deputy Attorneys General
 300 South Spring Street, Suite 1702
 Los Angeles, CA 90013
 Tel: (213) 269-6348
 Fax: (213) 897-4951
 Email: bernard.eskandari@doj.ca.gov

*Attorneys for Plaintiff the People of the State of
California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA,**<br><br>    Plaintiff,<br><br> v.<br><br>**UNITED STATES DEPARTMENT OF EDUCATION, et al.,**<br><br>    Defendants. | Case No. 17-cv-07106-SK<br><br>**CALIFORNIA'S REPLY IN SUPPORT OF ITS MOTION TO COMPLETE THE ADMINISTRATIVE RECORD**<br><br>Date:   October 7, 2019<br>Time:   9:30 a.m.<br>Courtroom: C, 15th Floor<br>Judge:   Hon. Sallie Kim |

**INTRODUCTION**

ED's[1] opposition only further confirms that the administrative record is incomplete. An order requiring ED to compile the "whole record" and provide a privilege log is necessary for meaningful judicial review of ED's December 2017 decision to abandon and replace its full-relief methodology for defrauded Corinthian borrowers. ED's opposition effectively concedes that the record is incomplete in at least four separate ways.

First, in clear contravention of the law of the Northern District of California, ED acknowledges that it omitted from the record all purportedly privileged documents. This District uniformly requires agencies to include privileged documents in the record and provide a privilege log. Particularly here, where ED seeks to withhold all internal documents that describe its prior policy of granting full relief, a privilege log is critical to allow the Court and the parties to properly consider and resolve ED's sweeping privilege claims.

Second, ED admits that California identified a document, the "Borrower Defense Unit Claims Review Protocol," that properly belongs in the record. ED has now "supplemented" the record with this document, which alone confirms irregularity in compilation of the record.

Third, ED concedes that it considered another document identified by California, a memorandum titled, "Recommendation for Corinthian Borrowers Alleging That They Were Guaranteed Employment," which substantiates ED's prior policy of granting full relief. Although a redacted version of this document is publicly available, ED inexplicably excludes it from the record. This too further confirms irregularity in the record's compilation.

Fourth, ED acknowledges that its initial certification was inadequate by amending it in response to California's motion. However, ED's amended certification is still facially deficient because it includes only individual borrower-defense determinations instead of the challenged December 2017 agency decision to abandon and replace its prior full-relief policy.

These glaring deficiencies establish clear evidence that the record is incomplete and paint a disconcerting portrait of an agency trying to evade meaningful judicial review.

---

[1] Capitalized terms have the same meaning as in California's Motion to Complete the Administrative Record in Accordance with 5 U.S.C. § 706 (Dkt. 66) ("Mtn.").

1

**ARGUMENT**

**I.    THE ADMINISTRATIVE RECORD IS INCOMPLETE BECAUSE ED OMITS ALL PURPORTEDLY PRIVILEGED DOCUMENTS**

The law in this District could not be clearer: documents that are subject to purported privileges, including the deliberative-process and attorney-client privilege, are properly part of the administrative record. (Mtn., 8-9 (citing authorities).) ED's opposition concedes that it "'considered' materials that are privileged"—including "the majority" of documents identified by California—but nonetheless unilaterally excluded them because, according to ED, the consistent decisions of this District are "outlier[s]."[2] (Opp., 6, 9, 16, 20.)

Absent controlling Ninth Circuit authority—and ED points to none—this Court should "follow the same approach adopted by other judges in this district." *Ctr. for Food Safety v. Vilsack*, No. 15-01590, 2017 WL 1709318, at *5 (N.D. Cal. May 3, 2017) (ordering agency to revisit the administrative record, include privileged documents, and provide a privilege log); *accord, e.g.*, *San Francisco Bay Conserv. & Dev. Comm'n v. U.S. Army Corps of Eng'rs*, No. 16-05420, 2018 WL 3846002, at *6 (N.D. Cal. Aug. 13, 2018) ("[I]n the absence of Ninth Circuit authority to the contrary, this Court is inclined to follow the practice uniformly applied in this district, which is well reasoned and gives meaning to the requirement that a reviewing court consider 'all documents and materials directly or indirectly considered by agency decision-makers.'") (quoting *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989)).

