**U.S. Department of Justice**
Civil Division, Federal Programs Branch

1100 L Street N.W.
Washington, DC 20005

---

**By ECF**  November 20, 2019

The Honorable Sallie Kim
United States Magistrate Judge
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom C – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *California v. U.S. Department of Education, et al.*, Case No. 3:17-cv-7106-SK

Dear Judge Kim:

      Defendants, the U.S. Department of Education ("Department") and Betsy DeVos, in her official capacity as Secretary of Education, submit this response to the Court's order of November 6, 2019, ECF No. 94 ("November 6 Order"), which permitted the parties to file letter briefs responding to five questions[1] related to Defendants' October 25, 2019 *in camera* submission.

## BACKGROUND

      On July 8, 2019, Defendants timely lodged the certified Administrative Record ("Record" or "AR"). ECF No. 65. Plaintiff has challenged the completeness of that Record, filing a motion on July 31, 2019 that argued, among other things, that the Record improperly excluded "eight specific, identifiable documents." Pl.'s Mot. to Complete the Administrative R. at 6, ECF No. 66 ("Motion"). Defendants opposed the Motion, arguing that the documents Plaintiff identified are not properly included in the Record because they were either not considered (at all) in making the decision(s) at issue in this case, or because they are pre-decisional, internal memoranda that are immaterial to the Court's task in reviewing agency action under the Administrative Procedure Act ("APA"). *See generally* ECF No. 72 ("Defs.' Opp'n"). The Court has not yet issued a decision granting or denying Plaintiff's request that the Department complete the Record, but it did order that Defendants produce the eight documents referenced in Plaintiff's Motion for *in camera* review, as well as a privilege log explaining "which privilege is asserted for each document." Amended Order at 1, 3, ECF No. 81. Defendants did so on October 25, 2019. ECF No. 90. The Department does not claim privilege over all of the documents that it produced for *in camera* review, but maintains that, with the exception of the one document that Defendants have already added to the Record, *see* ECF No. 71, none of them are part of the AR. *See* Defs.' Opp'n at 9-14.

## RESPONSES TO COURT'S QUESTIONS

**Question 1:** What cases, either in the Northern District of California or outside the Northern District of California, discuss the inclusion or exclusion of materials protected by the attorney-client privilege and/or attorney work product doctrine in the administrative record?

---

[1] The Court's fifth question is directed solely to Plaintiff, so Defendants do not address it here.

1

**Question 2:** What is the process by which the Court must decide whether to include or exclude materials protected by the attorney-client privilege and/or attorney work product doctrine in the administrative record?

**Defendants' Response:** Defendants believe that the Court's first two questions touch on related issues and address them together. As an initial matter, those of Defendants' *in camera* submissions that are "protected by" the attorney-client privilege are also "deliberative materials antecedent to the agency's decision." *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 312-13 (S.D.N.Y. 2012). As Defendants have explained, they are primarily[2] legal memoranda, prepared by attorneys and providing confidential legal advice for the benefit and consideration of the Department's ultimate decision-makers on borrower defense issues. *See* Defs.' Opp'n at 9-12. Thus, the case law cited in Defendants' opposition brief, concluding that pre-decisional and deliberative materials are not properly part of an administrative record, is applicable to the attorney-client protected materials at issue in this case. *Id*. at 14-17. In short, such documents are "presumptively outside the scope of what must be included in the administrative record" because they reflect the Department's "internal deliberative processes" and are "irrelevant to the reviewing court's task" under the APA. *In re United States*, 875 F.3d 1200, 1211-12 (9th Cir. 2017) (Watford, J., dissenting)[3] (explaining that the Court's proper function in an APA case is to "assess the lawfulness of the agency's action based on the reasons offered by the agency, not to probe the mental processes of agency decision-makers in reaching their conclusions" (citations omitted); *see also, e.g.*, *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) (reaffirming general rule that "predecisional and deliberative documents are not part of the administrative record to begin with").

