TED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PEOPLE OF THE STATE OF
CALIFORNIA,

                 Plaintiff,

       v.

UNITED STATES DEPARTMENT OF
EDUCATION, et al.,

                 Defendants.

Case No.  17-cv-07106-SK

**ORDER REGARDING DOCUMENTS
PRODUCED FOR IN CAMERA
REVIEW; GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S
MOTION TO COMPLETE THE
ADMINISTRATIVE RECORD**

Regarding Docket Nos. 90, 97, 98

Defendants Betsy DeVos, in her official capacity as Secretary of the Department of Education (the "Secretary") and the United States Department of EducaFthomastion (the "Department"( (collectively, "Defendants") submitted an administrative record in this matter. Pursuant to the Court's order, Defendants produced for *in camera* review eight documents that Plaintiff the People of the State of California (the "State") claims that the Department improperly omitted from the administrative record in this case.  (Dkt. 90.)  The Court allowed the parties to submit further briefing on the documents in question, responding to certain questions posed by the Court.  (Dkts. 94, 97, 98.)  After consideration, Defendants determined that one of the eight documents properly belongs in the administrative record.  (Dkt. 72, at page 1, n. 1.)  Thus, there are seven documents remaining for review and decision.

The Court held a hearing on November 25, 2019 for the State's motion to complete the administrative record.  (Dkt. 99.)  On December 13, 2019, the State filed a notice indicating that three of the documents at issue have been publicly disclosed and admitted into the Congressional Record during a Congressional hearing held on December 12, 2019.  (Dkt. 104.)  In addition, the State noted that another document, a memorandum from Steven Menashi, Acting General Counsel for the Department of Education, to James Manning, identified as the person "Delegated the Authority to Perform the Functions and Duties of the Undersecretary," dated December 14, 2017 (the "Menashi Memorandum"), was admitted into the Congressional Record at the same hearing.

(Dkt. 104).  The Menashi Memorandum was not one of the documents submitted for *in camera* review.

Having considered the documents and the arguments of the parties, as well as the relevant legal authorities and the facts regarding Defendants' disclosure of certain documents, the Court concludes that five of the contested documents belong in the administrative record and GRANTS the State's motion to complete with the administrative record with respect to those documents but DENIES the State's motion with respect to the other documents.

This Order addresses only these documents described above.  The State has challenged Defendants' completion of the administrative record with regard to many other documents that Defendants included in a privilege log.  The parties are meeting and conferring with regard to some aspects of that log, given that the Court required that Defendants note which of the documents on that log had been produced in requests under the Freedom of Information Act ("FOIA").  The Court will rule on those issues in a separate order.

## BACKGROUND

Corinthian Colleges Inc. ("Corinthian"), a for-profit college headquartered in California, operated more than 100 campuses under the names Everest, Heald, and Wyotech, including more than 30 campuses in California.  (Dkt. 37 (First Amended Complaint at ¶¶ 30, 43).)  In April 2015, based on a joint investigation with the California Attorney General, the United States Department of Education (the "Department") fined Corinthian $30 million for falsifying job-placement rates. (Dkt. 37, ¶ 34.)  Shortly thereafter, Corinthian closed its campuses and filed for bankruptcy.  (Dkt. 37, ¶¶ 35, 36.)  In March 2016, California obtained a $1.1 billion default judgment against Corinthian in California state court, and the California state court found that Corinthian engaged in systematic and widespread misrepresentations to defraud students and taxpayers.  (Dkt. 37, ¶¶ 37, 38.)

The Department determined that Corinthian's fraud left thousands of students eligible for discharge of their federal student loans under the Department's borrower-defense regulation, 34 C.F.R. § 685.206(c)(1) (authorized by 20 U.S.C. § 1087e(h)), and under the terms of the promissory notes of their loans.  (Dkt. 37, ¶¶ 40-42, 229.)  With the California Attorney General,

the Department determined that students who relied on misrepresentations found in Corinthian's published job-placement rates had a cause of action under California law that qualified these students for forgiveness of their federal direct student loans and refunds of the amounts paid. To implement this relief, the Department created a "streamlined process" of reviewing claims that would simplify and expedite relief and thus reduce the burden on borrowers. (Dkt. 37, ¶¶ 3, 41, 42.)

