BRIAN D. NETTER
Deputy Assistant Attorney General
MARCIA BERMAN
Assistant Branch Director
STUART J. ROBINSON
Senior Counsel
R. CHARLIE MERRITT
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(415) 436-6635
E-mail: stuart.j.robinson@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | No. 3:17-cv-7106-SK |
| Plaintiff, | |
| v. | |
| UNITED STATES DEPARTMENT OF EDUCATION, et al., | |
| Defendants. | |
| MARTIN CALVILLO MANRIQUEZ, et al., | No. 3:17-cv-7210-SK |
| Plaintiffs, | |
| v. | **JOINT STATUS REPORT** |
| UNITED STATES DEPARTMENT OF EDUCATION, et al., | |
| Defendants. | |

The parties hereby submit the following status report in response to the Court's September 30, 2024 order.

The parties jointly request an in-person Status Conference to help ensure progress, including representatives from the U.S. Department of Education, and propose the following dates: December 9, December 16, December 17, or December 18, 2024, or as soon thereafter as convenient to the Court.

The parties separately submit the following brief updates to the Court.

**Report From Plaintiffs: The People of the State of California and Class Counsel for Martin Calvillo Manriquez, et al.**

Following settlement terms jointly reached by the parties in the related actions, on June 1, 2022, the US Department of Education ("ED") announced a group discharge to cancel all remaining federal loans for 560,000 borrowers who attended any campus owned or operated by Corinthian from its founding in 1995 through its closure in April 2015 ("Corinthian Group Discharge"). ED confirmed to counsel that the Corinthian Group Discharge provides "full relief", including discharge of remaining loan balances and refunds of amounts paid, both for Corinthian borrowers who applied for borrower defense relief and for Corinthian borrowers who did not apply for borrower defense relief. In light of the Corinthian Group Discharge, the parties determined that a formal settlement agreement was no longer necessary.

Implementation of the Corinthian Group Discharge, however, has taken longer than expected and the delays continue. ED reports approximately 438,000 borrowers (76% of the identified 573,600 eligible borrowers) have received relief. However, granting discharges and refunds to the remaining approximately 135,600 eligible borrowers (24%) has proven more complicated due in part to consolidation and "mixed-consolidation" loans. ED does not currently have a reliable process in place to efficiently discharge the remaining consolidated loans (as opposed to unconsolidated Direct Loans) or to verify discharges and refunds, and has not made significant progress in at least the last six months.

ED identified similar issues when implementing borrower-defense relief in *Sweet v. Cardona*, No. 3:19-cv-03674-WHA (N.D. Cal.). In that case, ED employed a process to efficiently

effectuate borrower-defense discharges and refunds of consolidated and mixed-consolidated loans (the process has been referenced as "Terminal Loan Discharges"). To date, ED has not agreed to implement this process for remaining Corinthian borrowers eligible for relief under the Corinthian Group Discharge, and ED currently has no process in place to complete the Corinthian Group Discharge or a timeline for discharging the remaining eligible loans.

Relief continues to move forward in *Sweet* due to the settlement agreement entered by the parties in that case and the Court's orders (1) setting deadlines for competition of the discharges, and (2) requiring semi-monthly in-person meetings attended by the attorneys, representatives of ED, servicers, and counsel for the servicers—the same servicers responsible for effectuating the Corinthian discharges. The *Sweet* class is represented by the same counsel representing the *Manriquez* class here (California is not a party in *Sweet*). ED implemented Terminal Loan Discharges to meet an August 31, 2024 deadline in *Sweet*, and on November 7, 2024, submitted a proposal for discharging certain remaining consolidated loans in that case through new procedures. ED agreed to consider if any of the procedures identified in *Sweet* could be used to process the remaining loans under the Corinthian Group Discharge.