ED's refusal to include privileged documents in the record and provide a privilege log conclusively establishes that the record is incomplete. *See, e.g.*, *Ctr. for Envtl. Health v. Perdue*, No. 18-01763, 2019 WL 3852493, at *3-4 (N.D. Cal. May 16, 2019); *Inst. for Fisheries Res. v. Burwell*, No. 16-01574, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017), *mandamus denied*, *In re Thomas E. Price*, No. 17-71121 (9th Cir. 2018).

ED's heavy reliance on *ASSE International v. Kerry*, No. 14-00534, 2018 WL 3326687

---

[2] ED also attempts to distance itself from 1999 DOJ guidance that "the administrative record includes privileged documents" by citing subsequent DOJ guidance from 2017. (Opp., 20-21.) But, as this Court has expressly recognized, DOJ's 2017 guidance "is contrary to the law in this Circuit." *Sierra Club v. Zinke*, No. 17-07187, 2018 WL 3126401, at *3 (N.D. Cal. 2018).

(C.D. Cal. Jan. 3, 2018), for its preferred approach that "privileged documents are not part of the record" is misplaced. (Opp., 5, 14, 15, 19.) Not only is this decision from the Central District of California not binding on this Court, but a subsequent decision from that district expressly rejected it. In *Immigrant Youth Collective v. Duke*, No. 17-02048 (C.D. Cal. Apr. 8, 2019) (Dkt. 104), the Central District explained that the inclusion of privileged materials in the record, and requiring a privilege log, is more "in line with the Ninth Circuit's instruction that the administrative record should consist of all documents 'directly or *indirectly* considered by agency decision-makers.'" *Id*. at 9-10 (quoting *Thompson*, 885 F.2d at 555).

Accordingly, ED's refusal to include privileged documents in the record, together with its refusal to provide a privilege log, conclusively establishes that the record is incomplete.

## II. ED'S OMISSION OF OTHER IDENTIFIED DOCUMENTS FROM THE ADMINISTRATIVE RECORD FURTHER CONFIRMS INCOMPLETENESS

Separate and apart from ED's improper omission of all privileged documents and ED's refusal to provide a privilege log, ED has also improperly omitted a number of other documents from the record that California identified in its motion.

First, California identified the publicly available "Borrower Defense Unit Claims Review Protocol," which details eligibility for and the amount of relief due a successful borrower-defense claimant. ED admits, "Upon further review, [it] has determined that this document properly belongs in the [r]ecord," necessitating "supplement[ion]."[3] (Opp., 1 n.1.) ED provides no further explanation why this document was excluded in the first place. Regardless, exclusion of this document, identified by California, alone establishes clear evidence to rebut the presumption of completeness.

In addition, ED inexplicably excluded from the record another critical document also identified by California, which ED publicly released in partially redacted form. (Opp., 9 n.3.) The

---

[3] ED's addition of this document goes toward completing the record, not "supplementing" it, as ED claims. (Opp., 1 n.1.) Supplementation occurs when an agency adds materials that are *outside* what the decision-maker considered but "are necessary for the court to conduct a substantial inquiry." *Bruce v. Azar*, 389 F. Supp. 3d 716, 724 n.5 (N.D. Cal. 2019) (citation omitted). Because ED concedes that agency decision-makers considered this document, and thus it should have been part of the record, "completion" is the correct concept. *Id.* ("'Supplementing' and 'completing' the AR are two distinct concepts.").

3

1    importance of this document—a January 2017 memorandum regarding ED's "Recommendation

2    for Corinthian Borrowers Alleging That They Were Guaranteed Employment"—cannot be

3    overstated. For example, it contains a redacted section titled, "Application of the Borrower

4    Defense Regulation Supports Eligibility and *Full Relief* for Borrowers Alleging Guaranteed

5    Employment Misrepresentations Under Applicable State Law . . . ." (Dkt. 66-2, at 7 (emphasis

6    added).) ED concedes—as it must—that it "considered" this memorandum. (Opp., 10-11.)