Some of these cases have expressly held that a "complete" administrative record does not include "documents that fall within the deliberative process privilege, *attorney-client privilege, and work product privilege*." *Tafas v. Dudas*, 530 F. Supp. 2d 786, 794 (E.D. Va. 2008) (emphasis added); *see also Modesto Irrigation Dist. v. Gutierrez*, No. 1:06-cv-00453 OWW DLB, 2007 WL 763370, at *12-19 (E.D. Cal. Mar. 9, 2007) (noting that "the attorney-client privilege is applicable in administrative record cases," and rejecting request to complete record with materials protected by the privilege). Others have stated more generally that *all* privileged documents are excluded from the administrative record given the APA standard of review. *E.g.*, *Stand Up for California! v. U.S. Dep't of Interior*, 71 F. Supp. 3d 109, 122 (D.D.C. 2014) (noting that, in APA cases, "privileged and deliberative documents reflecting internal agency deliberations are immaterial as a matter of law . . . since the reasonableness of the agency's action is judged in accordance with

---

[2] Defendants also submitted a "corrective action plan" at the Court's request, which, as reflected in Defendants' privilege log, contains certain materials that are protected by the attorney-client privilege and the deliberative process privilege. *See* ECF No. 90-1. As Defendants have explained, however, this plan post-dates the Department's decision to adopt a new borrower defense relief methodology in 2017 and could not have been considered by the agency in making the decision(s) at issue in this case. *See* Defs.' Opp'n at 13-14.

[3] The majority opinion in *In re United States*, denying mandamus relief when the district court ordered the government to produce a privilege log in an APA case, was vacated when the Supreme Court determined that the government made "serious arguments that at least portions of the District Court's order are overly broad." *In re United States*, 139 S. Ct. 443, 445 (2017).

its stated reasons" (citation omitted)); *ASSE Int'l, Inc. v. Kerry*, No. SACV 14-00534-CJC (JPRx), 2018 WL 3326687, at *2 (C.D. Cal. Jan. 3, 2018) (similar). Either way, the rationale these courts have applied to exclude deliberative documents from the administrative record in the first instance is equally applicable to the internal, pre-decisional materials, prepared by attorneys to provide legal advice to agency decision-makers, that are at issue in this case. Indeed, materials reflecting "the legal analysis of lawyers," "prepared to assist" the agency decision-maker, "fall squarely within the category of deliberative process materials" that are not ordinarily part of the administrative record. *In re United States*, 875 F.3d at 1212 (Watford, J., dissenting).

Consistent with this line of reasoning, the First Circuit rejected an attempt to "complete" the record with attorney-client privileged materials, finding that "a document protected by the attorney-client privilege should be made part of the administrative record" only in "an unusual and extraordinary circumstance." *Town of Norfolk v. U.S. Army Corps of Eng'rs*, 968 F.2d 1438, 1458 (1st Cir. 1992); *see also Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 345 F. Supp. 3d 1, 8 (D.D.C. 2018) (denying motion to complete an administrative record with a document that court determined was protected by attorney-client privilege). As for the "process by which the Court must decide whether to include or exclude materials protected by the attorney-client privilege and/or attorney work product doctrine in the administrative record," then, Defendants believe that the materials currently under the Court's consideration are not properly included in the Record in the first instance.

If the Court disagrees with this proposition, it should still exclude from the AR any particular document logged as privileged that the Court determines is properly protected by either the attorney-client privilege or the work product doctrine. As the Court has recognized, the purpose of the privilege log is to allow "courts and counterparties" to review "[a]gency assertions of privilege." Amended Order at 3, ECF No. 81. Even the courts that have required agencies to file privilege logs with their administrative records have generally not required that privileged documents be included in the record, recognizing that such documents are "protected from inclusion" where the claimed privilege applies. *E.g., Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, No. C05-03508 EDL, 2006 WL 708914, at *4 (N.D. Cal. Mar. 16, 2006). This is particularly appropriate for the attorney-client privilege, which "is absolute; a court cannot weigh or balance the privilege against the need for the information." *Molex v. City and Cty. of San Francisco*, No. C-4:11-1282-YGR (KAW), 2012 WL 1831640, at *2 (N.D. Cal. May 18, 2012); *see also O'Connor v. Boeing N. Am., Inc.*, 216 F.R.D. 640, 642 (C.D. Cal. 2003) (noting that "opinion work product" reflecting "counsel's mental impressions, conclusions, opinions or legal theories," "enjoys almost absolute immunity" (citation omitted)).