The State calls the streamlined process the "Corinthian Full-Relief Rule" ("Corinthian Rule") which governs the borrower-defense claims of "whole groups of Corinthian students (for example, an entire academic program at a specific campus during a certain time frame)." (Dkt. 37, ¶ 43.) The State alleges that the Corinthian Rule is based on state law theories developed by the California Attorney General, including the following:

- Because Corinthian was headquartered in and managed from California, California law applies for purposes of determining whether there was a cause of action against the school. (Dkt. 37, ¶ 43.)

- Corinthian misrepresented job-placement rates at certain campuses, for certain programs, during certain time periods ("Corinthian Fraud Findings"). (Dkt. 37, ¶ 43.)

- Borrowers subjected to the Corinthian Fraud Findings were eligible for borrower-defense relief, which was expedited by the use of a "simple attestation form" provided by the Department that allowed borrowers "to document the impact of Corinthian's inflated job-placement rates on them in a manner that supported a cause of action under California's Unfair Competition Law." (Dkt. 37, ¶ 43.)

- California law controls the scope of relief. (Dkt. 37, ¶ 43.) Therefore, California maintains that borrowers subject to the Corinthian Rule were entitled to full relief of their federal loans, including a refund of all amounts paid. (Dkt. 37, ¶¶ 43, 45-46.)

The State alleges that the Department "memorialized" the Corinthian Rule in various legal memoranda identified in a report by the Office of Inspector General as "Federal Student Aid's Borrower Defense to Repayment Loan Discharge Process" (December 8, 2017).[1] The State maintains that public statements from the Department confirm the existence of the Corinthian Rule. (Dkt. 37, ¶¶ 48-51, 58-64, 183, 196.) The Department determined that over 80,000

---

[1] Patrick J. Howard, *Federal Student Aid's Borrower Defense to Repayment Loan Discharge Process,* U.S. Department of Education Office of Inspector General (2017), https://www2.ed.gov/about/offices/list/oig/auditreports/fy2018/i04r0003.pdf.

United States District Court
Northern District of California

borrowers, of which 38,000 were Californians, were eligible for expedited loan relief under the Corinthian Rule.  (Dkt. 37, ¶ 52.)  The State alleges that, for nearly two years, without exception, the Department consistently applied the Corinthian Rule to grant full relief to 28,000 defrauded Corinthian borrowers.  (Dkt. 37, ¶ 9, 68, 78.)

On January 20, 2017, the Department stopped approving borrower defense claims.  (Dkt. 37, ¶¶ 85, 178.)  In June 2017, the Department announced a "regulatory reset."  (Dkt. 37, ¶ 95.) The Department announced what the State refers to as the "Partial Relief Rule."[2]  (Dkt. 43 at page 10.)  The Partial Relief Rule attempts to measure "the harm Corinthian borrowers actually incurred" from Corinthian's fraud by "comparing average earnings at Corinthian programs with the average earnings at comparable programs."  ("December 20, 2017 Press Release.")[3]  The Partial Relief Rule affords defrauded Corinthian borrowers with a minimum of 10% loan relief. (December 20, 2017 Press Release.)  As of December 20, 2017, the Department approved the discharge of 12,900 claims and denied 8,600 pending claims.  (December 20, 2017 Press Release.) The State alleges that the Department has applied the Partial Relief Rule retroactively, sweeping in borrowers with pending claims who applied for full, expedited relief under the Full Relief Rule and borrowers who have not yet applied but would formerly have been eligible for full relief. (Dkt. 37, ¶ 106.)

The State sues under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, and asks the Court to declare as unlawful and set aside the Department's action to collect loans subject to borrower defense claims in which a forbearance or collection stoppage was requested, and to set aside the Department's determinations and certifications that the loans in question are subject to administrative offset, tax refund offset, or administrative wage garnishment.  (Dkt. 37, ¶¶ C-E.)

---

[2] The Court has previously taken judicial notice of the December 20, 2017 Press Release.