Plaintiffs suggested a Status Conference to help ensure progress—particularly because the underlying issues in this case involve delayed and then denied "full relief" to certain defrauded Corinthian borrowers almost eight years ago with a change in presidential administrations. Plaintiffs are concerned that further delay may cause the already long-overdue relief to again be denied or diminished.

**Report From Defendants: United States Department of Education and Secretary Cardona**

As noted in prior reports, the U.S. Department of Education ("ED") announced, on June 1, 2022, a group discharge to cancel all remaining federal loans for 560,000 borrowers who attended any campus owned or operated by Corinthian from its founding in 1995 through its closure in April 2015 ("Corinthian Group Discharge"). *See* https://www.ed.gov/news/press-releases/education-department-approves-58-billion-group-discharge-cancel-all-remaining-loans-560000-borrowers-who-attended-corinthian-colleges. The announced action provides full relief, including discharge of remaining loan balances and refunds of amounts paid, to Corinthian

borrowers regardless of whether any such borrower has filed a borrower defense application. ED began the process of effectuating the announced relief.

For the last two years, the parties in the related cases have jointly reported to the Court that they believe the Corinthian Group Discharge will resolve outstanding issues in these cases and have jointly requested that the Court continue to hold pending litigation deadlines in abeyance. Subsequently, based on ED confirming that the Corinthian Group Discharge includes "full relief" both for Corinthian borrowers who applied for borrower defense relief and for Corinthian borrowers who did not apply for borrower defense relief, the parties determined that a formal settlement agreement was not necessary and have been working towards a negotiated dismissal of the above-referenced litigation in light of the Department's progress effectuating the Corinthian Group Discharge. *See* ECF No. 379 (*Calvillo Manriquez*); ECF No. 186 (*California*). ED has agreed to complete the Corinthian Group Discharge and provide periodic reporting on the progress of implementation to both class counsel and to California.

As noted in the Joint Status Report filed March 18, 2024, discharge data in that report (which reported nearly 100% completion of Corinthian borrowers who applied for relief, and approximately 85% of Corinthian borrowers who did not apply for borrower-defense relief [ECF No. 199]) and data in prior Joint Status Reports was based on information reported to the Department by the servicers. Since March 18, 2024, the Department has worked to examine and verify the status of the Corinthian discharges reported by the servicers by cross-referencing records reported in the National Student Loan Data System (NSLDS) and analyzing these records for indications about the status of these discharges. As of October 31, 2024, that analysis suggests the following information for borrowers determined to be eligible for relief as of July 25, 2022 (shortly after the announcement of the Corinthian Group Discharge was made):

|  | 10/31/2024 Analysis of NSLDS Data |
|---|---|
| **CCI Borrowers who applied** | 42,300 (90%) have had their loans discharged |
| **CCI Borrowers who did not apply** | 395,700 (75%) have had their loans discharged |

As explained in the September 27, 2024 status report (ECF No.461 (*Calvillo Manriquez*); ECF No. 208 (*California*)) ("September 2024 status report"), the Department has not been making significant progress on implementing the Corinthian Group Discharge in the last several months for two main reasons: prioritization of effectuating relief in *Sweet v. Cardona*, No. 3:19-cv-03674-WHA (N.D. Cal.), and complications with consolidated loans.  Unlike in this case, the effectuation of relief in *Sweet* is based on the Department's obligation to comply with deadlines for discharging loans and processing loans in accordance with a court-approved settlement agreement.

As the Department explained, *Sweet* class counsel (who also represent the *Manriquez* class) asserted a material breach and in March 2024 moved to enforce the *Sweet* settlement agreement. Following the filing of that motion, the *Sweet* court held several hearings, ordered the Department to effectuate full settlement relief by August 31, 2024 for certain *Sweet* class members,[1] and ordered semi-monthly in-person meetings attended by the attorneys, representatives of the Department, servicers, and counsel for the servicers—the same servicers responsible for effectuating the Corinthian discharges.  As a result, the Department maintains that its loan servicers prioritized effectuating relief for the *Sweet* class members who were due relief by the ordered August 31, 2024 deadline.  In the weeks following August 31, 2024, Department staff and servicers continued to devote a significant amount of resources (both time and staff) to compiling—and verifying—complex data so that the Department could update the court in *Sweet* during the September 26, 2024 hearing concerning the Department's progress in meeting the August 31, 2024 deadline.