7    However, ED fails to include *even a redacted version* of it in the record. Controlling Ninth

8    Circuit law requires production of redacted versions of documents subject to a partial-privilege

9    claim. *See, e.g.*, *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008)

10   ("Factual portions of documents covered by the deliberative process privilege must be segregated

11   and disclosed unless they are 'so interwoven with the deliberative material that they are not

12   segregable.'") (alterations and citation omitted).

13        Finally, California identified two additional, non-privileged documents that should have

14   been included in the record—the "ACI Memo" and ED's "final corrective action plan" in

15   response to the OIG Report. (Mtn., 7-8.) ED's opposition simply claims that ED decision-makers

16   did not consider these documents. (Opp., 13-14.) However, ED concedes that the ACI Memo, in

17   considering appropriate relief under the borrower-defense rule, includes a section describing ED's

18   "treatment of *Corinthian claims*—for which [ED] . . . 'determined that borrowers should receive

19   *full relief* . . . .'" (Opp., 13 n.6 (quoting ACI Memo) (emphasis added).) The ACI Memo, dated

20   January 2017, was thus necessarily considered—at least *indirectly*—when ED abandoned and

21   replaced its full-relief policy 11 months later in December 2017. As for the "corrective action

22   plan," ED cites just one out-of-district, unpublished case for the proposition that "Post-decisional

23   documents are not *ordinarily* included in the administrative record." (Opp., 12-13 (emphasis

24   added) (citing *Modesto Irrigation Dist. v. Gutierrez*, No. 06-00453, 2007 WL 763370, at *19

25   (E.D. Cal. Mar. 9, 2007)).) This plan, however, doubtless provides a "clarification or an

26   explanation of the original information before the agency," and therefore is properly part of the

27   record. *Ass'n of Pac. Fisheries v. E.P.A.*, 615 F.2d 794, 811 (9th Cir. 1980).

28        This District consistently holds that the omission of even a single document is enough to

4

rebut the presumption of completeness. *See, e.g. Oceana, Inc. v. Prtizker*, No. 16-06784, 2017 WL 8948945, at *3 (N.D. Cal. Aug. 17, 2017) (presumption rebutted where agency excluded a document "directly or indirectly considered by agency decision-makers"); *Burwell*, 2017 WL 89003, at *1 (presumption rebutted by agency's "concession that at least one document was inadvertently omitted from the record"). The presumption is rebutted even if the omission is inadvertent. *See, e.g.*, *San Francisco Bay Conserv.*, 2018 WL 3846002, at *3 ("The presumption of completeness is not based on the defendant's good or bad faith, but on whether a court can expect that the record is in fact complete.")

Once rebutted, the agency cannot regain the presumption by subsequent addition to the record; to the contrary, such piecemeal "completion" confirms administrative irregularity. *See, e.g.*, *Defs. of Wildlife v. Norton*, 239 F. Supp. 2d 9, 21 (D.D.C. 2002) (agency's subsequent addition "raises further doubts that it has provided the complete Administrative Record."), *vacated in part on other grounds*, 89 Fed. App'x 273 (D.C. Cir. 2004); *San Francisco Bay Conserv.,* 2018 WL 3846002, at *3 ("[T]he Court will not presume that the record is complete after it has been shown . . . to be incomplete."); *Forest Guardians v. Kempthorne*, No. 06-02560, 2008 WL 4492635, at *2 (S.D. Cal. Sept. 29, 2008) ("The fact that the record is now 'more complete' does not assuage the Court's ongoing concern about the completeness of the record or the thoroughness of [the agency]'s internal review for documents.").

Accordingly, ED's admitted failure to include identifiable, non-privileged documents (including portions thereof) in the record conclusively rebuts the presumption of completeness.

## III.   ED's Certification Omits the Core Agency Decision Under Review

ED's amended certification still fails to include the central agency decision at issue in this case—ED's December 2017 decision to abandon and replace its full-relief policy. This Court has already identified this as the agency action under review in the related class action.[4] Instead, ED seeks to certify a record that addresses only ED's "decisions concerning its granting of discharges between 2015 and 2018 . . . ." (Dkt. 71-1, at 1.)

---

[4] *See Calvillo Manriquez v. DeVos*, Case. No. 17-07210 (Dkt. 60, at 16-17).