**Question 3:** Why did the Department of Education take inconsistent approaches in providing memoranda in response to FOIA requests? For example, Exhibits F and G in the binder of materials submitted for in camera review were produced in response to FOIA requests with only a few redactions for privacy, but they are substantially similar in format to Exhibits A and B, for which Defendants refuse to produce almost any portion.

**Defendants' Response:** As Defendants have explained, the Department's FOIAXpress software makes it difficult for the Department to efficiently locate particular records or determine whether they have been released in FOIA (at least without knowing the particular FOIA request to which a record relates). *See generally* Defs.' Mot. for Partial Relief, ECF No. 95. In particular, that

software's "search functionality is extremely limited and error prone." *Id*. at 4. And for the reasons discussed in the previously submitted declaration of Gregory Smith, Director of the Department's FOIA Service Center ("Smith Decl."), it does not allow the Department to determine with "reliable accuracy" whether a given "record (or portions thereof) has or has not ever been released as part of a FOIA response," and if it has previously been released, in what form it was released. Smith Decl. ¶¶ 12-16, ECF No. 95-1. Accordingly, the Department does not always know what information was previously released when it processes a record in response to a new FOIA request, and inconsistent redactions in the same or similar documents in different FOIA productions can often result.

Another reason for inconsistent redactions across the same or similar documents in different FOIA productions has to do with the discretionary nature of the redactions to begin with. As the Supreme Court has explained, "the FOIA exemptions [are not] mandatory bars to disclosure," *Chrysler Corp. v. Brown*, 441 U.S. 281, 293 (1979), and agencies are to withhold information pursuant to an exemption only where they "reasonably foresee that disclosure would harm an interest protected by" the exemption, 5 U.S.C. § 552(a)(8)(A)(i). Moreover, because Exemption 5 is "discretionary," *Judicial Watch, Inc. v. U.S. Dep't of Justice*, No. 17-cv-0832 (CKK), 2019 WL 4644029, at *3 (D.D.C. Sept. 24, 2019), agencies need not, and do not, always withhold all documents to the full extent that a privilege (and particularly, the deliberative process privilege) may allow in response to every FOIA request, *e.g.*, *Heffernan v. Azar*, 317 F. Supp. 3d 94, 120 (D.D.C. 2018) (noting that the "mere fact that [an agency] elected not to protect [certain documents] from disclosure pursuant to the deliberative process," based on a "commitment to asserting Exemption 5 only where appropriate," has "no bearing on the defendant's assertion of the applicability of the deliberative process privilege as to" other documents). For these and other reasons, it is well-established that the release of a document only waives the deliberative process privilege "for the document or information specifically released, and not for related materials." *In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997).

There is thus no "support [for] the argument that the government must explain the inconsistent application of an exemption." *Broward Bulldog, Inc. v. U.S. Dep't of Justice*, 939 F.3d 1164, 1186-87 (11th Cir. 2019). As the D.C. Circuit has explained in a related context, "an agency does not forfeit the benefit of a FOIA exemption simply because of its prior decision to voluntarily release other similar information." *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 464 (D.C. Cir. 2014).

**Question 4:** Does the production of materials in response to FOIA requests (*e.g.*, Exhibits F and G above) in largely unredacted format waive the attorney-client privilege and/or attorney work product for similar legal memoranda?