[3] U.S. Department of Education, *Improved Borrower Defense Discharge Process Will Aid Defrauded Borrowers, Protect Taxpayers* (Dec. 20, 2017), https://www.ed.gov/news/press-releases/improved-borrower-defense-discharge-process-will-aid-defrauded-borrowers-protect-taxpayers.

United States District Court
Northern District of California

In this motion, the State moves for an order including the following eight documents in the administrative record:

(1) Memorandum from the Department's Office of General Counsel dated May 14, 2015;

(2) Memorandum from the Department's Borrower Defense Unit to Undersecretary Ted Mitchell, dated October 20, 2016 with "Re" line:  "Recommendation for Borrower Defense Relief for Heald College Borrowers Alleging Transfer of Credit Claims;"

(3) Memorandum from Memorandum from the Department's Borrower Defense Unit to Undersecretary Ted Mitchell, dated October 24, 2016, with "Re" line: "Recommendation for Everest/WyoTech Borrowers Alleging Transfer of Credit Claims;"

(4) Memorandum from the Department's Borrower Defense Unit to Undersecretary Ted Mitchell, dated January 9, 2017, with "Re" line:  "Recommendation for Corinthian Borrowers Alleging That They Were Guaranteed Employment;"

(5) Memorandum from the Department's Borrower Defense Unit to Undersecretary Ted Mitchell, dated January 10, 2017 with "Re" line:  "Recommendation for ITT Borrowers Alleging That They Were Guaranteed Employment – California Students;"

(6) Memorandum from the Department's Borrower Defense Unit to Undersecretary Ted Mitchell, dated January 4, 2017 with "Re" line:  "Recommendation for Full Borrower Defense Relief for Borrowers Who Attended American Career Institute's Massachusetts Campuses;"

(7) Corrective Action Plan for December 8, 2017 (Office of Inspector General for the Department).

As noted above, of the documents listed above, the third, fourth and fifth documents were admitted into the Congressional Record with no redactions on December 12,  2019.  The Department also produced the fifth document above in various redacted versions pursuant to FOIA requests.

## ANALYSIS

Section 706 of the APA provides that court "shall review the whole record" of an agency's

United States District Court
Northern District of California

decision-making in considering a case under the APA.  5 U.S.C. § 706.  Courts may grant a motion to complete the administrative record where the agency has not submitted the "whole" record.  *See Oceana, Inc. v. Pritzker*, 2017 WL 2670733, *2 (N.D. Cal. June 21, 2017) (citing 5 U.S.C. § 706 ("the court shall review the whole record or those parts of it cited by a party")).  "The whole record includes everything that was before the agency pertaining to the merits of its decision."  *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (citing *Thompson v. United States Dep't of Labor*, 885 F.2d 551, 555-56 (9th Cir. 1989)).  This includes "'all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position.'"  *Thompson*, 885 F.2d at 555 (quoting *Exxon Corp. v. Department of Energy*, 91 F.R.D. 26, 32 (N.D. Tex. 1981)) (emphasis added in *Thompson*).  "An agency may not exclude information it considered on the grounds that it did not rely on that information."  *Oceana*, 2017 WL 2670733, *2 (citing *People ex rel. Lockyer v. U.S. Dep't of Ag.*, 2006 WL 708914 (N.D. Cal. Mar. 16, 2006)).  "If the record is not complete, then the requirement that the agency decision be supported by 'the record' becomes almost meaningless."  *Portland Audubon Society*, 984 F.2d at 1548 (citing *Home Box Office, Inc. v. Federal Communications Comm'n*, 567 F.2d 9, 54 (D.C. Cir. 1977)).

The agency's designation of the record "is entitled to a presumption of completeness which may be rebutted by clear evidence to the contrary."  *In re United States*, 875 F.3d 1200, 1206 (9th Cir. 2017).  The plaintiff need not show bad faith or improper motive to rebut the presumption. *People ex rel. Lockyer v. U.S. Dep't of Ag.*, 2006 WL 708914 (N.D. Cal. Mar. 16, 2006).