As also explained in the last status report, the *Sweet* plaintiffs asserted another material breach of the settlement agreement, this time concerning the group of class members who were due relief by July 28, 2024.  The *Sweet* parties discussed that breach during the September 26, 2024 hearing, and the court imposed a new December 20, 2024 deadline on the Department to effectuate relief for the affected group of *Sweet* class members.  Also during that hearing, the parties discussed how the Department would effectuate full settlement relief for other borrowers

---

[1]  The Terminal Loan Discharge process mentioned by Plaintiffs above was devised specifically to address the breach allegation in *Sweet* and to meet the court's August 31, 2024 deadline.

covered by the *Sweet* settlement.  The *Sweet* court set a briefing schedule to resolve that issue and ordered the Department to file its "opening brief and supporting affidavits" by November 7, 2024, with a reply brief due by November 27, 2024.  As a result, the Department and its servicers have devoted substantial time and resources since the September 26, 2024 hearing to gather the information needed to meet the applicable deadlines.  Consequently, once again, fewer servicer and Department resources have been available to devote to the Corinthian Group Discharge.

Although the progress in effectuating the Corinthian Group Discharge continues to be slower than any of the parties had anticipated it would be, the parties have continued to exchange information and to meet regarding the outstanding issues and the rate of progress in implementing the Corinthian Group Discharge.  The Department provided Plaintiffs' counsel with responses to all of the items enumerated in the September 2024 joint status report (*see* ECF No. 461 (*Calvillo Manriquez*) and ECF No. 208 (*California*) at pp. 5-6) as well as to California's requests for information set forth in August 2024 email correspondence from California's counsel.  Although the Department has not been able to provide the parties with an estimated timeline for completing the Corinthian Group Discharge, the Department has assured Plaintiffs' counsel that it remains committed to effectuating relief for Corinthian borrowers as soon as possible.

The Plaintiffs also state that "ED does not currently have a reliable process in place to efficiently discharge the remaining consolidated loans (as opposed to unconsolidated Direct Loans) or to verify discharges and refunds."  The Department does not agree with this assertion.  The Plaintiffs' statement suggests that any delays in discharging loans is the reason that the discharge of the Corinthian loan portfolio has slowed, but, as explained above (and as Plaintiffs are aware), the Department and its servicers have had to divert resources to meet litigation deadlines in the *Sweet* litigation.

Dated:  November 8, 2024                    Respectfully submitted,

                                                     BRIAN D. NETTER
Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Stuart J. Robinson
STUART J. ROBINSON
Senior Counsel
R. CHARLIE MERRITT
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(415) 436-6635
E-mail: stuart.j.robinson@usdoj.gov

*Attorneys for Defendants*

/s/  Bernard A. Eskandari
ROB BONTA
Attorney General of California
NICKLAS A. AKERS
Senior Assistant Attorney General
BERNARD A. ESKANDARI (SBN 244395)
Supervising Deputy Attorney General
AMOS E. HARTSTON (SBN 186471)
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Tel: (213) 269-6348
Fax: (213) 897-4951
Email: bernard.eskandari@doj.ca.gov

*Attorneys for Plaintiff the People of the State
of California*

/s/ Eileen M. Connor
EILEEN M. CONNOR (SBN 248856)
Project on Predatory Student Lending, Inc.
769 Centre Street, Suite 166
Jamaica Plain, MA 02130
Tel.: (617) 322-2271
Fax: (617) 781-9625
Email: econnor@ppsl.org

*Attorneys for Class Plaintiffs*