1    As it must, ED admits that a full-relief methodology existed between 2015 and January 20,

2    2017. (*See, e.g.*, Dkt. 67, ¶¶ 68, 82, 83.) Although ED disputes the existence of a "rule," ED

3    acknowledges that its policy, prior to January 20, 2017, provided full relief—without exception—

4    to 28,000 defrauded Corinthian borrowers "covered by its findings regarding Corinthian's

5    misleading job[-]placement rates." (*Id.*, ¶ 83.) However, ED omits from the record all documents

6    that describe the existence and contours of its prior policy, including all documents in the OIG

7    Report regarding the "Legal Basis for Borrower Defense Claims." (Mtn., 7-8.)

8    ED's opposition maligns California for "jump[ing] to the conclusion" that the OIG Report

9    identified internal documents that support ED's prior policy of granting full relief to defrauded

10   borrowers. (Opp., 8.) However, when ED responded to a draft of the OIG Report in November

11   2017, ED did not dispute that report's identification of these documents as operative agency law.

12   (*See generally* DOE_00000914-922 (ED's response to draft OIG Report).) Now in litigation,

13   ED's counsel takes the incredible position that this report "provides no special insight into the

14   specific documents that [ED]'s actual decision-makers considered when making the decisions

15   challenged here." (Opp., 8.) The Court should reject "counsel's post hoc rationalizations for

16   agency action," *Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.,* 477 F.3d 668, 688 (9th Cir.

17   2007), which only further underscore administrative irregularity.

18   To be sure, this Court, in the related class action, previously emphasized the importance of

19   documents addressing ED's prior policy of "full relief" and found that ED "essentially admits"

20   the existence of this policy:

21   > Plaintiffs allege that the Corinthian [Full-Relief] Rule was based on documents that
22   > they do not have . . . . As a practical matter, it appears that the Secretary did provide
     > full relief or total discharge for borrowers who completed attestation forms before
23   > 2017. The documentation that even the Secretary submits shows that the Secretary
     > considered the implementation of the Average Earnings Rule to be a change in policy
24   > from previous policy. . . . The Secretary essentially admits that there was a previous
     > policy, even if informal, for full discharge of debt of borrowers who completed the
25   > attestation forms.

26   (*Calvillo Manriquez v. DeVos*, Case. No. 17-07210 (Dkt. 60, at 25-26).)

27   Documents substantiating ED's prior full-relief policy are necessarily part of the record.

28

6

1    This is because, in changing policy, an agency must consider the factors that motivated the prior

2    policy and its contours. *See, e.g.*, *F.C.C. v. Fox Television Stations*, 556 U.S. 502, 517 (2009)

3    (agency must "forthrightly acknowledge[]" its prior policy); *Motor Vehicle Mfrs. Ass'n v. State*

4    *Farm Mut. Ins.*, 463 U.S. 29, 42 (1983) ("an agency changing its course by rescinding a rule is

5    obligated to supply a reasoned analysis for the change beyond that which may be required when

6    an agency does not act in the first instance"); *Regents of the Univ. of Cal. v. U.S. Dep't of*

7    *Homeland Sec.*, No. 17-05211, 2017 WL 4642324, at *4 (N.D. Cal. Oct. 17, 2017) ("It is simply

8    not plausible that [the agency] reversed policy . . . without having generated any materials

9    analyzing . . . factors militating in favor of and against the switch in policy.").

10       To the extent that ED insists that there are no more documents to put in the record because

11   the prior full-relief policy was "informal" (Opp., 7), this Court should order ED to conduct a

12   broader search. For example, where an agency compiles a "thin administrative record" regarding

13   an agency decision, this Court has ordered the agency to revise the record to include "all relevant

14   files and emails of subordinates" who provided "verbal input to [the] agency decisionmaker . . . ."

15   *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. 17-05211, 2018 WL 1210551, at

16   *4 (N.D. Cal. Mar. 8, 2018) ("Verbal input, of course, can be every bit as influential—perhaps

17   more influential—in shaping informal agency decisions as written input.").

18       ED should not be permitted to contrive a record that creates "a fictional account of the

19   actual decisionmaking process," thereby frustrating meaningful judicial review of the agency

20   decision actually challenged. *Home Box Office, Inc. v. F.C.C.,* 567 F.2d 9, 54 (D.C.Cir. 1977).