**Defendants' Response:** The government's release, through FOIA, of certain documents does not prejudice its ability to later claim privilege over any other documents, "similar" or not. As the Ninth Circuit has squarely held, "[i]mplying a waiver" for a document based on "the release of related documents to . . . third parties would be contrary both to the case law on waiver and to the policies underlying FOIA and its exemptions." *Mobil Oil Corp. v. EPA*, 879 F.2d 698, 700 (9th Cir. 1989). The court relied on case law generally finding that "the release of certain documents waives FOIA exemptions[, including Exemption 5, which allows agencies to withhold records based on "the privileges which the Government enjoys under the relevant statutory and case law

in the pretrial discovery context," *id.* at 700 n.1,] *only for those documents released.*" *Id.* at 701 (emphasis in original). And as a matter of policy, the court noted that adopting a rule exposing related documents to the threat of disclosure on the basis of any voluntary release would undermine FOIA's purpose, i.e., "a policy of broad disclosure of government records," *id.*, and "inhibit agencies from making any disclosures other than those explicitly required by law," *id. See also Ctr. for Biological Diversity v. OMB*, No. C 07-04997 MHP, 2009 WL 1246690, at *11 (N.D. Cal. May 5, 2009) (finding that an agency, "by releasing some previously-withheld documents, has not waived its remaining privileges"); *Pac. Coast Shellfish Growers Ass'n v. U.S. Army Corps of Eng'rs*, No. C16-193RAJ, 2016 WL 3000259, at *8 (W.D. Wash. May 25, 2016) ("Waiver of a FOIA exemption as to one document does not extend to other documents.").

Even outside the FOIA context, it is the party challenging a privilege assertion who has the burden of proving that a privilege has been waived for any particular document. This is because "the task of proving the negative—that information has *not* been revealed—might require the government to undertake an exhaustive, potentially limitless search." *Elec. Frontier Found. v. U.S. Dep't of Justice*, 890 F. Supp. 2d 35, 46-47 (D.D.C. 2012) (citation omitted). This is true whether the privilege at issue is the deliberative process privilege, *see id.*; the attorney work product doctrine, *see In re Convergent Techs. Second Half 1984 Secs. Litig.*, 122 F.R.D. 555, 565 (N.D. Cal. 1988); or the attorney-client privilege, *see United States v. Chevron Corp.*, No. C 94-1885 SBA, 1996 WL 444597, at *4 (N.D. Cal. May 30, 1996) (recognizing that while the party claiming the attorney-client privilege bears the ultimate burden of proving that the privilege was not waived, the party seeking discovery "must bear the burden of *production*" and "proffer[] evidence that the claimed privilege has been waived"). While Plaintiff's Motion shows that certain aspects of select Department memoranda have been released through FOIA, there is no indication that the other "similar" legal memoranda to which the Court refers have also been released or that the Department's privilege assertions over those documents have been waived.

Finally, while it is true that the "voluntary disclosure of privileged material subject to the attorney-client privilege to unnecessary third parties . . . waives the privilege not only as to the specific communication disclosed but often as to all other communications relating to the same subject matter," *In re Sealed Case*, 121 F.3d at 741 (citation omitted), that rule is based in fairness, designed to prevent a party "from disclosing communications that support its position while simultaneously concealing communications that do not," *Bd. of Trs. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618, 625 (N.D. Cal. 2006). That concern is not present in the context of a FOIA production where, as described above, Congress has enacted a broad policy of disclosure, and the fact that the agency deems a document worthy of disclosure in response to a particular request says nothing about the privileged status of other similarly-formatted documents, *see* November 6 Order at 2 (and is not an attempt to selectively disclose only helpful material). In any event, the waiver only applies to "materials relevant to a particular, *narrow* subject matter." *Agility Pub. Warehousing Co. K.S.C. v. Dep't of Defense*, 110 F. Supp. 3d 215, 226-27 (D.D.C. 2015) (citation omitted). As indicated in Defendants' privilege log for the *in camera* documents, each of the relevant legal memoranda addresses distinct types of borrower defense claims based on certain types of misconduct at certain schools. *See generally* ECF No. 90-1. The fact that certain memos are "substantially similar in format" to memos that have been released through FOIA in "largely unredacted format," November 6 Order at 1-2, does not mean that the former memos address the "same subject matter" as the latter.

5

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ R. Charlie Merritt*
R. CHARLIE MERRITT (VA Bar No. 89400)
KEVIN P. HANCOCK
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 616-8098
Fax: (202) 616-8470
robert.c.merritt@usdoj.gov

*Attorneys for Defendants*