Here, the State moves to complete the administrative record by including seven documents which it has specifically identified.  Defendants dispute that the State has have met its burden to demonstrate by clear evidence that the record is incomplete.  In addition, Defendants argue that the Department "plainly" did not consider the documents or that the documents are either privileged.  (Dkt. 72.)

**A.  Did the Department Consider the Documents?**

The Menashi Memorandum eviscerates Defendants' argument that the Department did not consider the first through fourth of the disputed documents above – the memoranda from May

United States District Court
Northern District of California

2015 to January 2017.  The Menashi Memorandum "summarizes and adopts in part the evidentiary findings and legal bases previously employed to approve claims for the [Corinthian College] claims categories examined in the memoranda listed below."  (Dkt. 104-4.)  The Menashi Memorandum specifically mentions and analyzes the "previous memoranda" in which "the Department concluded that all borrowers with successful claims should receive a full discharge of their loans" and mentions some general dates for the analyses.  (Dkt. 104-4.)  Shortly after the Menashi Memorandum, the Department issued its December 20, 2017 Press Release announcing the Partial Relief Rule.  The Partial Relief Rule is obviously based on the analysis and reasoning of the Menashi Memorandum.  It is clear that, in creating the Partial Relief Rule, the Department considered and rejected the previous memoranda that the Menashi Memorandum referenced and that discussed relief for borrowers from Corinthian.  The consideration may be indirect because the Department considered an analysis that rejected the previous memoranda, but, as noted above, even indirect consideration requires inclusion in the administrative record.

Defendants argue that the Department could not have considered the fifth and sixth documents for determination of the Partial Relief Rule for Corinthian students because those memoranda addressed relief for borrowers for different schools.[4]  The Court agrees that the fifth and sixth documents listed above are not part of the administrative record for this case because there is no indication that the Department considered them in determining the Partial Relief Rule for Corinthian borrowers.

In addition, Defendants challenge the inclusion in the administrative record of the seventh document, which the Department created in 2018 after the creation of the Partial Relief Rule.  Defendants argue that post-decisional documents are not part of the administrative record.  *See*, *e.g.*, *Modesto Irrigation Dist. v. Gutierrez*, 2007 WL 763370, at *19 (E. D.. Cal. Mar. 9, 2007) ("Post-decisional documents are not ordinarily included in the administrative record.") The State argues that a "post-decision" study "can be deemed a clarification or an explanation of the original information before the" agency.  *Ass'n of Pac. Fisheries v. E.P.A*., 615 F.2d 794, 811 (9th Cir.

_____

[4]  Defendants explain that the State obtained at least one of the two memoranda through a FOIA request.  (Dkt. 72.)

1980.)  In *Pac. Fisheries*, the Court opined that the post-decisional materials are appropriately included in the administrative record when, for example, the agency "proceeded upon assumption that were entirely fictional or utterly without scientific support." *Id*. at 812.   The Court found that was not the case and declined to include post-decisional materials in the administrative record.  *Id*. This case is similar.  There is no evidence that the Department's decision was based on fiction or lacked scientific support, and thus there is no justification to include the post-decisional materials in the administrative record.[5]

Therefore, the Court finds that the State has shown by clear evidence that the record is incomplete.  The first, second, third, and fourth documents listed above should be included in the administrative record unless they should be withheld based on the deliberative process privilege.

**B.  Does the Deliberative Process Privilege or Other Privilege Protect the Documents?**

Defendants argue that none of the seven documents[6] should be included in the administrative record because they are deliberative and thus are protected by the "deliberative process privilege."  There Court here follows the practice of courts in the Northern District of California which "have uniformly concluded that internal agency communications and drafts are part of the administrative record."  *Center for Food Safety v. Vislack*, 2017 WL 1709318, *4 (N.D. Cal. May 3, 2017).  (Dkt. 43.)  Because in many cases internal comments, draft reports, and inter-agency or intra-agency emails will inform an agency's final decision, the Court will not categorically exclude these documents from the administrative record.  *Institute for Fisheries Resources v. Burwell*, 2017 WL 89003, *1 (N.D. Cal. January 10, 2017).