21   **IV.   ED'S CONTINUES TO MISAPPREHEND THE CORRECT LEGAL STANDARD FOR
         COMPILING A RECORD**

22

23       Despite deriding California's challenge to ED's initial certification as "form-over-

24   substance" (Opp., 20), ED nonetheless amended its certification to try to bring it into facial

     compliance with the Ninth Circuit's "directly or indirectly considered" standard.

25

26       As an initial matter, while ED amended its certification, it apparently had no effect on the

     contents of the record. Under nearly identical circumstances, in *Gill v. U.S. Department of Justice*,

27

28   No. 14-03120, 2015 WL 9258075 (N.D. Cal. Dec. 18, 2015), this Court held that a plaintiff is

                                                  7

"entitled to test [the agency's] representation" that the "record would remain unchanged" after re-certification to the correct standard. *Id*. at *6. There, as here, the Court held that because the agency "certified an administrative record that, on its face, appear[ed] to contain less than all documents and materials directly or indirectly considered by the agency in making its decision, Plaintiffs ha[d] sufficiently rebutted the presumption of completeness." *Id*. This Court went on to order the agency to "conduct another search" and "provide a declaration explaining their search and its results," the burden of which would be minimal because the agency "ha[d] already examined the universe of relevant documents . . . ." *Id*. The Court should order ED to do so here as well.

Moreover, it is evident that ED continues to misapprehend the import of the "directly or indirectly considered" standard. After scorning California for making ED incant "magic words" (Opp., 7), ED's opposition immediately goes on to confirm that it again applied the wrong standard by saying that it need only include documents "actually '*considered* by agency decision-makers.'" (Opp., 7 (selectively quoting *Thompson*, 885 F.2d at 555).) As explained in California's motion, the record must include all documents "directly or indirectly considered," which necessarily includes "the work and recommendations of subordinates." (Mtn., 4-5 (citing cases).) This means that the record must include all pre-decisional materials—such as internal memoranda, emails, correspondence, drafts, revisions, and notes. *See, e.g.*, *Zinke*, 2018 WL 3126401, at *4 ("This district has repeatedly required deliberative materials (such as internal comments, draft reports, emails, and meeting notes) to be added to the administrative record . . . ."). As currently composed, despite the amended certification, the record is improperly bereft of these documents.

Accordingly, under the circumstances, not only should the Court order ED to revisit the record and complete it, but the Court should further order ED to provide a declaration explaining its revised search to ensure that ED applied the correct standard.

**V.     THE COURT SHOULD CONDUCT IN CAMERA REVIEW OF ALL DOCUMENTS SUBJECT TO A PRIVILEGE DISPUTE**

ED's opposition argues at length that various documents are privileged. (Opp., 9-12.) California disputes these sweeping privilege claims. Regardless, litigation over privilege is

8

premature without the Court and parties having the benefit of a privilege log. "[I]f agencies were . . . not required to submit a privilege log, their withholding . . . would wholly evade review. This would invite all manner of mischief." *Regents of the Univ. of Cal.*, 2018 WL 1210551, at *6.

Once ED provides a privilege log (which must also substantiate any redactions), the Court should review in camera all documents subject to a privilege dispute. *See, e.g.*, *In re Grand Jury Subpoena 92-1*, 31 F.3d 826, 829 (9th Cir. 1994). Alternatively, this Court could refer this review to another Magistrate Judge, as the Court initially suggested in the related class action.[5]

## CONCLUSION AND RELIEF REQUESTED

For these reasons and those in California's motion, the Court should order ED to revisit and complete the administrative record, provide a privilege log identifying documents withheld, file a declaration substantiating its revised search, and submit for in camera review all documents subject to a privilege dispute.

Dated: September 18, 2019                    Respectfully submitted,

                                             /s/ Bernard A. Eskandari
                                             BERNARD A. ESKANDARI
                                             Supervising Deputy Attorney General

---

[5] *See Calvillo Manriquez v. DeVos*, Case. No. 17-07210 (Dkt. 68, at 1) ("The Court advises the parties that any issues regarding attorney-client privilege will be referred to another Magistrate Judge for determination.").