To qualify for protection under the deliberative process privilege, a document must be both (1) "predecisional," that is, "generated before to the adoption of agency's policy or decision" and (2) "deliberative," meaning that it contains opinions, recommendations or advice about agency

---

[5]  The seventh document includes memoranda written before the creation of the Partial Relief Rule as attachments, and the Court does not rule on those specific subparts but will consider each of those individual documents separately.

[6]  Because the Court finds that the Department considered only the first through fourth documents listed above, the Court will address the arguments regarding the deliberative process privilege with respect to only those first through fourth documents and not the fifth through seventh documents.

United States District Court
Northern District of California

policies.  *FTC v. Warner Communications Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (citing *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).  The privilege does not cover "[p]urely factual material that does not reflect the deliberative process."  *Id.* (citation omitted).  On the other hand, the privilege applies where the "factual material is so interwoven with the deliberative material that it is not severable."  *Id.* (citing *Binion v. Department of Justice*, 695 F.2d 1189, 1193 (9th Cir. 1983)).  Defendants bear the burden of demonstrating, as to each document, that the privilege applies.  *See Gill v. Dept. of Justice*, 2015 WL 9258075, *4 (N.D. Cal. Dec. 18, 2015) ("[U]nder the correct standard, some agency documents, such as purely internal deliberative materials, may be protected from inclusion in the administrative record, but Defendants must make a specific showing establishing the application of a privilege for each documents that it contends that it may withhold based on privilege.") (quoting *Lockyer*, 2006 WL 708914, at *4).

### 1.   Are the Documents Pre-decisional?

A document is not pre-decisional if it is "created by a final decision-maker and represents the final view of an entire agency as to a matter which, once concluded, is a final agency action independent of another agency's use of that document."  *Sierra Club, Inc. v. United States Fish and Wildlife Serv.*, 911 F. 3d 967, 980 (9th Cir. 2018).  There is no real dispute on this issue, and the Court agrees that the documents here are pre-decisional.

### 2.   Are the Documents Deliberative?

A document is deliberative if it "reflects the personal opinions of the writer rather than the policy of the agency" or "inaccurately reflect or prematurely disclose the views of the agency."  *Sierra Club*., 911 F. 3d. at 982 (citations omitted).  "The key inquiry in determining whether particular information is 'deliberative' is whether disclosure of the information would expose the decision making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.  *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1042-43 (E.D. Cal. 2010) (citing *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1090 (9th Cir. 2002) and *Assembly of State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992) ("A predecisional document is a part of the deliberative process, if the disclosure of the

United States District Court
Northern District of California

1    materials would expose an agency's decisionmaking process in such a way as to discourage candid

2    discussion within the agency and thereby undermine the agency's ability to perform its

3    functions")) (internal citation and quotation marks omitted).  "Predecisional materials are

4    privileged 'to the extent that they reveal the mental processes of decision-makers.'"  *Assembly of*

5    *Cal.*, 968 F.2d at 921 (quoting *National Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 111, 1119

6    (9th Cir. 1988)).

7         The Court finds that the first through fourth documents listed above are deliberative in

8    nature.  The very nature of the documents expose the decision-making process of the Department,

9    as either the Office of General Counsel or Borrower Defense Unit wrote the memoranda as

10   support for recommendations to the then-Undersecretary Mitchell about the proposed relief for

11   Corinthian borrowers.

12   **C.  Do Other Factors Require Inclusion in the Administrative Record?**

13        The deliberative process privilege "applies only if disclosure of the materials would expose

14   an agency's decision-making process in such a way as to discourage candid discussion within the

15   agency and thereby undermine the agency's ability to perform its functions."  *Sierra Club, Inc. v.*

16   *United States Fish and Wildlife Serv.*, 911 F. 3d 967, 978 (9th Cir. 2018) (citation omitted).

17   Moreover, even if the documents are pre-decisional and deliberative, the deliberative process

18   privilege is a qualified privilege.  *Warner*, 742 F.2d at 1161.  Deliberative materials shall be

19   disclosed to a party if the seeking party can establish that the need for the materials for accurate

20   fact-finding outweighs the government's interest in non-disclosure.  *Id.* (citation omitted).  The

21   Ninth Circuit in *Warner* set forth four non-exclusive factors that may be considered in determining

22   whether the litigant has met this requirement: "1) the relevance of the evidence; 2) the availability

23   of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure

24   would hinder frank and independent discussion regarding contemplated policies and decisions."

25   *Id.* (citations omitted).  "Other factors that a court may consider include: (5) the interest of the

26   litigant, and ultimately society, in accurate judicial fact finding, (6) the seriousness of the litigation

27   and the issues involved, (7) the presence of issues concerning alleged governmental misconduct,

28   and (8) the federal interest in the enforcement of federal law."  *North Pacifica, LLC v. City of*

United States District Court
Northern District of California

*Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003) (internal citation omitted).

### 1. Are the Documents Relevant?

These documents are relevant to whether the Secretary for the Department acted in an arbitrary and capricious manner and "relied on factors which Congress has not intended [the decision-maker] to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "Although the 'reasonableness of the agency's action is judged in accordance with its stated reasons' in its final decision, the Court should analyze whether that decision properly flowed from the evidentiary record before the agency." *Center for Biol. Divers. V. U.S. Army Corps of Engin.*, 2015 WL 3606419, * 6 (C.D. Cal. Feb. 4, 2015) (quoting *Allegheny Def. Project, Inc. v. U.S. Forest Serv.*, 423 F.3d 2015 (3d Cir. 2005). The Court finds that these documents are relevant to whether the final decision here properly flowed from the evidentiary record before it or was arbitrary and capricious. Thus, this factor favors the inclusion of the first through fourth documents in the administrative record.

### 2. Is Other Evidence Available?

"The availability of other evidence 'is perhaps the most important factor in determining whether the deliberative process privilege should be overcome.'" *Thomas*, 715 F. Supp. 2d at 1043 (quoting *North Pacifica*, 274 F. Supp. 2d at 1124). There is no showing that there is other evidence to determine the Secretary's decision-making. Therefore, the Court finds that this factor weighs heavily in favor of the inclusion of the first through fourth documents.

### 3. Does the Government's Role in Litigation Justify Inclusion?

The Government's role in this litigation favors the inclusion of the first through fourth documents. *Northwest Envtl. Advoc. v. U.S. E.P.A.*, 2009 WL 349732, *9 (D. Or. Feb. 11, 2009); *see also Thomas*, 715 F. Supp. 2d at 1028 ("The fact that a government entity's action is the focal point of litigation weighs against upholding the deliberative process privilege.").

/ / /

United States District Court
Northern District of California

### 4.   Will Disclosure Hinder Frank Discussion?

There disclosure of these documents would not hinder frank discussion because the third and fourth memoranda have already been entered into the Congressional Record, and the Menashi Memorandum, also entered into the Congressional Record, refers to the substance of the first and second documents (the May 15 Memorandum and October 20, 2016 Memorandum).  The State argues that Defendants' disclosure of these documents to members of Congress and the subsequent broad dissemination of these documents has waived the privilege.

Moreover, the nature of most of these documents, formal memoranda prepared by senior officials, weighs in favor of including them in the administrative record.  As noted by the Ninth Circuit, "[t]he underlying concern in *National Wildlife Federation* was that releasing 'working drafts' and comments . . . prepared by 'lower-level' Forest Service employees would 'reveal the mental processes' that went into choosing and publishing a final [action]."  *Sierra Club*, 911 F.3d at 982; *see also Northwest Envtl. Advoc.*, 2009 WL 349732 at * 8 (ordering release of relatively polished drafts but withholding documents that express preliminary staff views, tentative opinions, or fragmented thoughts).

### 5.   Do Other Factors Weigh in Favor of Inclusion?

The other factors noted in *North Pacifica* also either favor inclusion of the documents in the administrative record or are neutral.  Any case has a strong interest in accurate judicial fact-finding, so that issue is neutral here.  This litigation and the issues involved are serious, as evidenced by Congressional interest.  There is no allegation of governmental misconduct and no issue of federal interest in the enforcement of federal law, so these factors are neutral.  After weighing these additional factors, the Court finds that these additional factors weigh slightly in favor of including these documents in the administrative record.

Given the analysis of all eight factors, including the *Warner* factors, the Court finds that the deliberative process privilege does not protect the disputed documents.  These documents go to the heart of this matter – the justification for the Department's action in adopting the Partial Relief Rule, and the disclosure of these formal memoranda will not quell discussion because they or their substance have been publicly disclosed.

**D. Does Attorney-Client Privilege or Attorney Work Product Doctrine Protect Disclosure?**

Defendants argue that the attorney-client privilege and attorney work product doctrine protect the first and second documents from disclosure. The State does not contest the application of the attorney-client privilege and attorney work product doctrine but claims waiver. The Court finds that, even if the attorney-client privilege and attorney work product doctrine protect the documents – or at least large portions of the documents, Defendants waived those privileges. During the Congressional hearing, the Department did not object when the third document and the Menashi Memorandum were introduced into to the Congressional Record.[7] Although the first and second documents were not entered into the record, the Menashi Memorandum clearly refers to both documents and summarizes them. The Menashi Memorandum refers to the first document, the May 2015 Memorandum by the Office of General Counsel, and actually quotes it. (Dkt. 104-4.) The Menashi Memorandum also refers to an analysis in which the Department concluded that "all Heald students would have standing to bring a hypothetical action against CCI under the UCL, and therefore CCI's conduct could be said to give rise to a cause of action against CCI under that statute." (Dkt. 104-4.) This is a clear reference to the second document, the October 20, 2016 Memorandum from the Borrower Defense Unit, as the Court's side-by-side comparison shows that this reference is directly from the October 20, 2016 Memorandum.

A party may waive the attorney-client privilege and attorney work product doctrine. *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010). Voluntary disclosure of the contents of a privileged communication "constitutes waiver of the privilege as to all other such communications on the same subject." *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). The purpose of this is to prevent selective disclosure and to prevent against an unfair system in which a party attempts to hide unfavorable information while presenting favorable information. *Hernandez*, 604 F.3d at 1100 (internal citation omitted). Here, the Department has waived its right to assert the protection of the attorney-client privilege and

---

[7] At the time of this writing, the full text of the transcript was not available, but the video recording of the hearing is publicly available. https://edlabor.house.gov/hearings/examining-the-education-departments-implementation-of-borrower-defense

attorney work product doctrine over the May 2015 Memorandum and the October 20, 2016 Memorandum because of the deliberate, public disclosure of the Menashi Memorandum.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the State's motion to complete the administrative record.  The Court finds that the following four documents must be included in the administrative record:

(1) Memorandum from the Department's Office of General Counsel dated May 14, 2015;

(2) Memorandum from the Department's Borrower Defense Unit to Undersecretary Ted Mitchell, dated October 20, 2016 with "Re" line:  "Recommendation for Borrower Defense Relief for Heald College Borrowers Alleging Transfer of Credit Claims;"

(3) Memorandum from Memorandum from the Department's Borrower Defense Unit to Undersecretary Ted Mitchell, dated October 24, 2016, with "Re" line: "Recommendation for Everest/WyoTech Borrowers Alleging Transfer of Credit Claims;" and

(4) Memorandum from the Department's Borrower Defense Unit to Undersecretary Ted Mitchell, dated January 9, 2017. with "Re" line:  "Recommendation for Corinthian Borrowers Alleging That They Were Guaranteed Employment."[8]

**IT IS SO ORDERED**.

Dated: December 27, 2019

SALLIE KIM
United States Magistrate Judge

United States District Court
Northern District of California

---

[8] The Menashi Memorandum is not currently before the Court, but for the same reasons set forth in this Order, it appears that the Menashi Memorandum should also be included in the administrative record.  The Department obviously considered the Menashi Memorandum in the Department's decision-making process, and the given that the document is already in the public domain.  Because the Menashi Memorandum did not become public until December 2019 and because the State was not able to include the Menashi Memorandum in its motion, the Court will allow the parties to argue the inclusion of the Menashi Memorandum at a later date.